**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIELA RAMIREZ, FIDELA AVINA, RUEL NIETO, KATHERINE RANOS, and EVALINA GONZALEZ, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| | ) | Case No. 1:17-cv-02626 |
| Plaintiff, | ) ) | Judge: Jorge L. Alonso |
| v. | ) ) | Magistrate Judge: Susan E. Cox |
| MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and ENCORE CAPITAL GROUP, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION

Defendants, MIDLAND FUNDING, LLC (MF), MIDLAND CREDIT MANAGEMENT, INC. (MCM) and ENCORE CAPITAL GROUP, INC. (Encore), by and through their attorneys David M. Schultz and Lindsey A.L. Conley of Hinshaw & Culbertson LLP, moves to compel arbitration of the claims in Plaintiffs' Complaint and in support thereof submits the following Memorandum of Law:

## INTRODUCTION

Plaintiffs' class action Complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Specifically, Plaintiffs allege that Midland Credit Management, Inc. ("MCM") on behalf of Midland Funding, LLC ("MF") sent them collection letters which stated, "If the account goes to an attorney, our flexible options may no longer be available to you." Plaintiff contends the language in the letters were false, deceptive and misleading in violation of section 1692f and 1692e of the FDCPA because MCM routinely offers or allows flexible payment options after forwarding an account to an attorney.

Even if Plaintiffs' allegations are true (which Defendants deny) and give rise to a valid cause

of action under the FDCPA (which Defendants also deny), Plaintiffs cannot maintain litigation in this forum. The terms of the credit card account agreements between each Plaintiff and their credit card's issuers, Citibank, Synchrony Bank, WebBank and Comenity Capital Bank, compel Plaintiffs to arbitrate any claims related to their accounts. Additionally, through these credit card account agreements, Plaintiffs waived their right to participate in any class action related to the accounts, thereby precluding them from serving as class representatives in this action.

**STATEMENT OF FACTS**

**Gabriela Ramirez:**

On or about November 11, 2011, Plaintiff Gabriela Ramirez ("Ramirez") opened a Citibank/Sears credit card account bearing the account number ending in 9027 (the "Account") (*See* Affidavit of Michael Burger, annexed as Exhibit 1, Exhibit C). Enclosed with the credit card was a copy of the effective credit card agreement relating to the Account (the "Credit Card Agreement"), which contained the terms and conditions governing the Account. (Ex. 1, ¶ 11). At the time the Account was charged off, the Credit Card Agreement was still the effective agreement governing the Account. (Ex. 1, ¶ 11).

> The Credit Card Agreement states, in relevant part:
>
> This Card Agreement is your contract with us. It governs the use of your card and account. The enclosed Facts About Interest and Fees ("Fact Sheet") is part of this Agreement. Please read this Agreement, including the Fact Sheet, carefully. Keep them for your records
>
> ****
>
> You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

(*See* Credit Card Agreement, annexed as Exhibit D to Exhibit 1).

301090380v1 0997515

In addition, the Citibank credit card agreement contained an arbitration provision (the "Arbitration Provision") which stated in relevant part:

**ARBITRATION PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**

### Covered claims

- You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

### Arbitration limits

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.

- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

3

- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

\*\*\*\*\*

### Rules for rejecting this arbitration provision

You may reject this arbitration provision by sending a written rejection notice to us at: P.O. Box 790340, St. Louis, MO 63179. Your rejection notice must be mailed within 45 days of account opening. Your rejection notice must state that you reject the arbitration provision and include your name, address, account number and personal signature. No one else may sign the rejection notice. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us. Rejection of this arbitration provision won't affect your other rights or responsibilities under this Agreement, including use of the account.

(*See* Ex. D to Ex. 1.)

Ramirez agreed to the Credit Card Agreement by opening and using the Account. It is evident that Ramirez used the credit card at issue because her Account statements show a balance and payment activity. (*See* Credit Card Statements, Exhibit C to Ex. 1.)

The Credit Card Agreement provided an opportunity to reject the Arbitration Agreement contained in the Credit Card Agreement by written notice within 45 days of opening the Account. (*See* Ex. D to Ex. 1 at p. 5). However, Ramirez never submitted a written notice rejecting the Arbitration Provision and the credit card agreement governed the account at the time of charge off. (Ex. 1 ¶ 11).

Ramirez made her last payment on the Account on November 26, 2015, and Citibank charged off the Account on March 13, 2016. (Ex. 1 ¶ 10). In May, 2016, Citibank sold a portfolio of charged off accounts, including Ramirez's Account, to Midland Funding, LLC ("MF"). (Ex. 1 ¶ 6).

4

**Fidela Avina:**

On or about January 3, 2014, Plaintiff Fidela Avina ("Avina") opened a Synchrony Bank/Old Navy credit card account bearing the account number ending in 5070 (the "Account") (*See* Affidavit of Angel Nayman, annexed as Exhibit 2, ¶ 6). The credit card was mailed to Avina at the address included on her application. (*See* Ex. 1, ¶ 7). Enclosed with the credit card was a copy of the effective credit card agreement relating to the Account (the "Credit Card Agreement"), which contained the terms and conditions governing the Account. (Ex. 1, ¶ 6). Within the billing statement dated April 22, 2015 there was a change in terms to the account ("Updated Credit Card Agreement"), the Updated Credit Card Agreement was still the effective agreement governing the Account. (Ex. 2, ¶ 8).

The Updated Credit Card Agreement states, in relevant part:

**This Agreement.** This is an Agreement between you and Synchrony Bank, 170 Election Road, Suite 125, Draper, UT 84020, for your credit card account shown above. By opening or using your account, you agree to the terms of the entire Agreement. The entire Agreement includes the four sections of this document and the application you submitted to us in connection with the account. These documents replace any other agreement relating to your account that you or we made earlier or at the same time.

(*See* Updated Credit Card Agreement, annexed as Exhibit B to Exhibit 2).

In addition, the Synchrony credit card agreement contained an arbitration provision (the "Arbitration Provision") which stated, in relevant part:

**RESOLVING A DISPUTE WITH ARBITRATION**

**PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION. THIS MEANS THAT: (1) NEITHER A COURT NOR A JURY WILL RESOLVE ANY SUCH DISPUTE; (2) YOU WILL NOT BE ABLE TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING; (3) LESS INFORMATION WILL BE AVAILABLE; AND (4) APPEAL RIGHTS WILL BE LIMITED.**

301090380v1 0997515

**• What claims are subject to arbitration**

1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or The Gap, Inc. if it relates to your account, except as noted below.

2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent court, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.

3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof (including, without limitation, the next paragraph of this section and/or this sentence). However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

**• No Class Actions**

**YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION. ALSO, YOU MAY NOT BRING CLAIMS AGAINST US ON BEHALF OF ANY ACCOUNTHOLDER WHO IS NOT AN ACCOUNTHOLDER ON YOUR ACCOUNT, AND YOU AGREE THAT ONLY ACCOUNTHOLDERS ON YOUR ACCOUNT MAY BE JOINED IN A SINGLE ARBITRATION WITH ANY CLAIM YOU HAVE.**

\* \* \*

- **Governing Law for Arbitration**

This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award.

- **How to reject this section**

**You may reject this Arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to Synchrony Bank, P.O. Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section.**

301090380v1 0997515

(*See* Ex. B to Ex. 2, translated to English)

Avina agreed to the Credit Card Agreement and Updated Credit Card Agreement by opening and using the Account. It is evident that Avina used the credit card at issue because her Account statements show a balance and payment activity. (*See* Credit Card Statements, Exhibit C, D and E to Ex. 2)

The Credit Card Agreement and Updated Credit Card Agreement provided an opportunity to reject the Arbitration Agreement contained in the Credit Card Agreement by written notice within 60 days of opening the Account or after first notification of the right to reject. (*See* Ex. B to Ex. 2). However, Avina never submitted a notice rejecting the Arbitration Provision. (Ex. 2 ¶ 12).

Avina made her last payment on the Account on September 15, 2016, and Synchrony charged off the Account on April 19, 2017. (Ex. 2 ¶ 10). In May, 2017, Synchrony sold a portfolio of charged off accounts, including Avina's Account, to Midland Funding, LLC ("MF"). (Ex. 2 ¶ 13; Affidavit of Michael Burger, annexed hereto as Exhibit 3 ¶ 6).

**Ruel Nieto:**

On or about January 3, 2014, Plaintiff Ruel Nieto ("Nieto") opened a WebBank/Dell Financial Services, LLC credit card account bearing the account number ending in 3036 (the "Account") (*See* Affidavit of Michael Burger, annexed as Exhibit 4, Exhibit C). Enclosed with the credit card was a copy of the effective credit card agreement relating to the Account (the "Credit Card Agreement"), which contained the terms and conditions governing the Account. (*See* Affidavit of Charles Simpson, annexed as Exhibit 5, Exhibit A). At the time the Account was charged off, the Credit Card Agreement was still the effective agreement governing the Account. (Ex. 5).

The Credit Card Agreement states, in relevant part:

> Following is the DELL PREFERRED ACCOUNT CREDIT AGREEMENT that governs the Dell Preferred Account you requested. Please read it carefully. IT CONTAINS VERY IMPORTANT INFORMATION ABOUT YOUR RIGHTS

301090380v1 0997515

AND OBLIGATIONS, AS WELL AS LIMITATIONS AND EXCLUSIONS. UNDER THIS AGREEMENT YOU MAY BE REQUIRED TO RESOLVE DISPUTES WITH WEBBANK, DELL FINANCIAL SERVICES, AND OTHERS THROUGH ARBITRATION ON AN INDIVIDUAL BASIS, RATHER THAN A COURT PROCEEDING. If you reject the terms and conditions contained in the Agreement, you still have time to cancel your Account and avoid any interest charges and other credit costs.

IF YOU WISH TO DECLINE THE TERMS AND CONDITIONS CONTAINED IN THE AGREEMENT, YOU MUST CALL 1-800-879-9500 WITHIN THREE DAYS OF RECEIPT OF THE AGREEMENT. You will need to provide the phone representative with your Dell Preferred Account number, your Dell Inc. customer number and/or your order number(s). The phone representative will arrange with WebBank so that your Account will not become effective, and, if you made a purchase from Dell, either cancel your Dell order or arrange with you for another method of payment. If your order arrives at your home after you have canceled it and the shipment is left at your home without a signature, do not open the boxes. Call the Carrier and tell them that you are refusing shipment. The Carrier will arrange with you to pick up the shipment and return it to Dell.

If you received your Dell order before you received this document, you can still decline this offer of credit by calling 1-800-879-9500 as described above.

If you do not contact Dell or you fail to return your order to Dell within the 21 day return period after contacting Dell and cancelling your Account, your acceptance of any products you purchased constitutes use of the credit offered and acceptance of the terms and conditions of the Agreement. Your acceptance of the Agreement will authorize Dell and/or its affiliates to request an advance of funds pursuant to the Agreement to pay for your purchase from Dell.

(*See* Credit Card Agreement, annexed as Exhibit A to Exhibit 5).

In addition, the WebBank/Dell Financial Services, LLC credit card agreement contained an arbitration provision (the "Arbitration Provision") which stated in relevant part:

### ARBITRATION NOTICE

**THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE. PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ANY CLAIM RELATING TO YOUR ACCOUNT MAY BE RESOLVED BY BINDING INDIVIDUAL ARBITRATION. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT, AND ARBITRATION DECISIONS ARE SUBJECT TO VERY LIMITED REVIEW. CLAIMS MAY BE ARBITRATED ONLY ON AN**

**INDIVIDUAL BASIS. IF EITHER PARTY CHOOSES TO ARBITRATE A CLAIM, NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM, OR TO PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE ACTION WITH RESPECT TO SUCH CLAIM.**

**Arbitration.** Except as expressly provided herein, any claim, dispute or controversy (whether based upon contract, tort, intentional or otherwise, constitution, statute, common law, or equity and whether pre-existing, present or future, including initial claims, counter-claims, cross-claims and third-party claims), arising from or relating to you applying for, obtaining, or using this Account, this Agreement (including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement), or the relationships which result from this Agreement ("Claim") shall be decided, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules and procedures of the arbitration administrator (including any applicable procedures for consumer-related disputes) in effect at the time the Claim is filed. The party initially requesting arbitration shall select either the American Arbitration Association ("AAA") or JAMS as the arbitration administrator. You may change the selection to the other organization listed within 30 days after you receive notice of an election to arbitrate. If a selected arbitration administrator does not agree to arbitrate a Claim, the remaining arbitration administrator shall be selected. Claims may be referred to an administrator other than the AAA or JAMS if both AAA and JAMS are not available. We agree not to invoke our right to arbitrate any individual Claim you bring in small claims court or an equivalent court so long as the Claim is pending only in that court. It is the intent of the parties to require Claims to be submitted to arbitration on an individual basis only. **Claims subject to this arbitration provision may not be joined or consolidated in arbitration with any Claim of any other person or be arbitrated on a class basis, in a representative capacity on behalf of the general public or on behalf of any other person.**

For the purposes of this arbitration provision, the terms "we" and "us" shall mean WebBank and Dell Financial Services, L.L.C., their parents, direct and indirect subsidiaries, affiliates, licensees, predecessors, successors, assigns and any purchaser of the Account or any receivables arising from the use of the Account, and each of their respective employees, directors and representatives. In addition, for the purposes of this arbitration provision, "we" and "us" shall mean any third party providing any products or services to you or us in connection with the Account (including but not limited to any credit bureau, debt collector or merchant, and including their parents, direct and indirect subsidiaries, affiliates, licensees, predecessors, successors and assigns, and each of their respective employees, directors and representatives) if such third party is a co-defendant with us in any Claims asserted by you or if any Claims asserted by you against such third party arise from or are related to the Account or any products or services provided to you or us in connection with the Account. For the purposes of this arbitration provision, the term "you" shall mean you and any person authorized by you to use the Account.

\* \* \*

9

This arbitration provision shall survive termination of your Account as well as the repayment of all amounts you owe under the Agreement. If any provision of this arbitration agreement is found unenforceable, the unenforceable provision shall be severed, and the remaining arbitration terms shall be enforced (but in no case shall there be a class arbitration). In the event of a conflict or inconsistency between the rules and procedures of the arbitration administrator and this arbitration provision, this arbitration provision shall govern.

**YOU ACKNOWLEDGE THAT IF A CLAIM ARISES YOU MAY BE REQUIRED TO RESOLVE THE CLAIM THROUGH ARBITRATION AND ARE GIVING UP YOUR RIGHTS TO LITIGATE THAT CLAIM IN A COURT OR BEFORE A JURY OR TO PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE ACTION WITH RESPECT TO SUCH A CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO BE UNAVAILABLE OR MAY BE LIMITED IN ARBITRATION.**

(*See* Ex. A to Ex. 5).

Nieto agreed to the Credit Card Agreement by opening and using the Account. It is evident that Nieto used the credit card at issue because his Account statements show a balance and payment activity. (*See* Credit Card Statements, Exhibit B, C and D to Ex. 5)

The Credit Card Agreement provided an opportunity to reject the Arbitration Agreement contained in the Credit Card Agreement by written notice within 3 days of receiving the credit card agreement. (*See* Ex. A to Ex. 5 at p. 5). However, Nieto never submitted written notice to WebBank/Dell Financial Services, LLC to reject the Arbitration Provision. (Ex. 5).

Nieto made his last payment on the Account on October 16, 2015, and WebBank/ Dell Financial Services, LLC charged off the Account on May 23, 2016. (Ex. 4 ¶ 10). In June, 2016, WebBank/ Dell Financial Services, LLC sold a portfolio of charged off accounts, including Nieto's Account, to Midland Funding, LLC ("MF"). (Ex. 4, Ex. A).

**Katherine Ranos:**

On or about September 1, 1990, Plaintiff Katherine Ranos ("Ranos") opened a Citibank/Sears credit card account bearing the account number ending in 5179 (the "Account") (*See* Affidavit of Michael Burger, annexed as Exhibit 6, Exhibit C). Enclosed with the credit card was a

10

copy of the effective credit card agreement relating to the Account (the "Credit Card Agreement"), which contained the terms and conditions governing the Account. (Ex. 6, Exhibit D). At the time the Account was charged off, the Credit Card Agreement was still the effective agreement governing the Account. (Ex. 6, Ex. D).

The Credit Card Agreement states, in relevant part:

> This Card Agreement is your contract with us. It governs the use of your card and account. The enclosed Facts About Interest and Fees ("Fact Sheet") is part of this Agreement. Please read this Agreement, including the Fact Sheet, carefully. Keep them for your records
>
> ****
>
> You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

(*See* Credit Card Agreement, annexed as Exhibit D to Exhibit 6).

In addition, the Citibank credit card agreement contained an arbitration provision (the "Arbitration Provision") which stated in relevant part:

> *ARBITRATION PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.*
>
> **THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW.**
>
> **Covered claims**
>
> - You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").

301090380v1 0997515

- **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**

Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or an affiliated/parent/subsidiary company.

<strong>Arbitration limits</strong>

- Individual Claims filed in a small claims court are not subject to arbitration, as long as the matter stays in small claims court.

- We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt.

- Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class or representative basis and may award relief only on an individual basis. If arbitration is chosen by any party, neither you nor we may pursue a Claim as part of a class action or other representative action. Claims of 2 or more persons may not be combined in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

*****

<strong>Rules for rejecting this arbitration provision</strong>

You may reject this arbitration provision by sending a written rejection notice to us at: P.O. Box 790340, St. Louis, MO 63179. Your rejection notice must be mailed within 45 days of account opening. Your rejection notice must state that you reject the arbitration provision and include your name, address, account number and personal signature. No one else may sign the rejection notice. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us. Rejection of this arbitration provision won't affect your other rights or responsibilities under this Agreement, including use of the account.

301090380v1 0997515

(*See* Ex. D to Ex. 6)

Ranos agreed to the Credit Card Agreement by opening and using the Account. It is evident that Ranos used the credit card at issue because her Account statements show a balance and payment activity. (*See* Credit Card Statements, Exhibit C to Ex. 6)

The Credit Card Agreement provided an opportunity to reject the Arbitration Agreement contained in the Credit Card Agreement by written notice within 45 days of opening the Account. (*See* Ex. D to Ex. 6). However, Ranos never submitted a written notice rejecting the Arbitration Provision. (Ex. 6).

Ranos made her last payment on the Account on November 18, 2015, and Citibank charged off the Account on June 30, 2016. (Ex. 6 ¶ 9). In December, 2016, Citibank sold a portfolio of charged off accounts, including Ranos' Account, to Midland Funding, LLC ("MF"). (Ex. 6, ¶ 6).

**Evalina Gonzalez**

On or about December 5, 2013, Plaintiff Evalina Gonzalez ("Gonzalez") opened a Citibank/Zales account which was purchased by Comenity Capital Bank. (*See* Affidavit of Brakken Davis, annexed as Exhibit 7, ¶ 10). Comenity Bank/Zales Jeweler credit card account bearing the account number ending in 2979 (the "Account") was reissued to Gonzalez. (Ex. 7, ¶ 11). The credit card was mailed to Gonzalez at her address record. (Ex. 7, ¶ 11). Enclosed with the credit card was a copy of the effective credit card agreement relating to the Account (the "Credit Card Agreement"), which contained the terms and conditions governing the Account. (Ex. 7, ¶ 11). At the time the Account was charged off, the Credit Card Agreement was still the effective agreement governing the Account. (Ex. 7, ¶ 11, 12).

The Credit Card Agreement states, in relevant part:

> This Agreement covers the Terms and Conditions of your account with us. In this document, you will find important information about using and managing your account, including a Privacy Statement and information concerning your billing rights. Your use of the account, or failure to close the account within the 30 days of

13

receiving this document, indicates your acceptance of the terms of this agreement, including the assessment of any finance charges and fees.

**Section I of this agreement also includes a Jury Trial Waiver and an Arbitration provision in the event of a dispute.**

- **You have a right to reject this Arbitration provision.**
- **If you do not reject this Arbitration provision, it will be part of this agreement and will:**
    - **Eliminate your right to a trial by jury; and**
    - **Substantially affect your rights, including your right to bring, join in or participate in class proceedings.**

Please read each section carefully and keep this document for your records.

(*See* Credit Card Agreement, annexed as Exhibit A to Exhibit 7).

In addition, the Citibank credit card agreement contained an arbitration provision (the "Arbitration Provision") which stated in relevant part:

**C. Arbitration Provision**

**READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A**

**SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.**

**1. Your Right to Reject: If you don't want this Arbitration Provision (and any prior arbitration agreement between you and us ("Prior Arbitration Agreement")) to apply, you may reject it by mailing us a written rejection notice which gives the name of each Cardholder and contains a statement that you (both of you, if more than one) reject the Arbitration Provision of this Agreement. The rejection notice must be sent to us at Comenity Capital Bank, PO Box 182422, Columbus, OH 43218-2422. A rejection notice is only effective if it is signed by you (all of you, if more than one) and if we receive it within thirty (30) calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. Your rejection of this Arbitration Provision will not affect any other provision of this Agreement or your ability to obtain credit.**

**2. Parties Subject to Arbitration:** Solely as used in this Arbitration Provision (and not elsewhere in this Agreement), the terms "we," "us" and "our" mean (a) Comenity Capital Bank, any parent, subsidiary or affiliate of the Bank and the

301090380v1 0997515

employees, officers and directors of such companies (the "Bank Parties"); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party.

**3. Covered Claims:** "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account. "Claim" includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). "Claim" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof (including, without limitation, the prohibition against class proceedings, private attorney general proceedings and/ or multiple party proceedings described in Paragraph C.7 (the "Class Action Waiver"), the last sentence of Paragraph C.13 and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

\* \* \*

**6. Court and Jury Trials Prohibited; Other Limitations on Legal Rights: IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM. ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.**

**7. Prohibition Against Certain Proceedings: IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOU NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.**

301090380v1 0997515

(*See* Ex. A to Ex. 7)

Gonzalez agreed to the Credit Card Agreement by opening and using the Account. It is evident that Gonzalez used the credit card at issue because her Account statements show a balance and payment activity. (*See* Credit Card Statements, Exhibit B and C to Ex. 7)

The Credit Card Agreement provided an opportunity to reject the Arbitration Agreement contained in the Credit Card Agreement by written notice within 3 days of receiving the credit card agreement. (*See* Ex. A to Ex. 7). However, Gonzalez never submitted written notice to Comenity Capital Bank to reject the Arbitration Provision. (Ex. 7, ¶ 16).

Gonzalez made her last payment on the Account on April 13, 2016, and Comenity Capital Bank charged off the Account on November 17, 2016. (Ex. 7 ¶ 14, 15). In November, 2016, Comenity Capital Bank sold a portfolio of charged off accounts, including Gonzalez 's Account, to Midland Funding, LLC ("MF"). (Affidavit of Michael Burger, annexed as Exhibit 8, ¶ 6).

## ARGUMENT

### I.    The Federal Arbitration Act Requires Enforcement of the Arbitration Agreement.

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."); *see also AT&T Mobility*, 131 S.Ct. at 1748 ("Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written . . ..."). The United States Supreme Court has repeatedly recognized that the FAA is extremely broad and applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v.*

16

*Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967).

The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Perry v. Thomas*, 482 U.S. 483, 490-91 (1987) (arbitration agreements falling within the scope of the FAA "must be 'rigorously enforce[d]'" (citations omitted)); *AT&T Mobility*, 131 S.Ct. at 1745. The "'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility*, 131 S.Ct. at 1748 (citations omitted).[1] In short, the "overarching purpose of the FAA, evidenced in the text of §§ 2, 3 and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 1748. Section 4 of the FAA "requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . ...." *Id.* The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Under the FAA, arbitration must be compelled where, as here: (1) a valid, enforceable agreement to arbitrate exists and (2) the claims at issue fall within the scope of that agreement. *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). An arbitration agreement governed by the FAA, like the arbitration provisions here, is presumed to be valid and enforceable. *See Id.*; *Mitsubishi Motors Corp. v. Solver Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985).[2]

---

[1] *See also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 130 S.Ct. 1758, 1775 (2010) (citations omitted).
[2] The FAA preempts any state law "to the extent that [the state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in passing the FAA.

301090380v1 0997515

### a. The Arbitration Provisions are Valid and Enforceable

As an initial matter, the United States Supreme Court has consistently held that the party resisting arbitration—Plaintiffs in this case—bears the burden of proving that the arbitration agreement is unenforceable or that the claims raised do not fall within the purview of the arbitration agreement. *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 483 (1989); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000) ("the party resisting arbitration bears the burden of proving that Congress intended to preclude arbitration of the statutory claims at issue"). As demonstrated below, Plaintiff cannot meet this burden.

The arbitration provisions are expressly governed by federal law, Utah law or South Dakota law. (*See* Ex. A to Ex. 1 at p. 4) ("This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA."; "Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement"; "This Arbitration Provision involves interstate commerce and is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and not by any state arbitration law"). While the FAA governs the enforceability of the arbitration agreements according to their terms, Utah or South Dakota law governs the determination of whether a valid agreement to arbitrate exists. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state-law principles that govern the formation of contracts."); *see also Harris v. Midland Credit Mgmt*, 2016 WL 475349, at *2 (D.N.J. Feb. 8, 2016)(applying "ordinary state-law principles that govern the formation of contracts" to determine if the parties agreed to arbitrate)

---

*Volt Info. Scis.*, 489 U.S. at 477 (internal quotation marks and citations omitted); *see also AT&T Mobility,* 131 S.Ct. at 1753; *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984) (striking down California law that sought to insulate certain issues from arbitration).

18

(*citing Kirles v. Dicke, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009).

In Utah, the elements of a valid contract include proper subject matter, offer and acceptance, competent parties, and consideration. *Neiderhauser Builders & Dev. Corp. v. Campbell*, 824 P.2d 1193, 1197-98 (Ct. App. Utah 1992). Further, credit agreements, such as the credit card agreements in this case, are binding and enforceable (even without any signature by the party to be charged) if:

(i)      the debtor is provided with a written copy of the terms of the agreement;

(ii)     the agreement provides that any use of the credit offered shall constitute acceptance of those terms; and

(iii)    after the debtor receives the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise uses the credit offered.

Utah Code Ann. § 25-5-4(2)(e); *see also MBNA Am. Bank, N.A. v. Goodman*, 140 P.3d 589, 592 (Ct. App. Utah 2006) (holding that credit agreement was enforceable because defendant "was provided with a copy of the Agreement, the Agreement contained a provision that acceptance of the Agreement's terms occurred through use of the credit card, and [defendant] undisputedly used the credit account.").

Utah, like most states, strongly endorses arbitration as an alternative method to resolving disputes. *See Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 40 P.3d 599, 606 (Utah S. Ct. 2002) ("It is the policy of the law in Utah to interpret contracts in favor of arbitration, 'in keeping with our policy of encouraging extrajudicial resolution of disputes when the parties have agreed not to litigate.'"), *citing Reed v. Davis County Sch. Dist.*, 892 P.2d 1063, 1065 (Utah Ct.App. 1995); *see also McCoy v. Blue Cross Blue Shield*, 2001 UT 31, ¶ 14, 20 P.3d 901 ("It is our policy to interpret arbitration clauses in a manner that favors arbitration."); *Chandler v. Blue Cross Blue Shield*, 833 P.2d 356, 358 (Utah 1992) ("this court has also recognized the strong public policy in favor of arbitration 'as an approved, practical, and inexpensive means of settling disputes and easing court congestion.'").

In South Dakota, the essential elements of a contract are: (1) whether the parties are capable

19

of contracting; (2) consent to contract; (3) a lawful object; and (4) sufficient cause or consideration. *See* S.D. Codified Laws § 53-1-2 (2018). South Dakota courts have consistently favored the resolution of disputes by arbitration. *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W.2d 812, 814 (SD 2002).

Here, Plaintiffs agreed to the terms of the credit card agreements including the arbitration provisions within the agreements. Ramirez's and Ranos' credit card agreement provides: " This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card." (Exs. D. to Exs. 1 and 6). Avina's credit card agreement provides: "By opening or using your account, you agree to the terms of the entire Agreement." (Ex. B to Ex. 2). Nieto's credit card agreement provides: " If you do not contact Dell or you fail to return your order to Dell within the 21 day return period after contacting Dell and cancelling your Account, your acceptance of any products you purchased constitutes use of the credit offered and acceptance of the terms and conditions of the Agreement." (Ex. A to Ex. 5). Gonzalez's credit card agreement provides: "Your use of the account, or failure to close the account within the 30 days of receiving this document, indicates your acceptance of the terms of this agreement, including the assessment of any finance charges and fees." (Ex. A to Ex. 7). As explained above, Plaintiffs used their accounts and ultimately defaulted on their obligations to make payments to the Account. Notably, Plaintiffs did not reject any provision of their credit card agreements. As the purchaser and assignee of the Account, MF has the right to enforce the arbitration provisions. *See Messing v. Rosenkrantz & EMSA*, 872 F.Supp. 539, 541 (N.D. Ill. 1995) (stating that "[a]n agreement containing an arbitration clause covers non-signatories under common law contract and agency principles"); *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir. 1999) (the court enforced an arbitration when the assignee was bound by the agreement under the traditional principles of contract of agency law); *Derbin v. Access Wealth Mgmt., LLC*, 2011 WL

301090380v1 0997515

4751992, at *5 (D.N.J. Oct. 7, 2011) (successor had a right to enforce arbitration agreement). For these reasons, the credit card agreements and arbitration provisions are valid and enforceable by Defendants.

### b. The Claims Fall Within the Scope of the Arbitration Provision

In addition to valid and enforceable arbitration provisions, the claims raised in Plaintiffs' Complaint clearly fall within the scope of the arbitration provisions applicable to Plaintiffs' accounts. It is well settled that an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999) (any doubts concerning the scope of an arbitration clause and the issues arbitrable thereunder should be resolved in favor of arbitration). Where the clause is broad, as here, there is a heightened presumption of arbitrability such that "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs*, 475 U.S. at 650.

Here, the arbitration provisions cover: "any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship;" " any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or The Gap, Inc. if it relates to your account;" "any claim, dispute or controversy (whether based upon contract, tort, intentional or otherwise, constitution, statute, common law, or equity and whether pre-existing, present or future, including initial claims, counter-claims, cross-claims and third-party claims), arising from or relating to you applying for, obtaining, or using this Account, this Agreement (including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement), or the relationships which result from this Agreement," and "any claim, dispute

21

or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account," (*See* Exs. D. to Exs. 1 and 6; Ex. B to Ex. 2; Ex. A to Ex. 5; Ex. A to Ex. 7). Thus, the Arbitration Provisions broadly covers "any claim" that is "related to" the accounts. It is clear Plaintiffs' FDCPA claims arise out of MCM's attempts to collect on the accounts because they are premised on language in a collection letter sent by MCM to each plaintiff and so "relate[] to [the] account".

Courts have consistently recognized that an FDCPA claim "relates to" an agreement that gave rise to the debt sought to be collected and thus have required FDCPA claims to be arbitrated. *See Koch v. Compucredit Corp.*, 543 F.3d 460, 466 (8th Cir. 2008) (enforcing arbitration for FDCPA claim because "a dispute over the collection of a debt incurred under the credit agreement is a 'controversy arising from or related to . . . this Agreement.'"); *see also Jeffreys v. Midland Credit Mgmt.*, 2016 WL 4443164, at *2 (D.N.J. Aug. 18, 2016) (holding that FDCPA claim fell within the arbitration agreement of a credit card account); *Hilton v. Midland Funding LLC*, Civ. No. 15-10322, 2016 WL 1253273, at *4 (E.D. Mich. Mar. 31, 2016) (holding that credit agreement providing that: "any claim relating to your account may be resolved by binding arbitration" covered plaintiff's FDCPA claims); *Ashraf v. Nevada Title and Payday Loans*, No. 2:15-cv-1353-GMN-CVF, 2016 WL 843258, at *3 (D. Nev. Mar. 1, 2016) (holding that FDCPA claims arising out of collection on a loan agreement fell within the scope of the arbitration agreement of any "claims arising from or relating to the Loan Agreement."); *Conway ex rel. Conway v. Done Rite Recovery Servs.*, 2015 U.S. Dist. LEXIS 56980 (N.D. Ill. Apr. 30, 2015) (holding a FDCPA claim was arbitrable); *Garcia v. Weltman, Weinberg & Reis Co.,* No. 2:13-cv-14362, 2014 WL 1746522, at *3 (E.D. Mich. Apr. 30, 2014) (holding that FDCPA claims were arbitrable in light of broad arbitration agreement covering "any dispute, controversy or claim . . . arising out of or in any way related to the Agreement"); *Harris*, 2016 WL 475349, at *2 (same); *Hornicek v. Cardworks Servicing, LLC*, No. Civ. A. 10-3631, 2011 WL 2623274, at

22

*4 (E.D. Pa. June 29, 2011) (holding that the plaintiff's FDCPA claim arose from the collection of the debt allegedly due under the cardholder agreement and therefore fell within the scope of the cardholder agreement's arbitration provision covering "all claims . . . relating to [the] Account"); *Johnston v. Arrow Fin. Servs., LLC*, No. 06 C 0013, 2006 WL 2710663, at *4 (N.D. Ill. Sept. 15, 2006) (Plaintiffs' complaint based on letters to collect on debts fell within arbitration agreement). Similar to the arbitration clauses in the above cases, the arbitration provisions in the credit card agreements in this case were broadly written to encompass "any dispute or claim" that "relates to" the accounts.

## II.    Arbitration Must Be Compelled On An Individual Basis Because Plaintiff Has Waived Her Right To Participate In A Class Action.

In addition to agreeing to arbitrate, Plaintiffs also affirmatively waived their right to proceed in this forum or at arbitration as a class representative or class member when they entered into the credit card agreements. Each credit card agreement applicable to each account at issue specifies that if the arbitration provision is not rejected, then the cardholder agrees that they will not be able to participate in a class action. As noted by the U.S. Supreme Court, "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *AT&T Mobility*, 563 U.S. at 344. Pursuant to the credit card agreements and the Supreme Court's interpretation of the FAA, Plaintiffs cannot institute class action arbitrations. Accordingly, arbitrations should be compelled on an individual, non-class basis in accordance with the express terms of the previously stated arbitration provisions.

## III.    The Action Should Be Stayed Pending The Instant Motion.

Defendants respectfully request that this Court stay this action and discovery pending the instant motion. Section 3 of the FAA provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see AT&T Mobility*, 131 S.Ct. at 1748 (Section 3 of the FAA "requires courts to stay litigation in arbitral claims

301090380v1 0997515

pending arbitration of those claims 'in accordance with the terms of the agreement.'"); *Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 561 (7th Cir. 2008); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 732 n.7 (7th Cir. 2005) *citing Tice v. Am. Airlines, Inc.*, 288 F.2d 313, 318 (7th Cir. 2002). Therefore, this Court should stay the action and grant Defendants' motion to compel arbitration.

## IV. Conclusion

Plaintiff cannot meet their burden to establish that the arbitration provisions are not valid. They also cannot establish that the claims asserted in the Complaint fall outside of the scope of the arbitration provisions in each of their agreements. Defendants respectfully submit that the Court should grant Defendants' motion to stay the entire action, including discovery, and order the parties to arbitration on an individual basis.

WHEREFORE, Defendants, MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC. and ENCORE CAPITAL GROUP, INC., respectfully request that this Court enter an order granting Defendants' motion to compel arbitration.

Respectfully submitted,

MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC. AND ENCORE CAPITAL GROUP, INC., Defendants

/s/ Lindsey A.L. Conley
David M. Schultz
Lindsey A.L. Conley
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Tel: 312-704-3000
E-mail: dschultz@hinshawlaw.com
E-mail: lconley@hinshawlaw.com

301090380v1 0997515

<u>**CERTIFICATE OF SERVICE**</u>

  I, Lindsey A.L. Conley, an attorney, certify that I shall cause to be served a copy of **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION** upon the following individual(s), by deposit in the U.S. mail box at 222 North LaSalle Street, Chicago, Illinois 60601, postage prepaid, messenger delivery, Federal Express, facsimile transmitted from (312) 704-3001, or electronically via the Case Management/Electronic Case Filing System ("ECF") as indicated, this on March 16, 2018.

| | |
|---|---|
|   <u> X </u>   CM/ECF | *Attorneys for Plaintiff(s)* |
|   <u>    </u>   Facsimile | Michael J. Wood |
|   <u>    </u>   Federal Express | Celetha C. Chatman |
|   <u>    </u>   E-Mail & U.S. Mail | Holly McCurdy |
|   <u>    </u>   Messenger | Sarah Barnes |

COMMUNITY LAWYERS GROUP, LTD.
73 W. Monroe Street, Suite 514
Chicago, IL  60603
Phone: (312) 757-1880
Fax: (312) 265-3227
cchatman@communitylawyersgroup.com
mwood@communitylawyersgroup.com

| | |
|---|---|
| David M. Schultz | <u>*/s/ Lindsey A.L. Conley*</u> |
| Lindsey A.L. Conley | Lindsey A.L. Conley |
| HINSHAW & CULBERTSON LLP | One of the Attorneys for Defendants |
| 222 North LaSalle Street, Suite 300 | |
| Chicago, IL 60601-1081 | |
| Telephone: 312-704-3000 | |
| Facsimile: 312-704-3001 | |
| dschultz@hinshawlaw.com | |
| lconley@hinshawlaw.com | |