**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIELA RAMIREZ, FIDELA AVINA, | ) | |
| RUEL NIETO, KATHERINE RANOS, and | ) | |
| EVALINA GONZALEZ, on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | Civil Action No.  17-cv-02626 |
| v. | ) | |
| | ) | Hon. Jorge L. Alonso |
| MIDLAND FUNDING, LLC, and MIDLAND | ) | |
| CREDIT MANAGEMENT, INC. and ENCORE | ) | Magistrate Judge Susan E. Cox |
| CAPITAL GROUP, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL**
**ARBITRATION**

Plaintiff, Gabriela Ramirez, individually and on behalf of others similarly situated, by and

through her attorneys, Community Lawyers Group, Ltd., and for her Response to Defendants'

Motion to Compel Arbitration:

**INTRODUCTION**

Plaintiffs filed their First Amended Complaint in this class action on November 17, 2017

alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, *et seq*. ("FDCPA").

(Dkt. #34, First Amended Complaint). Plaintiff's claims arise from a letter sent by Midland Credit

Management, Inc. ("MCM") on or around August 29, 2016.  On March 16, 2018, Defendants filed

a Motion to Compel Arbitration ("Defendants' Motion") in the above-captioned case. (Dkt. #58).

In their Motion, Defendants claim that Defendant Midland Funding, LLC ("Midland") was

assigned Plaintiff's Citibank/Sears credit card account for the purpose of debt collection. (Dkt.

#59, Pg. 4). Defendants follow this claim with several conclusory and unsupported statements.

Defendants first claim that Plaintiffs are required to submit their claims to arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. §2. Second, Defendants claim that Plaintiffs entered into agreements with their respective creditors, which included an arbitration provisions, and that Defendants are entitled to enforce those provisions against Plaintiffs. Lastly Defendants claim that Plaintiffs' allegations against Defendants fall within the scope of the arbitration provision.

None of these statements or claims actually prove that Defendant Midland was in fact validly assigned all rights to Plaintiffs' respective accounts, including the right to enforce the arbitration provisions in the agreements for debt collection purposes. As will be shown below, Plaintiffs have not admitted or conceded that Defendant Midland was validly assigned the accounts and all rights thereunder, including the right to enforce the arbitration provisions. Defendants have further failed to prove that valid arbitration provisions exists that govern Plaintiffs' claims, or that Defendant Midland has been assigned the accounts and has the right to enforce the arbitration provisions. Therefore, Defendants' Motion and request to proceed with arbitration must be denied and Plaintiffs' claims should be permitted to proceed to litigation.

## LEGAL STANDARD

In order for a court to compel arbitration, the court must decide (1) whether a valid arbitration agreement exists, and (2) whether the arbitration agreement applies to the particular dispute. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003). Courts have found that, under the Federal Arbitration Act, "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Parties cannot be compelled to submit a claim to arbitration for claims that they have not agreed to submit to arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

In determining whether arbitration should be compelled, courts should apply state contract law. *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). Arbitration agreements can be "invalidated by 'generally applicable contract defenses.'" *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 333 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687(1996)).

## ARGUMENT

### I. Defendant Has Not Proven It Is the Assignee of Plaintiff's Account nor That It Has the Right to Enforce the Arbitration Provision

Defendants seek to enforce arbitration pursuant to generic cardholder agreements, standard preprinted forms with no signature lines for the parties, which allegedly apply to any dispute and can be enforced by Defendants as non-signatories acting as "assignees" of the original creditor.

A similar argument was recently made in support of an attempt to enforce an arbitration provision before Judge Lee, who denied defendants' motion to compel arbitration. In *Lillegard v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 2017 WL 1954545 (N.D. Ill. May 11, 2017), plaintiff brought suit alleging violations of the FDCPA. Defendants had purchased plaintiff's account from a previous debt collector not a party to the action, which had purchased the debt from Citibank. Defendants argued plaintiff's claim was subject to arbitration, alleging the provision "survive[d] the transfer, sale, or assignment of the [a]ccount," thereby permitting them to invoke it in that case. *Id.* at *1. The court declined to compel arbitration, holding that plaintiff had raised a number of genuine issues such that it could not conclude at that stage that the parties had formed an agreement to arbitrate. *Id.* at *4.

Plaintiff in *Lillegard* pointed out that the Citibank terms and conditions defendants provided were dated as though they were issued in 2008, however plaintiff had opened her account with Citibank in 2006. *Id.* The court found the discrepancy in dates suggested the terms and conditions are not "those that controlled [p]laintiff's relationship with Citibank", thus plaintiff had

raised an issue "as to the formation of the parties' arbitration agreement" that the court could not resolve at that stage. *Id.*

The court held that, based on the language of the purchase and sale agreement, it was at a loss to know what, if anything, the agreement said about defendants' "ability to invoke arbitration as to [p]laintiff's account. While it may be that, as an assignee, [d]efendants are well within their rights to seek to compel arbitration, … the [c]ourt cannot conclude as much on the present record." *Id.*

The case of *Henggeler v. Brumbaugh & Quandahl, P.C., LLO*, 894 F. Supp. 2d 1180 (D. Neb. Sept. 12, 2012) is particularly on point. In *Henggeler*, the court denied defendant debt collector's motion to compel arbitration, holding that defendant failed to show (1) that a valid agreement to arbitrate existed, *and* (2) that there had been a valid assignment of the purported debt to defendant from the original creditor. *Id.* at 1187. In reaching its decision that defendant had not shown a valid agreement to arbitrate existed, the court explained that defendant only submitted a generic card member agreement from the original creditor, which was unsigned and thus provided no evidence that plaintiff was a party to that agreement. *Id.* Plaintiff also stated she had not seen the agreement. Additionally, defendant failed to provide the court with a signed AT&T application, or an affidavit from any person with personal knowledge that plaintiff ever signed such an agreement. *Id.*

The court also explained its reasons for finding defendant had not shown it had a valid assignment of the debt from the original creditor. Defendant provided incomplete evidence of a sale with nothing to show that plaintiff's account was one of those sold to defendant. The data file purportedly containing the accounts sold to defendant was not provided to the court. *Id.* Finally, the actual sales agreement was heavily redacted and the affidavits defendant relied on were not

based on personal knowledge, contained hearsay, and lacked foundation. *Id.* at 1188. The court found it "prudent to exercise caution and to demand sufficiently documented proof of consumer indebtedness in a case, such as this, involving a debt buyer." *Id.*

### A. Gabriela Ramirez

Here, Defendants have not produced the Forward Flow Purchase and Sale Agreement, (which would accompany a bill of sale with sufficient supporting documentation) to prove that it was in fact validly assigned Plaintiff Gabriela Ramirez's Citibank/Sears credit card account and all rights thereunder, let alone any documentation evidencing how and when the specific alleged assignment took place. Nor have Defendants produced any evidence or documentation to support its assertion that the credit card agreement attached to Michael Burger's Affidavit is the agreement that governed Ms. Ramirez's account and relationship with Citibank/Sears. Further, Defendants failed to specifically state the consideration which was paid for the assignment. The entirety of the documentation provided by Defendants fails to effectively establish the chain of assignment necessary to recover in their own names, respectively.

Defendants here have also failed to produce several of the items the *Henggeler* court identified as vital to proving that both a valid arbitration agreement exists and a valid assignment of the account occurred. Defendants have only produced what appear to be generic card member agreements from 2015, 2013, and 2016, respectively, with no signature lines and no evidence that those particular agreements in fact applied to Plaintiff Ramirez's account. Furthermore, the affidavit of Michael Burger does not save Defendants. It includes as an exhibit a purported Bill of Sale and Assignment, which references a heavily redacted Asset Schedule (also included). Further, it does not show that Mr. Burger has personal knowledge that Plaintiff ever actually signed or received the card member agreements. Moreover, Exhibit B to Ms. Terri Bergman's affidavit

merely indicates that pursuant to some Forward Flow Purchase and Sale Agreement, which is *not* attached, some set of unidentified accounts was sold to Midland, together with the right, title, and interest to those accounts. (*See* Exhibit 1, Dkt. #59-1, p. 7-8).

The Bill of Sale and Assignment document offered by Defendants references yet another document called Exhibit 1, which purportedly contains a list of the accounts and other assets that were assigned, transferred, and sold to Defendants. (*See id.*). Defendants and Mr. Burger claim this provides evidence that Plaintiff's account was in fact one of those sold to Defendants. (Dkt. #59, p. 3-4). A cursory inspection of this document reveals that it shows no such thing, and instead is nearly completely redacted. (See Dkt. #59-1, p. 8). How this relatively blank document can provide evidence that Plaintiff's account was in fact one of the many transferred to Defendants pursuant to some purchase and sale agreement, is entirely unclear, and Defendants offer no more than the conclusory assertion that this heavily redacted asset schedule is sufficient evidence that Plaintiff's account was actually part of what was sold to Defendants. (Dkt. #59-1, p. 10). Defendants then attached what it claims to be records from the media file allegedly provided by the original creditor, however, Defendant provides no proof that that the document is anything more than a document drafted by Defendant. (See Dkt. #59-1, p. 13). Defendants' affidavit of Terri Bergman does not save it, as Ms. Bergman does not specifically reference Plaintiff's account. (See Dkt. #59-1, p. 7, 10). Defendants claim that Plaintiff Ramirez opened an account with Citibank/Sears on November 11, 2011. (Dkt. 59, p. 2). Yet Defendants provided credit card agreements from 2015, 2013, and 2016. As in *Lillegard*, the Court should find that the discrepancy in dates suggests the terms and conditions are not "those that controlled [P]laintiff's relationship with Citibank," which calls into question the formation of the parties' arbitration agreement." *Lillegard*, 2017 WL 1954545 (N.D. Ill. May 11, 2017).

Defendants supplemented their Motion to Compel on April 16th, 2018, however, the additional documents are lacking the information needed definitively identify whether Plaintiff Ramirez's account was actually sold or assigned to Defendant. (Dkt. #64-3). The Bill of Sale refers to an Asset Schedule which does not specifically describe Plaintiff Ramirez's account and is therefore inadequate. (Dkt. #64-3, p. 27).

### B.    Fidela Avina

Defendants also failed to prove that they were validly assigned Plaintiff Fidela Avina's alleged Synchrony debt, as Defendants did not produce the corresponding Forward Flow Purchase and Sale Agreement. Defendants did not provide any valid information regarding how and when the alleged assignment took place. Instead, Defendants provided an affidavit from Angel Nayman of Synchrony and Michael Burger of Midland purporting to attest to the sale of the debt. (Dkt. #59-2, p. 2-4; Dkt. #59-3, p. 2-3). However, the former affidavit simply references exhibits, which include generic credit card agreements. (Dkt. #59-2, p. 6-22). The exhibits also include a purported Bill of Sale, heavily redacted Purchase Price Reconciliation/Funding Instructions, and an Affidavit of Sale – none of which actually reference the assignment of Plaintiff's Avina's alleged debt. (Dkt. #59-2, p. 34-36; Dkt. #59-3, p. 7-10). Here, as in *Lillegard* and *Henggeler*, Defendants have not authenticated the purported credit card agreements, nor the assignment of Plaintiff Avina's alleged debt. Again, Defendants attached what purports to be records from the media file allegedly provided by Synchrony, however, Defendant provides no proof that that the document is anything more than a document drafted by Defendant. (See Dkt. #59-3, p. 13).

### C.    Ruel Nieto

Defendants first offer another affidavit from Michael Burger regarding the alleged Nieto debt. (Dkt. #59-4, p. 2-4). The affidavit references several purported Bills of Sale in relation to the

alleged debt. (Dkt. #59-4, p. 7-13). Those Bills of Sale reference a description of certain "Purchased Accounts" referred to as Exhibit A-1. (Dkt. #59-4, p. 11; Dkt. #59-5, p. 17-23). However, that description is redacted and does not specifically identify, nor authenticate the alleged assignment of Plaintiff Nieto's alleged WebBank/Dell Financial Services debt. It does not even include the account number, nor his name. Defendants also provide the affidavit of Charles Simpson of Dell Financial Service ("DFS"). (Dkt. #59-5, p. 2-3). Simpson's affidavit references generic account agreements, which lack Plaintiff's name, account number, and signature. (Dkt. #59-5, p. 5-6). Defendants attached what purports to be records from the media file allegedly provided by Dell Financial Services, LLC, however, Defendant provides no proof that that the document is anything more than one drafted by Defendant. (See Dkt. #59-4, p. 17). Notwithstanding, the document is not enough to authenticate assignment.

On April 16, 2018, Defendants also submitted supplemental documentation to their Motion to Compel. However, the supplemental documentation does not provide any additional proof that the Plaintiff's account was actually sold and assigned to Defendant. (Dkt. #64, Ex. 1, Schedule 1, p. 20 and Ex. 2, Schedule 1, p. 6). The Schedule references a file and the path on which is was saved, but does not include Plaintiff Nieto's name, nor account number as part of the Bill of Sale. *Id.*

### D.    Katherine Ranos

Regarding the alleged Ranos debt, Defendants provided a Bill of Sale and Assignment signed by a Citibank executive. (Dkt. #59-6, p. 7). However, the Bill of Sale does not specifically identify Katherine Ranos, nor the alleged account. It references a heavily redacted Asset Schedule, which also fails to identify the subject account. (Dkt. #59-6, p. 8). Defendants then include what purports to be "data printed from electronic records provided by Citibank", which may be nothing

more than a document drafted by Defendants in an effort to support their defense. (Dkt. #59-6, p.13). Even if this document is what it purports to be, it does not compensate for Defendants' failure to produce the full Forward Flow Purchase and Sale Agreement. Defendants then attach a generic card agreement from 2016 – a date 26 years after Ms. Ranos allegedly opened the account and 1 year after the last payment was made. (Dkt. #59-6, p. 23-30). Similar to *Lillegard,* there is no way to prove that Plaintiff actually entered into an arbitration agreement with Defendant. The card agreement is devoid of Plaintiff Ranos' name, signature, account number or any other identifying elements which would prove Plaintiff Ranos' assent.

Defendants supplemented their Motion to Compel on April 16, 2018 to include additional documentation purporting to prove that Plaintiff Ranos's was sold to Defendant. (Dkt. #64-4). The Bill of Sale and Assignment refers to the "Accounts listed in Asset Schedule." (Dkt. #64-4, p. 26). However, the Asset Schedule lacks Plaintiff Ranos's name, account number, and any other identifying information which could prove that her account was actually sold and assigned to Defendants. Just as in *Lillegard*, Defendants have failed to produce the actual card member agreement, calling into question any agreement to arbitrate.

### E. Evalina Gonzalez

Defendants provide an affidavit from Brakken Davis, an employee of Comenity Servicing LLC. (Dkt. #59-7, p. 2-5). This affidavit references a generic Zales credit card agreement, which does not include Plaintiff Gonzalez's name, signature, account number, nor evidences her assent to the agreement. (Dkt. #59-7, p. 7-20). The affidavit also references a redacted Bill of Sale. (Dkt. #59-7, p. 30). The Bill of Sale references a heavily redacted Asset Schedule, which does not identify or authenticate the purported sale and assignment of Plaintiff Gonzalez's alleged Zales debt. (Dkt. #59-7, p. 31). The documents provided by Defendants do not definitively show the sale

and assignment of Plaintiff Gonzalez's alleged debt.  Furthermore, Defendants did not provide the Forward Flow Purchase and Sale Agreement related to the alleged sale and assignment of this debt.

Defendants have not produced any documentation to assist the Court in tracing the chain of title of the specific alleged debts.  Defendants' claim that they were validly assigned Plaintiffs' accounts and that they have the right to enforce the arbitration provisions in the Agreements that allegedly govern Plaintiffs' accounts is seriously lacking any supporting evidence or documentation, as the above cases clearly illustrate.  Defendants' Motion to Compel Arbitration should be denied.

Defendants' failure to provide the Purchase and Sale Agreements for each Plaintiff's accounts puts the Court at a loss to know the nature or existence of the arbitration agreements, if any.

## II.       Plaintiffs' Claims Are Outside the Scope of the Arbitration Provisions

Even if this Court finds that Defendants are the valid assignees of Plaintiffs' accounts and all rights thereunder, including the right to enforce the arbitration provisions, the scope of the Agreements do not cover Plaintiffs' claims under the FDCPA.  The Agreements referenced in Defendants' Motion include arbitration clauses intended to cover claims between Citibank, Synchrony Bank, WebBank, and Comenity Capital Bank and the respective consumer.  In fact, it appears from the agreements that the arbitration clauses were intended to cover disputes regarding the manner in which the accounts would be handled by the consumer and Citibank, Synchrony Bank, WebBank, and Comenity Capital Bank, respectively, as creditors.  Thus, any claim that would be subject to arbitration could be brought by either creditor, or the consumer, against the other.

Plaintiff's claim is not one that could be brought against the original creditors, Citibank, Synchrony Bank, WebBank, and Comenity Capital Bank, because the respective creditors are not debt collectors as defined by the FDCPA. Plaintiff's claims arise under the FDCPA, which provides the definition of a creditor, such as Creditor, as:

> **. . . any person who offers or extends credit creating a debt or to whom the debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.**

15 U.S.C. § 1692a(4).

Distinct from its definition of a "creditor," the FDCPA further provides a definition of a "debt collector," such as Defendant, as:

> **. . . any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.**

15 U.S.C. § 1692a(6).

The FDCPA only regulates conduct of "debt collectors," and distinguishes "debt collectors" from "creditors." *Ruth v. Triumph P'ships*, 577 F. 3d 790, 796 (7th Cir. 2009). Thus, a claim under the FDCPA could only be brought against a debt collector, and not against a creditor, thereby falling outside the scope of an arbitration agreement with a creditor, as a consumer's FDCPA claims "are not even the type that could be asserted in defense against a creditor suing on a breach of the cardholder agreement." *Fox v. Nationwide Credit*, 2010 WL 3420172, at *6 (N.D. Ill. Aug. 25, 2010).

Here, as in *Fox*, Plaintiffs' claims are not based on the terms of the cardholder contract or agreement. Also like plaintiff in *Fox*, Plaintiffs here only allege that Defendant violated the FDCPA in the respective letters sent to Plaintiffs. These are not the kind of claims that could have been brought against Citibank, Synchrony Bank, WebBank, and Comenity Capital Bank,

respectively. *Id.* at *6. *See also Koval v. Fin. Corp. of America*, No. 16-cv-4093 (NDIL) (finding plaintiff's claim beyond the scope of the arbitration agreement because the agreement was "obviously intended" to cover disputes between plaintiff and original creditor, and plaintiff's claim was based on defendant's imposition of a fee unrelated to services provided by original creditor). Similar to the claims in *Koval*, Plaintiffs' FDCPA claims do not fall within the scope of the arbitration provisions of the Agreements, and as such, Defendants cannot enforce the arbitration provisions to compel Plaintiffs to arbitrate their claims. *See also Cadiz v. Receivables Performance Mgmt. LLC*, Case No. 17-cv-2133 (N.D. Ill.) (Order, Dkt. #16, pp. 3-4) (finding that defendant was unable to establish the necessary burden that an arbitration clause was intended to encompass claims against assignees that could not have been brought against the original parties). Defendants' motion to compel arbitration should be denied.

## III. Even If Defendants Can Enforce the Arbitration Provision in the Cardmember Agreements, Defendants Have Waived Their Right to Compel Arbitration

Defendants waived their right to compel arbitration when they elected to proceed in a judicial forum in an attempt to collect the alleged debt from Plaintiff. Although Defendants mentioned arbitration as an affirmative defense, they failed to expeditiously move for arbitration. Instead Defendants filed nine Motions for Extension of Time, an Answer (and an Answer to the Amended Complaint), and most problematically, two Motions to Reassign Related Case(s), in an effort to consolidate several cases all *prior* to filing the Motion to Compel Arbitration (Dkt. #10, 13, 17, 20, 23, 38, 42, 46, 51, 27, 57, 31, 49, and 58). Defendants were clearly invested in entrusting the courts with this matter, as they issued discovery in the *Ramirez* matter before moving to consolidate the cases. Defendants cannot proceed with the litigation process, then attempt to compel arbitration once it suits them.

On April 12, 2018, Midland Funding, LLC filed a debt collection suit in the Circuit Court of Cook County, First Municipal District, in an attempt to collect the alleged debt from Plaintiff Ramirez, styled *Midland Funding, LLC v. Ramirez, Gabriela*, Cook County Circuit Court Case No. 2018-M1-113462. Defendant Midland Funding, LLC also filed debt collection suits against Plaintiff Avina on July 7, 2017 (styled *Midland Funding, LLC v. Avina, Fidela*, Cook County Circuit Court Case No. 2017-M1-119204) and October 31. 2017 (styled *Midland Funding, LLC v. Avina, Fidela*, Cook County Circuit Court Case No. 2017-M1-130108). It strikes Plaintiff as suspicious, and patently unfair, that *now*, when faced with a federal lawsuit, Defendants seek to compel arbitration; where when the opportunity to arbitrate was previously available to Defendants with nearly identical cases, Defendants elected not to arbitrate.

Courts may refuse to enforce arbitration agreements on a number of grounds, including waiver of the right to arbitrate. *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods., Co., Inc.*, 969 F.2d 585, 587 (7th Cir. 1992). A waiver can be express or inferred, and whether a party waived its right to arbitrate is determined on a case-by-case basis as no "rigid rule" exists as to what constitutes waiver. *Id.* The Seventh Circuit has held that "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). The essential question is whether, under the totality of the circumstances, the party acted inconsistently with the right to arbitrate. *Dickinson v. Heinold Securities, Inc.*, 661 F.2d 638, 64 (7th Cir. 1981).

Defendants could have elected to have the dispute resolved by arbitration pursuant to the arbitration provision in the cardmember agreement they now seek to enforce in federal court. Defendants chose to sue two of the Plaintiffs in state court instead; and also chose to proceed with

the Federal suit for nearly a year before moving to compel arbitration. (Dkt. #1; Dkt. #58). Now that Defendants are facing a federal lawsuit from the consumers they sued in state court, Defendants attempt to vigorously enforce the arbitration provision. Defendants should not be permitted to pick and choose whether to enforce the arbitration agreement whenever it is to their benefit.

Under Seventh Circuit law and especially the particular facts and history of this case, Defendants acted inconsistently with the right to arbitrate. Aside from bringing the instant motion to compel nearly one year after the filing of this case, and eight months after filing the initial answer and affirmative defenses (which actually raised the arbitration provision Defendants now seek to enforce), they opted to proceed before a nonarbitral tribunal for the resolution of a contractual dispute and therefore Defendants have impliedly waived their right to compel arbitration. They have offered no explanation as to why they now seek to enforce the arbitration provision, but presumably it is because they now view arbitration as a more favorable forum for to resolve the disputes.

Other courts have reached similar conclusions, finding that a party acts inconsistently with its right to arbitrate if the party "[s]ubstantially invoke[s] the litigation machinery before asserting its arbitration right." *Lewallen v. Green Tree Servicing, L.L.C.*, 487 F.3d 1085, 1090 (8th Cir. 2007) (citing *Ritzel Communications v. Mid-Am. Cellular Tel. Co.*, 989 F.2d 966, 969 (8th Cir. 1993)) (internal quotation marks omitted). A party substantially "invokes the litigation machinery when, for example, it files a lawsuit on arbitrable claims … or fails to move to compel arbitration and stay litigation in a timely manner." *Lewallen*, 487 F.3d at 1090. Defendant in *Lewallen* sought to compel arbitration after a lawsuit had been filed against it by the consumer. *Id.* at 1090-91. Plaintiff, however, argued that the court should consider defendant's conduct from the time it filed

its proof of claim against plaintiff's bankruptcy claim and participated in the bankruptcy matter. *Id.* at 1091-92. The court ultimately held that defendant had waived its right to arbitrate. *Id.* at 1094. Just as the *Lewallen* court considered defendant's conduct dating back to when it initially asserted claims against the consumer, this Court should consider all of the circumstances going back to April 6, 2017, when Plaintiffs initially filed this claim and find that Defendants here have similarly waived their right to arbitrate the instant claims.

## IV.     Even If the Motion to Compel is Granted as to Midland, it Should Not be Granted for Defendant MCM

"Midland Funding LLC, not Midland, is the assignee and owner of putative class members' underlying debt obligations. *Pierre v. Midland Credit Mgmt., Inc.*, No. 16 C 2895, 2017 WL 1427070, at *9 (N.D. Ill. Apr. 21, 2017). Thus, the benefits of any class action waiver or arbitration provision contained in underlying credit agreements do not redound to Midland." *Id.* Just as in *Pierre*, the subject account were allegedly sold to Midland Funding, LLC, not Midland Credit Management; so even if Plaintiffs were compelled to arbitrate their claims with Midland Funding, they should not be compelled to do the same with Midland Credit Management.

**CONCLUSION**

WHEREFORE, Plaintiff, Gabriela Ramirez, individually and on behalf of others similarly situated, respectfully requests that this Court deny Defendants' Motion to Compel Arbitration for the reasons stated above and permit her claims to proceed in litigation.

Respectfully submitted,

*s/ Celetha Chatman*
Celetha Chatman

Celetha Chatman
Michael Wood
***Community Lawyers Group, Ltd.***
73 W. Monroe Street, Suite 514
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com
mwood@communitylawyersgroup.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Celetha C. Chatman, an attorney, hereby certify that on May 9, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: May 9, 2018**                                             Respectfully submitted,


By:     /s/ *Celetha C. Chatman*