IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GABRIELA RAMIREZ, FIDELA AVINA, RUEL NIETO, KATHERINE RANOS, and EVALINA GONZALEZ, on behalf of themselves and all others similarly situated, | ) ) ) ) ) |
| Plaintiff, | ) Case No. 1:17-cv-02626 |
| v. | ) Judge: Jorge L. Alonso |
| MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and ENCORE CAPITAL GROUP, INC., | ) Magistrate Judge: Susan E. Cox ) ) ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Defendants, MIDLAND FUNDING, LLC (MF or Midland), MIDLAND CREDIT MANAGEMENT, INC. (MCM) and ENCORE CAPITAL GROUP, INC. (Encore), by and through their attorneys David M. Schultz and Lindsey A.L. Conley of Hinshaw & Culbertson LLP, submit their Reply in Support of their Motion to Compel Arbitration, and states as follows:

**I.  Midland Funding LLC Has Standing to Enforce the Arbitration Agreement Because It Stands in the Shoes of the Original Creditor.**

Plaintiffs claim that Defendants failed to prove valid assignments of the accounts. (Resp. pp. 5-10). Plaintiffs make no challenge to whether Midland Funding LLC owned rights to their accounts until now. In their Amended Class Action Complaint, they concede that Midland Funding LLC purchased each account from the original creditors. Am. Class Compl., Dkt. #34, ¶28. It is clear in this case that each original creditor sold all rights, title and interest in the accounts to Midland Funding LLC and that credit card agreements governed the accounts. *See* Mtn. To Compel Arb., Dkt. #59-1; Dkt. #59-2; Dkt. #59-3; Dkt. #59-4; Dkt. #59-5; Dkt. #59-6; Dkt. #59-7; Dkt. #59-8; Supp. to Mtn to Compel Arb., Dkt. #69-8; Dkt. #64-1; Dkt. #64-2 Dkt. #64-3; Dkt. #64-5.

Midland has substantiated the assignment of each plaintiff's account by sworn testimony from the only parties to the assignment.

As the purchaser and assignee of the accounts, Midland has the right to enforce the arbitration provisions in Plaintiffs' credit card agreements. *See Messing v. Rosenkrantz & EMSA,* 872 F.Supp. 539, 540 (N.D. Ill. 1995) (Gettleman, J.) ("An agreement containing an arbitration clause covers non-signatories under common law contract and agency principles."); *Morgan v. Kobrin Securities, Inc.,* 649 F.Supp. 1023, 1032–3 (N.D. Ill.1986) (Moran, J.) ([A]n agent may invoke an arbitration agreement entered into by its principal); *Goldberg v. Focus Affiliates, Inc.,* 152 F.Supp.2d 978, 982 (N.D. Ill. 2001) (same); *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 789 F.2d 1281, 1282 (7th Cir. 1986) (successor in interest to railroad company had the duty to arbitrate under arbitration clause contained in a contract signed by its predecessor with third parties); *Galbraith v. Resurgent Capital Servs.,* 2006 U.S. Dist. LEXIS 79108, at *2, 2006 WL 2990163, at *1 (E.D. Cal. Oct. 19, 2006) (assignee of consumer account entitled to invoke arbitration clause in contract between consumer and assignor); *Wolf v. Langemeier,* 2010 U.S. Dist. LEXIS 87017, at *4 (E.D. Cal. Aug. 24, 2010) (staying action pending arbitration and holding that "[n]onsignatory successors . . . are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed."); *Ibar Ltd. v. Am. Bureau of Shipping,* 1998 WL 274469, at *5 (S.D.N.Y. 1998) (successors in interest); *Porzig v. Dresdner Kleinwort Benson N. Am. L.L.C.,* 1999 WL 518833, at *5 n.5 (S.D.N.Y. July 21, 1999) (successor in interest); *Newport Petroleum, Inc. v. Tug Justine Foss,* 1997 U.S. Dist. LEXIS 24213, at *1, 1997 WL 876955, at *1 (W.D.Wash. Sept. 2, 1997) ("A successor in interest can enforce an arbitration clause in a contract signed by its predecessor."); *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir. 1999) (the court enforced an arbitration when the assignee was bound by the agreement under the traditional principles of contract of agency law); *Derbin v. Access Wealth Mgmt., LLC,* 2011 WL 4751992, at *5 (D.N.J. Oct. 7, 2011) (successor had a right to enforce

301906712v1 0997515

arbitration agreement). Plaintiffs' Amended Class Complaint conceded that Midland Funding LLC purchased each plaintiff's account and placed the account with MCM for servicing. Am. Class Compl., Dkt. #34, ¶28. Plaintiffs cannot have it both ways. Plaintiff cannot concede in their complaint the ownership of the account but now try to dispute that Midland Funding LLC cannot prove that it stands in the shoes of the original creditor as the current owner of the accounts.

Federal Rule of Evidence 803(6) provides that regularly kept business records may be admitted to prove the truth of the matters asserted therein because they are assumed to be reliable. *Krawczyk v. Centurion Capital Corp.*, 2009 U.S. Dist. LEXIS 12204 (N.D. Ill. Feb. 18, 2009) (holding that debt buyer's employee provide foundation for a business records exception for documents that the debt buyer received from the original creditor and the documents were incorporated into the debt buyer's records). Rule 803(6) does not require that the witness herself to have created the records about which she is testifying. *Id* at *12; *Grant-Hall v. Calvary Portfolio Services, LLC*, 2013 U.S. Dist. LEXIS 30181 (N.D. Ill. Mar. 13, 2013) (holding that debt buyer's employee provided foundation for a business records exception for the bill of sale and the electronic file which contained information for the debtor's account). "Once an entity integrates a third party's documents into its records and relies upon it, the document becomes 'qualified for admission under the business records exception.'" *Caudill v. Calvary SPV I, LLC*, 2014 U.S. Dist. LEXIS 117795, *10 (E.D. Ky. Aug. 25, 2014), quoting, *U.S. v. Hollie*, No. 93-6021, 25 F.3d 1051 (6th Cir. 1994) (unpublished). Michael Burger's testimony establishes that the documents attached to his affidavits qualify as business records because it is uncontroverted that Midland Funding LLC and Midland Credit Management, Inc. incorporated each original creditor's records into their own records and thereafter relied upon these records in their business practices. *See* Mtn. To Compel Arb., Dkt. #59-1, ¶4, 8; Dkt. #59-3, ¶4, 8; Dkt. #59-4, ¶4, 8; Dkt. #59-6, ¶4, 8; Dkt. #59-8, ¶4, 8.

3

Plaintiffs have the burden to show that the documents are somehow untrustworthy. They fail to demonstrate that Mr. Burger's affidavit or the documents attached thereto are untrustworthy. "Ultimately, the primary emphasis of Rule 803(6) is on the reliability or trust worthiness of the records sought to be introduced." *Krawczyk*, 2009 U.S. Dist. LEXIS 12204 at *14. Plaintiffs cannot show these documents are untrustworthy as the original creditors submitted affidavits in support of Defendants' motion evidencing the assignment of rights in the accounts. It is black letter law that an assignee steps into the shoes of an assignor to assume all rights under the agreement possessed by the assignor. *Olvera v. Blitt & Gaines, P.C.,* 431 F.3d 285, 288-89 (7th Cir. 2005); *CitiMortgage, Inc. v. Barabas*, 975 N.E2d 805, 813 (Ind. 2013); *CCAM Enterprise, LLC v. Dep't. of Commerce Division of Occupational and Prof'l Licensing*, 324 P.3d 648, 650 (Utah App. 2014); *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 953 (7th Cir. 2000). It is undisputed that the credit card agreements allow the original creditors to sell, transfer or assign their rights under the agreements. Therefore, Midland can enforce the mandatory arbitration provisions as the assignee of the original creditors.

**II.  Plaintiffs' Claims Fall Squarely Within the Arbitration Provision.**

Plaintiffs contend that the provisions do not apply to their FDCPA claims arising out of the language of MCM's letter seeking collection of the account. Given that the crux of Plaintiffs' FDCPA claims are that Defendants threatened to not offer flexible settlement offers if the account was forwarded to an attorney in its collection letter, Plaintiffs' claims squarely *relate to* their accounts. *See* Am. Class Compl., Dkt. #34 ¶¶58-59.

Plaintiffs cite *Fox v. Nationwide Credit, Inc.*, contending that the arbitration provisions at issue do not include FDCPA claims. *Fox*, however, determined that the defendant in that case had not established that it fell within the list of persons identified within the provision as having the right to enforce it. Instead the defendant in that case argued that it was an intended third-party beneficiary or that it could enforce the arbitration provision under principles of equitable estoppel. On the

4

contrary, in this case, Midland has submitted evidence that it is the assignee of the account with the right to enforce the arbitration provision. Moreover the *Fox* court did not find that the agreement at issue would not govern FDCPA claims. Instead it held that the doctrine of equitable estoppel did not apply because "[e]quitable estoppel applies when the signatory 'must rely on the terms of the written agreement in asserting its claim' against a non-signatory party." *Fox*, 2010 U.S. Dist. LEXIS 88654, *16, 2010 WL 3420172. Because plaintiff did not have to rely on the terms of the written agreement to establish her claims against defendant, equitable estoppel did not apply. In this case Defendants are not relying on the doctrine of equitable estoppel to estop Plaintiffs from disclaiming the applicability of the agreements. Accordingly *Fox* is inapposite.

Plaintiffs also rely on the unpublished opinion of *Koval v. Fin. Corp. of America*, No. 16-cv-4093 (N.D. Ill. April 26, 2017). As in the *Fox* case there was no evidence to establish that the defendant seeking to enforce the arbitration agreement was an agent of a party to the agreement. Instead the court noted that the defendant seeking to enforce the agreement was not "a direct agent of either party." *Koval*, No. 16-cv-4093, Dkt #35, p.5.

In addition, Plaintiffs rely on an unpublished opinion, *Cadiz v. Receivables Performance Management, LLC*, Case 17-cv-2133 (N.D. Ill. July 26, 2017). (Resp., p. 12). The *Cadiz* case is distinguishable. In *Cadiz*, the arbitration language applied to "all disputes and claims between us relating to or arising out of the Agreement or Your use of the Equipment, Services or Software and any other claims or causes of actions related to the performance or advertising of the Equipment, Services or Software shall be settled by binding arbitration." *Cadiz*, Case No. 17-cv-2133 Dkt #16, p.2. The court initially found that the FDCPA claims against Defendant were not covered because Plaintiff "is not making a claim based on her contractual rights, nor is she 'raising an issue as to the validity of [the debt].'" *Id.* at p.3. The court also questioned whether the agreement had been

5

properly authenticated. On reconsideration the court relied on other grounds in denying the motion for arbitration. Specifically Judge Bucklo held:

> Even assuming that under *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, (7th Cir. 1993), plaintiff's FDCPA claim could potentially fall within the scope of the AT&T customer service agreement attached to defendant's motion, plaintiff does not concede, and the record before me does not conclusively establish, that this document- which does not bear plaintiff's name, her signature, her account number, or any other personal information identifying her, and which defense counsel represents he received from his client, who "regularly receive[s] these types of customer agreements" and "stated [it] was provided by AT&T"-is in fact her contract with AT&T. In her response to defendant's motion to dismiss, plaintiff argued that defendant had not properly authenticated the customer service agreement as a contract governing plaintiff's relationship with AT&T. Defendant did not address this argument in reply. (internal citation omitted).

*Cadiz*, Case No. 17-cv-2133 Dkt #25.

In this case, however, there is no question that Plaintiffs agreed to the terms of the credit card agreements by opening and using the accounts. In fact, Plaintiffs concede that amounts were incurred on the accounts and they could not pay their debts resulting in default. Am. Class Compl., Dkt. #34, ¶27. Also, each original creditor provided sworn testimony in support of Defendants' motion regarding the documents which applied to each account, including the credit card agreements, and that the documents were kept in the regular course of their businesses. There is no issue as to what credit card agreement governed each account or the authentication of the agreements.

In citing to Supreme Court precedent the Seventh Circuit has noted, "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642, *citing Moses H. Cone Mem. Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, (1985). In *Sweet Dreams* the Seventh Circuit held that an arbitration provision governing "[a]ny disputes arising out of the agreement" did not just apply to claims relating to the underlying contract:

6

Counts II, III and IV do not raise issues of contract interpretation or performance. Nor are they connected to the contract in the sense that they challenge the validity of the contract. But they clearly have their genesis in the Agreement. Counts II and III allege that Dial-A-Mattress fraudulently induced Sweet Dreams to continue marketing efforts that were started pursuant to the Agreement. Similarly, Count IV alleges that Dial-A-Mattress interfered with business relations that developed "from March 8, 1991," the date of the Agreement. Keeping in mind the federal presumption in favor of arbitration, we conclude that these counts are related to the subject matter of the arbitration clause and subject to arbitration under it. *Sweet Dreams* 1 F.3d at 643. (internal citations omitted).

Similarly here, there is no question that a claim against Defendants regarding collection letters sent on the accounts in an attempt to collect amounts due equates to any claim, dispute or controversy arising out of or related to the accounts. *See Decker v. Advanced Call Ctr. Techs., LLC*, 1:14-cv-795, 2014 U.S. Dist. LEXIS 140727, *6 (W.D. Mich. Oct. 3, 2014) ("there is no reason to believe that Decker's claims would not be subject to arbitration simply because they are based on the FDCPA."). It is clear that Plaintiffs' claims relate to or arise out of the use of their accounts, thus falling within the scope of the arbitration agreements.

## III. Defendants' Arbitration Rights Have Not Been Waived.

Plaintiffs claim that Defendants waived their rights to arbitrate the claims because extensions were requested, an answer to the Amended Class Complaint was filed and state court collection cases were filed against Plaintiff Ramirez and Plaintiff Avina. (Resp. pp. 12-13). For waiver of the right to arbitrate to be inferred, courts must determine that, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate. *Kawasaki Heavy Indus. v. Bombardier Rec. Prods.*, 660 F.3d 988, 994 (7th Cir. 2011). Factors to be considered in the analysis include diligence or lack thereof to move for arbitration, whether the party participated in litigation, whether the party substantially delayed its request for arbitration, whether the party participated in discovery and prejudice of the non-waiving party by its reliance on litigious behavior of the waiting party. *Id.*

Defendants' conduct in this litigation only reflects permissible defense strategies taken as a

7

result of Plaintiffs turning four individual cases into a class action on behalf of five named plaintiffs. It is undisputed that Plaintiffs' counsel filed the claims on behalf of each plaintiff individually on various dates. *See* Defendants' Mtn to Reassign, Dkt. #31. In light of the identical claims, Defendants filed a motion to reassign the identical cases to this Court. *See* Defendants' Mtn to Reassign, Dkt. #31. On October 25, 2017, this Court granted Defendants motion to reassign the cases, consolidated the cases on its own accord for efficiency purposes and ordered Plaintiffs to file a consolidated complaint. *See* Dkt. #33. On November 17, 2017, Plaintiff filed an Amended Class Action Complaint, which turned the consolidate case into a class action case with five named plaintiffs. *See* Dkt. #34. Each of the credit card agreements which governed Plaintiffs' accounts contained a binding arbitration provision which explicitly stated the waiver of the right to proceed in this forum as a class representative. Mtn to Compel Arb., Dkt. #59, pp. 2-16. Plaintiffs' conduct in turning their individual claims into a class action lawsuit against Defendants triggered the instant Motion to Compel Arbitration at this stage of litigating Plaintiffs' claims.

It is also important to note that once Plaintiffs filed the Amended Class Action Complaint, Defendants have been transparent with Plaintiffs' counsel as well as this Court about its intention to move to compel the arbitration of the class action claims pursuant to the credit card agreements.[1] *See* Dkt. #46, 51. Thus any conduct of Defendants in this litigation, such as serving discovery in the *Ramirez* case or requesting extensions prior to filing responsive pleadings to the Amended Class Action Complaint, was either made when the cases were individual actions or as a strategy to file an appropriate motion to compel arbitration of the claims. In fact, Defendants have attempted to avoid substantial litigation, such as discovery, by requesting this Court stay discovery in light of the instant motion. *See* Dkt. #63. However, Plaintiffs objected to such requests and now claim that proceeding

---

[1] Defendants made clear to this Court that extensions were needed to file an appropriate motion to compel the arbitration of the claims in light of the complexity of the motion involving five named plaintiffs with different credit card agreements governing the accounts at issue.

8

in discovery has constituted waiver of Defendants' right to compel arbitration of the claims. Plaintiffs cannot have it both ways. They cannot vigorously oppose Defendants efforts to preserve their arbitration rights but claim the waiver of such rights when litigation proceeds.

In addition, Defendants arbitration rights have not been waived by the filing of state court collection lawsuits against Plaintiff Ramirez and Plaintiff Avina because their credit card agreements do not prohibit the filing of causes of action against the cardholder. Waiver of the right to arbitrate is "disfavored", so any party arguing waiver of arbitration bears a heavy burden of proof. *Ferrini v. Cambece*, 2013 U.S. Dist. LEXIS 77976, *4 (E.D. Cal. June 3, 2013). Waiver should not be lightly inferred and "mere delay in seeking [arbitration] without some resultant prejudice to a party cannot carry the day." *Schwartz v. CACH LLC*, 2014 U.S. Dist. LEXIS 9655, *7 (D. Mass. Jan. 27, 2014). The plaintiff in *Schwartz* made the same argument Plaintiffs present: Defendants somehow waived their right to arbitrate by filing a breach of contract action in state court. *Id*. *Schwartz* held that since the arbitration provision allowed either party to elect arbitration as to any claim, "[i]t does not require that the parties either litigate all claims or arbitrate them. The collection actions, which CACH brought against plaintiff, are distinct from the claims brought by plaintiff here. CACH did not, therefore, waive its right to arbitrate the present dispute." *Id*. at *9-10. *Schwartz* expressly stated that "CACH's decision not to invoke arbitration in the earlier state-court collection actions is not relevant." *Id*. at *9.

Similarly, the filing of state court actions on behalf of Midland Funding LLC against Plaintiff Ramirez and Plaintiff Avina is not relevant to Defendants' motion to compel arbitration in this matter. Plaintiff Ramirez's credit card agreement states, "We won't initiate arbitration to collect a debt from you unless you choose to arbitrate or assert a Claim against us. If you assert a Claim against us, we can choose to arbitrate, including actions to collect a debt from you. You may arbitrate on an individual basis Claims brought against you, including Claims to collect a debt." Mtn

9

to Compel Arb., Dkt. #59, p. 3. Plaintiff Avina's credit card agreement states, " We will not require you to arbitrate: (1) … or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate." Mtn to Compel Arb., Dkt. #59, p. 6. Similar to the arbitration clause in *Schwartz*, the plain language of the arbitration provisions at issue in this case does not require the parties to either litigate all claims or arbitrate all claims. *See also Funderburke v. Midland Funding, LLC*, 2013 U.S. Dist. LEXIS 13438, *19-24 (D. Kan. Feb. 1, 2013) (holding that defendant's filing of a collection in state court did not waive defendant's right arbitrate the consumer's complaint which was filed in federal court). Therefore, Defendants have not waived their right to arbitrate Plaintiffs claims because collection lawsuits were filed against Plaintiff Ramirez and Plaintiff Avina. Defendants conduct in this litigation and state court litigation does not rise to level of waiver of arbitration rights. Thus, this Court should grant Defendants' motion and compel the arbitration of the claims in this case.

**IV.    Midland Credit Management, Inc. Has Standing to Enforce the Arbitration Agreement.**

Plaintiffs claim that they should not be required to arbitrate their claims against MCM because it is not the owner of the accounts. Plaintiffs cite *Pierre v. Midland Credit Mgmt., Inc.* Case No. 16 C 2895, 2017 U.S. Dist. LEXIS 61107 (N.D. Ill. Apr. 21, 2017) but *Pierre* is inapposite to this case. In *Pierre*, the court noted that the plaintiff was not suing Midland Funding LLC nor any entity that was a party to the credit agreements containing the class action waivers or mandatory arbitration provisions. Here, Plaintiffs are suing Midland Funding LLC which is the owner of the accounts. In addition, although MCM is not a signatory to the cardholder agreement, MCM is authorized to invoke the arbitration provisions because it is an assignee of the account as Midland Funding LLC's servicer of the accounts. *See Jeffreys v. Midland Credit Mgmt.*, 2016 U.S. Dist. LEXIS 110445, *5 (D.N.J. Aug. 18, 2016) (granting Midland Credit Management, Inc.'s motion to compel arbitration as MCM was an affiliate of non-party Midland Funding LLC); *see also Harris v. Midland Credit Mgmt*, 2016 U.S.

10

Dist. LEXIS 14869, * 5 (D.N.J. Feb. 8, 2016) ("Defendant is Midland Funding's affiliate tasked with collecting on Plaintiff's delinquent account. Therefore, it is also entitled to enforce the arbitration agreement"). This Court should grant Defendants' motion to compel arbitration of Plaintiffs' claims.

V.  **Conclusion**

Plaintiffs cannot meet their burden to establish that the arbitration provisions are not valid. They also cannot establish that the claims asserted in the Complaint fall outside of the scope of the arbitration provisions in each of their agreements. Defendants respectfully submit that the Court should grant Defendants' motion to stay the entire action, including discovery, and order the parties to arbitration on an individual basis.

WHEREFORE, Defendants, MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC. and ENCORE CAPITAL GROUP, INC., respectfully request that this Court enter an order granting Defendants' motion to compel arbitration of Plaintiffs' claims.

    Respectfully submitted,

    MIDLAND FUNDING, LLC, MIDLAND
    CREDIT MANAGEMENT, INC. AND
    ENCORE CAPITAL GROUP, INC.,
    Defendants

    */s/ Lindsey A.L. Conley*
    David M. Schultz
    Lindsey A.L. Conley
    Hinshaw & Culbertson LLP
    151 North Franklin Street, Suite 2500
    Chicago, IL 60606
    Tel: 312-704-3000
    E-mail: dschultz@hinshawlaw.com
    E-mail: lconley@hinshawlaw.com

# CERTIFICATE OF SERVICE

   I, Lindsey A.L. Conley, an attorney, certify that I shall cause to be served a copy of **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION** upon the following individual(s), by deposit in the U.S. mail box at 151 North Franklin Street, Chicago, Illinois 60606, postage prepaid, messenger delivery, Federal Express, facsimile transmitted from (312) 704-3001, or electronically via the Case Management/Electronic Case Filing System ("ECF") as indicated, this on May 23, 2018.

| | | |
|---|---|---|
| _X_ | CM/ECF | *Attorneys for Plaintiff(s)* |
| ___ | Facsimile | Michael J. Wood |
| ___ | Federal Express | Celetha C. Chatman |
| ___ | E-Mail & U.S. Mail | Holly McCurdy |
| ___ | Messenger | Sarah Barnes |
| | | COMMUNITY LAWYERS GROUP, LTD. |
| | | 73 W. Monroe Street, Suite 514 |
| | | Chicago, IL 60603 |
| | | Phone: (312) 757-1880 |
| | | Fax: (312) 265-3227 |
| | | cchatman@communitylawyersgroup.com |
| | | mwood@communitylawyersgroup.com |

David M. Schultz             */s/ Lindsey A.L. Conley*
Lindsey A.L. Conley           Lindsey A.L. Conley
HINSHAW & CULBERTSON LLP      One of the Attorneys for Defendants
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
dschultz@hinshawlaw.com
lconley@hinshawlaw.com