UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GABRIELA RAMIREZ, FIDELA AVINA, RUEL NIETO, KATHERINE RANOS, and EVALINA GONZALEZ, | ) ) ) ) |
| Plaintiffs, | ) Case No. 17-cv-2626 ) ) Judge Jorge L. Alonso ) |
| v. | ) ) |
| MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC., and ENCORE CAPITAL GROUP, INC., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION AND ORDER**

After plaintiffs received allegedly misleading collection letters sent by defendant Midland Credit Management, LLC, they filed a one-count purported class action complaint alleging three defendants violated the Fair Debt Collection Practices Act ("FDCPA"). Defendants have filed a motion to compel arbitration. For the reasons set forth below, the Court denies the motion to compel arbitration.

**I.  Background**

Plaintiffs Gabriela Ramirez ("Ramirez"), Fidela Avina ("Avina"), Ruel Nieto ("Nieto"), Katherine Ranos ("Ranos") and Evalina Gonzalez ("Gonzalez") are individuals who applied for and used credit cards whose card agreements contained arbitration provisions.[1] Plaintiffs allege

---

[1] Where the facts are disputed on a motion to compel arbitration, the Court may conduct a trial before a jury or hold an evidentiary hearing. *See Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 751 (7th Cir. 2017). Here, the facts are not disputed. Although plaintiffs object to the evidence defendants put forth, the objection is overruled. Business records are admissible when accompanied by the declaration or affidavit of a custodian, as they were here. *Norman v.*

that they were unable to pay their debts and that defendants violated the FDCPA in attempting to collect the debts.

*Gabriela Ramirez* and *Katherine Ranos*

Ranos opened a Citibank/Sears credit card in 1990. Ramirez opened a Citibank/Sears credit card in 2011. Each was sent, with her credit card, a copy of the Citibank/Sears card agreement.

The Citibank card agreement contains a choice of law provision which identifies South Dakota as the governing law. (Docket 59-1 at 29; Docket 59-6 at 29) ("Federal law and the law of South Dakota, where we are located, govern the terms of this Agreement."). In addition, the Citibank card agreement provides, among other things:

> This card agreement is your contract with us.
>
> * * *
>
> You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card.
>
> * * *
>
> *\*You or we may arbitrate* any claim, dispute or controversy between you and us arising out of or related to your account, a previous related account or our relationship (called "Claims").
>
> **\*If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim.**
>
> Except as stated below, all Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party

---

*AllianceOne Receivables Mgt., Inc.*, 637 Fed.Appx. 214, 215 (7th Cir. 2015); Fed.R.Evid. 803(6). Plaintiffs have put forth no contrary evidence.

> claims, interpleaders or otherwise; Claims made regarding past, present, or future conduct; and Claims made independently or with other claims. This also includes Claims made by or against anyone connected with us or you or claiming through us or you, or by someone making a claim through us or you, such as a co-applicant, authorized user, employee, agent, representative or affiliated/parent/subsidiary company.
> \* \* \*
> *Claims brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis.

(Docket 59-1 at 27-8; Docket 59-6 at 27-8) (emphasis in the original).

Ranos used the card. The last time she paid was November 18, 2015. On June 30, 2016, Citibank charged off the account. Ramirez also used her card. The last time she paid was November 26, 2015, and Citibank charged off the account in March 2016.

*Fidela Avina*

Avina opened a Synchrony Bank/Old Navy card in January 2014. Avina was sent, along with her card, a copy of the Synchrony/Old Navy card agreement. She was later sent, with her billing statement, an updated Synchrony/Old Navy card agreement. That agreement includes a choice of law provision in favor of Utah law. (Docket 59 at 6) ("Utah law shall apply to the extent state law is relevant under the FAA."). That agreement also states, in relevant part:

> **This Agreement.** This is an Agreement between you and Synchrony Bank . . . By opening or using your account, you agree to the terms of the entire Agreement.
> \* \* \*
> **RESOLVING A DISPUTE WITH ARBITRATION**
> **PLEASE READ THIS SECTION CAREFULLY. IF YOU DO NOT REJECT IT, THIS SECTION WILL APPLY TO YOUR ACCOUNT, AND MOST DISPUTES BETWEEN YOU AND US WILL BE SUBJECT TO INDIVIDUAL ARBITRATION.**
> \* \* \*
> *What claims are subject to arbitration
> 1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user or your account, and us, our affiliates, agents and/or The Gap, Inc. if it relates to your account, except as noted below.
> \* \* \*

> **\*No class actions**
>
> **YOU AGREE NOT TO PARTICIPATE IN A CLASS, REPRESENTATIVE OR PRIVATE ATTORNEY GENERAL ACTION AGAINST US IN COURT OR ARBITRATION.**
> * * *
>
> **\*How to reject this section**
> **You may reject this Arbitration section of your agreement. . . . To reject this section, you must send us a notice within 60 days after you open your account or we first provided you with your right to reject this section.**

(Docket 59 at 5-6) (emphasis in original).

Avina used her account but did not reject the arbitration provision. Avina made her last payment in September 2016, and, in April 2017, Synchrony charged off the debt.

*Ruel Nieto*

In early 2014, Nieto opened a WebBank/Dell credit card. He was sent, with his card, a copy of the WebBank/Dell card agreement. The card agreement contains a choice of law provision in favor of Utah law. (Docket 59-5 at 6) ("The laws of the United States of America, including the Federal Arbitration Act, 9 U.S.C. Sections 1-16 (the "FAA"), and the law of the State of Utah apply to and govern this Agreement and your use of your Account."). The agreement also states, in relevant part:

> **THIS AGREEMENT CONTAINS AN ARBITRATION CLAUSE. . . . <u>IF EITHER PARTY CHOOSES TO ARBITRATE A CLAIM, NEITHER PARTY WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR TO HAVE A JURY TRIAL ON THAT CLAIM OR TO PARTICIPATE IN A CLASS ACTION OR REPRESENTATIVE ACTION WITH RESPECT TO SUCH CLAIM.</u>**
>
> **Arbitration.** Except as expressly provided herein, any claim, dispute or controversy (whether based upon contract, tort, intentional or otherwise, constitution, statute, common law, or equity and whether pre-existing, present or future, including initial claims, counter-claims and third-party claims), arising from or relating to you applying for, obtaining, or using this Account, this Agreement (including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement), or the relationships which result from this

>Agreement ("Claim") shall be decided, upon the election of you or us, by binding arbitration . . .

(Docket 59-5 at 6) (emphasis in original).

Nieto used his account but did not reject the arbitration agreement. Nieto made his last payment in October 2015, and WebBank/Dell charged off the account in May 2016.

*Evalina Gonzalez*

In December 2013, Gonzalez opened a Citibank/Zales card account. When the account was purchased by Comenity Capital Bank, Comenity mailed to Gonzalez a card, along with a Comenity/Zales card agreement. The card agreement contains a choice of law provision in favor of Utah. (Docket 59-7 at 10) ("THIS AGREEMENT IS GOVERNED BY UTAH AND APPLICABLE FEDERAL LAW.") (emphasis in original). It also states, in relevant part:

>Your use of the account, or failure to close the account within the 30 days of receiving this document, indicates your acceptance of the terms of this agreement, including the assessment of any finance charges and fees.
>\* \* \*
>IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.
>\* \* \*
>[Y]ou may reject it by mailing us a written rejection notice which gives the name of each Cardholder and contains a statement that you (both of you, if more than one) reject the Arbitration Provision of this Agreement.
>\* \* \*
>**3. Covered Claims:** "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account. "Claims includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based on contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). "Claim" does not include disputes about the validity, enforceability, coverage or scope of this

> Arbitration Provision or any part thereof (including, without limitation, the prohibition against class proceedings . . .
>
> **4. Starting an Arbitration:** Arbitration may be elected by any party with respect to any Claim, even if that party has already initiated a lawsuit with respect to a different Claim.
>
> &ast; &ast; &ast;
>
> **7. Prohibition Against Certain Proceedings:** IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION . . . (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION . . .

(Docket 59-7 at 7, 12) (emphasis in original).

Gonzalez used the account and did not reject the agreement or the arbitration provision. Gonzalez made her last payment in April 2016, and Comenity Capital Bank charged off the account in November 2016.

*Events leading to this case*

After plaintiffs were unable to pay their debts, their debts were purchased by defendant Midland Funding, LLC ("Midland"). (Am. Complt. ¶ 28 /Docket 34 ¶ 28). Defendants have submitted the agreements by which the various creditors assigned plaintiffs' respective debts to Midland. Midland, according to defendants' disclosure statement, is an indirect subsidiary of defendant Midland Credit Management, Inc. ("MCM"), which, in turn, is a wholly-owned subsidiary of defendant Encore Capital Group, Inc. ("Encore"). (Docket 28).

Plaintiffs allege that after Midland purchased plaintiffs' respective debts, Midland "retained MCM to assist with collection." (Am. Complt. ¶ 28/Docket 34 ¶ 28). Plaintiffs further allege that MCM sent collection letters to plaintiffs and that the letters violated the FDCPA by including the sentence, "If the account goes to an attorney, our flexible options may no longer be available to you." (Am Complt. ¶ 29 & 32/Docket 34 ¶ 29 & 32). Plaintiffs seek to hold Midland and Encore liable as entities with a burden to monitor MCM.

Defendants have filed a joint motion to compel arbitration.

## II.    Discussion

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, __ U.S. __, 139 S.Ct. 1407, 1415 (2019) (citing 9 U.S.C. § 2). It "was originally enacted, 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). To compel arbitration, "a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). The burden is on the party seeking to compel arbitration to show arbitration is the appropriate venue. *See A.D. v. Credit One Bank, NA*, 885 F.3d 1054, 1062 (7th Cir. 2018) ("[A]s the party seeking to compel arbitration, [defendant] had the burden of showing that [plaintiff] was bound by the cardholder agreement.").

### A.    Scope

Plaintiffs argue that their claims are outside the scope of the arbitration provisions. Each plaintiff brings one claim, alleging defendants violated the FDCPA when MCM sent her/him a collection letter.

Plaintiffs' FDCPA claims are within the scope of their respective arbitration agreements. *See McGinnis v. John C. Bonewicz, PC*, Case No. 11-2210, 2012 WL 604430 at *4 (C.D. Ill. Feb. 2, 2012) ("The Court concludes that Plaintiff's FDCPA is a claim that is *subject to* arbitration, because the FDCPA claim 'arises from' the Card Agreement[.]"). The arbitration

provision applicable to Ranos and Ramirez is expansive. It applies to "any claim . . . *arising out of or related to your account* . . . including claims based on . . . statutory or regulatory provisions." (Docket 59-1 at 27-28; Docket 59-6 at 27-28) (emphasis added). Similarly, the arbitration provision applicable to Avina covers "any dispute or claim between you . . . and us . . . if it relates to your account[.]" (Docket 59 at 5-6). The arbitration provision applicable to Nieto covers "any claim . . . arising from or related to you[r] . . . using this Account . . . or the relationships which result from this Agreement[.]" (Docket 59-5 at 6). Finally, the arbitration provision applicable to Gonzalez covers "any claim . . . between you and us that in any way arises from or relates to this Agreement [and] the Account . . . includ[ing] disputes based on . . . consumer rights, . . . statute [and] regulation[.]" (Docket 59-7 at 12). Claims arising out of a letter sent in an attempt to collect a debt on an account are related to the account. Accordingly, the Court agrees with defendants that plaintiffs' claims are within the scope of the arbitration agreements.

      **B.**    **Parties who may enforce the arbitration agreements**

The Court next considers who may enforce the arbitration agreements. In this case, all three defendants seek to enforce the arbitration agreements, but none was an original party to the card agreements in this case. The Supreme Court has held that "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *see also Warciak v. Subway Restaurants, Inc.*, 880 F.3d 870, 872 (7th Cir. 2018). When applying state law, this Court's task is to "determine how the state's highest court would rule." *In re Zimmer, NextGen Knee Implant Products Liability Lit'n.*, 884 F.3d 746, 751 (7th Cir. 2018) (quoting *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011)).

### 1. Utah law

Three of the five agreements at issue in this case (namely, those applicable to Avina, Gonzalez and Nieto) contain choice of law provisions that select Utah law for state-law issues. Defendants agree, and plaintiffs do not dispute the point.

Defendant Midland argues that it may enforce the arbitration provisions of the card agreements, because the original creditors assigned the accounts to it. Midland has included with its motion copies of the assignment agreements. Although plaintiffs argue that Midland has not adequately established that it was assigned the accounts, plaintiffs have admitted (by alleging in their complaint) that defendants purchased the debt.

Under Utah law, the "assignment of an interest in a contract gives the assignee the same rights as the assignor and nothing more." *Jack B. Parson Companies v. Nield*, 751 P.2d 1131, 1133 (Utah 1988); *see also Gilroy v. Lowe*, 626 P.2d 469, 472 (Utah 1981) ("It is beyond question that ordinarily property or contract rights may be transferred to an assignee. . . . [T]he assignee receives the right to enforce[.]"). Thus, Midland, which stands in the shoes of the original creditors with respect to the card agreements applicable to Avina, Gonzalez and Nieto, may enforce the arbitration clauses against those plaintiffs.

Next, defendants argue that MCM, another nonsignatory, may enforce the arbitration clauses. Defendants argue MCM is "an assignee" of the account. Defendants, however, offer no evidence of an assignment to MCM. Plaintiffs allege in their complaint that, after Midland purchased plaintiffs' respective debts, Midland "retained MCM to assist with collection." (Am. Complt. ¶ 28/Docket 34 ¶ 28). Defendants admitted in their answer that Midland "purchased Plaintiffs' accounts and placed them with MCM for servicing." (Answer ¶ 28/Docket 57 at ¶28). This suggests, at best, an agency relationship between Midland and MCM.

9

Under Utah law, "an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit." *Fericks v. Lucy Ann Soffe Trust*, 100 P.3d 1200, 1206 (Utah S.Ct. 2004). Thus, under Utah law, an agent cannot enforce for its own benefit its principal's arbitration agreement. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1297-98 (10th Cir. 2017) (holding nonsignatory defendants could not compel plaintiff to arbitrate under Utah law); *Taylor v. Advanced Call Center Technologies, LLC*, Case No. 17 C 1805, 2017 WL 6988652 at *3 (N.D. Ill. Dec. 20, 2017) ("Utah Supreme Court precedent as interpreted by the Tenth Circuit makes clear that a nonsignatory's agency relationship with a principal does not authorize the agent to enforce a contractual term, such as an arbitration clause, for the agent's own benefit."); *Untershine v. Advanced Call Center Technologies, LLC*, Case No. 18-CV-77, 2018 WL 3025074 at *8 (E.D. Wisc. June 18, 2018) ("[Defendant], as nonsignatory to the arbitration agreement, cannot compel [plaintiff] to arbitrate under agency theory."). Thus, MCM cannot enforce the arbitration clause in the agreements applicable to Avina, Gonzalez and Nieto.

Defendants make no argument as to why Encore may enforce the arbitration clause under Utah law. Accordingly, Encore has not shown it can enforce the arbitration clauses in the agreements applicable to Avina, Gonzalez and Nieto.

  **2. South Dakota law**

The agreement applicable to Ranos and Ramirez contains a choice of law provision and is governed by the law of South Dakota. Defendants agree, and plaintiffs do not dispute the point.

Under South Dakota law, Midland, as assignee of the accounts, can enforce the arbitration agreement applicable to Ranos and Ramirez, because an assignee stands in the shoes of the assignor with respect to a contract. *Anderson v. Aesoph*, 697 N.W.2d 25, 33 (S.D. 2005)

10

("[Assignee] . . . had the same right to redeem the contract for deed as did [assignor]."). Accordingly, Midland can enforce the arbitration agreement against plaintiffs Ranos and Ramirez.

South Dakota law is more generous than is Utah law with respect to enforcement of arbitration agreements by nonsignatories. In *Rossi Fine Jewelers, Inc. v. Gunderson*, 648 N.W. 2d 812 (S.D. 2002), the Supreme Court of South Dakota held that nonsignatories, including agents, could enforce an arbitration agreement signed by the principal. The South Dakota Supreme Court worried it would be unfair to allow a plaintiff to bring a claim to enforce an agreement against nonsignatories and thereby avoid any arbitration provision in the agreement. *Rossi*, 648 N.W.2d at 815. The court said, "[t]his rule applies especially when all the claims against the nonsignatory defendants are based on alleged substantially interdependent and concerted misconduct by both the nonsignatories and one or more signatories to the contract." *Rossi*, 648 N.W.2d at 815.

In this case, plaintiffs' claims against defendants all arise out of the same letter sent to plaintiffs. Accordingly, the Court concludes that, under South Dakota law, defendants Encore and MCM can enforce the arbitration provisions applicable to Ranos and Ramirez just as Midland, the assignee, can.

### C. Waiver

Finally, plaintiffs argue that defendants have waived the right to arbitrate. The right to arbitrate, "[l]ike any contractual right . . . can be waived." *Smith v. GC Services LP*, 907 F.3d 495, 499 (7th Cir. 2018). Arbitration clauses allow for an alternative forum, but "the intention behind such clauses, and the reason for judicial enforcement of them, are not to allow or encourage the parties to proceed, either simultaneously or sequentially, in multiple forums."

11

*Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995). Parties are required to elect arbitration "as early as possible," because that "prevents parties from waiting to see how they fare in a judicial forum before choosing arbitration[.]" *Kawasaki*, 660 F.3d at 994. Parties get just one bite at the apple, which means evidence of "an intent to proceed with litigation" cuts in favor of a finding of waiver. *Kawasaki*, 660 F.3d at 995; *Central Ill. Carpenters Health and Welfare Trust Fund v. Con-Tech Carpentry, LLC*, 806 F.3d 935, 937 (7th Cir. 2015) ("True, a litigant cannot attempt to prevail in court, then seek arbitration only as a fallback."); *Cabinetree*, 50 F.3d at 390 ("an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate").

In determining whether a party has waived its right to arbitrate a claim, courts consider several factors, including diligence (which "weighs heavily") and whether the "party participated in litigation, substantially delayed its request for arbitration or participated in discovery." *Kawasaki*, 660 F.3d at 994. Waiver does not require a showing of prejudice, but prejudice is a relevant factor. *Kawasaki*, 660 F.3d at 944.

Plaintiffs make two points to support their argument that defendants have waived any right to arbitrate. First, plaintiffs argue that Midland Funding waived its right to arbitrate when it initiated separate litigation in the Circuit Court of Cook County to collect debts. Specifically, plaintiffs point out that Midland Funding filed debt-collection suits against plaintiffs Ramirez and Avina. The Court does not agree that the filing of a lawsuit on one claim constitutes a waiver of the right to arbitrate every subsequent claim. The arbitration agreements in this case are written to allow *either* party to elect arbitration on *any* claim; they are not written to require the parties to arbitrate every claim. Defendant did not waive its right to arbitrate the FDCPA claim in this case merely by filing an earlier, separate claim to collect the debt on the account.

*See Schwartz v. CACH, LLC*, Case No. 13-12644, 2014 WL 298107 at *3 (D. Mass. Jan. 27, 2014) ("[Defendant's] decision not to invoke arbitration in the earlier state-court collection actions is not relevant. The contract here provides that either party can elect arbitration as to 'any claim.' It does not require that the parties either litigate all claims or arbitrate all claims. . . . The collection actions, which [defendant] brought against plaintiff, are distinct from the claims brought by plaintiff here.").

Plaintiffs' second point is more compelling. Plaintiffs argue that defendants had been proceeding with this case in this court for nearly a year and had issued discovery requests *before* they moved to compel arbitration. *See Cabinetree*, 50 F.3d at 391 ("Selection of a forum in which to resolve a legal dispute should be made at the earliest possible opportunity in order to economize on the resources, both public and private, consumed in dispute resolution."). To be sure, some of the nearly-year-long delay is not indicative of an election to litigate the FDCPA claim here. For example, defendants filed several motions for extension of time to answer the original complaint, thereby taking up roughly four months of the year this case was pending before defendants moved to compel arbitration. That delay is not indicative of waiver.

When defendants finally answered, they asserted as an affirmative defense the fact that "arbitration *may* be the appropriate venue." (Answer at 16/Docket 57 at 16) (emphasis added). Ordinarily, listing arbitration as an affirmative defense would cut against a finding of waiver. But, the Seventh Circuit has noted how easy it is to find out whether an agreement contains an arbitration provision. *Smith*, 907 F.3d at 500 ("[Arbitration] provisions are commonplace, and [defendant] should have investigated whether [plaintiff's] contract contained one. What's more, federal regulations require credit card issuers to post their credit card agreements online. See 12 C.F.R. § 1026.58(d). Even if [the original creditor] was unresponsive to inquiries, [defendant]

13

could have found the agreement through a routine internet search."). If defendants already knew (and they should have known) when they filed their answer that the agreement contained an arbitration provision, then their use of the word "may" (as is "arbitration *may* be the appropriate venue," as opposed to "arbitration *is* the appropriate venue") in their answer sounds like they are hedging their bets instead of making an immediate election to compel arbitration. If they were hedging their bets, that would cut in favor of a finding of waiver.

  Other things defendants have done in this case are suggestive of an intent to litigate here, rather than in arbitration. Originally, this case was a single-plaintiff case filed by Ramirez. About seven months after Ramirez filed her complaint, defendants filed a motion to reassign to this Judge three single-plaintiff cases filed by Avina, Nieto and Ranos. Nowhere in their motion to reassign did defendants mention arbitration or suggest they intended to move to compel arbitration. Defendants did not, for example, argue that the enforceability of the arbitration agreements was a question common to all cases. Instead, defendants' motion to reassign made it sound as if they intended to litigate in this Court. Defendants argued reassignment would "increase *judicial* economy by allowing one judge to learn the facts and law related to the cases." (Docket 31 at 3) (emphasis added). Defendants also argued reassignment would streamline discovery in this case, because each defendant would need to be deposed only once, rather than multiple times. (Docket 31 at 4). Defendants recognized that discovery (which had already begun) was set to close in December but argued that either discovery could be extended or defendants could hustle to get everything finished by the deadline. (Docket 31 at 5 n.1). Finally, defendants argued the cases could be "resolved in a single proceeding." (Docket 31 at 3). These arguments, together with defendants' failure to mention in the motion to reassign their intent to proceed to arbitration, suggest defendants intended to litigate in this Court.

About one month later, after the Court granted the motion to reassign, plaintiffs filed an amended complaint, asserting a single count on behalf of five plaintiffs and, purportedly, on behalf of a class of similarly-situated individuals. Each plaintiff's claim was the same as before: an FDCPA claim based on the letter each received from MCM.

Four months after plaintiffs amended (roughly one year into the case), defendants finally moved to compel arbitration. Defendants' conduct in this case suggests defendants' original plan was to litigate the claims in this court but that they changed their minds once plaintiffs' claims were threatening to be litigated as a class action. In other words, it looks like defendants made a strategic decision to litigate here but later wanted to arbitrate instead. Indeed, defendants state rather candidly in their reply brief, "Plaintiffs' conduct in turning their individual claims into a class action lawsuit against Defendants triggered the instant Motion to Compel Arbitration at this stage of litigating Plaintiffs' claims." (Docket 71 at 8). Plaintiffs' *claims*, though, had not changed. Each plaintiff's claim is the same FDCPA claim she made in her original case. It was the *claim* that triggered a right to arbitrate, and the claim was the same even after plaintiffs amended. If defendants have the right to arbitrate each plaintiff's claim now, then they had the right to arbitrate when each claim was originally filed. That defendants did not elect arbitration then and, instead, suggested to this Court (by filing the motion to reassign and issuing discovery requests) that they intended to litigate the claims here, suggests waiver.

Furthermore, even after plaintiffs filed their amended complaint purporting to bring claims on behalf of similarly-situated individuals, defendants still were not diligent about moving to compel arbitration. Roughly ten weeks passed after plaintiffs filed their amended complaint before defendants mentioned, in a motion for extension of time, that they intended to move to compel arbitration. (Docket 46).

15

The Court concludes that defendants waived any right to arbitrate the claims in this case.

**III.     Conclusion**

For the reasons set forth above, the Court denies the motion to compel arbitration [58].

This case is set for status on July 24, 2019 at 9:30 a.m.

SO ORDERED.                                                                 ENTERED:  June 21, 2019

                                                                                                    _____
                                                                                                    JORGE L. ALONSO
                                                                                                    United States District Judge