IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GABRIELA RAMIREZ, FIDELA AVINA, RUEL NIETO, KATHERINE RANOS, and EVALINA GONZALEZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC; and ENCORE CAPITAL GROUP, INC.<br><br>Defendants. | Case No. 17-cv-02626<br><br>Hon. Jorge L. Alonso |

## MEMORANDUM IN SUPPORT OF CLASS CERTIFICATION

Plaintiffs, Gabriela Ramirez, Fidela Avina, Ruel Nieto, Katherine Ranos, and Evalina Gonzalez ("Plaintiffs"), respectfully request that this Court enter an order determining that this Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") action may proceed as a class action against Defendants Midland Funding, LLC ("Midland"), Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc. ("Encore", collectively "Defendants"). Plaintiffs assert class claims against Defendants based upon violations of the FDCPA. This memorandum is submitted in support of Plaintiff's Motion for Class Certification.

**I.     BACKGROUND**

Midland purchased alleged consumer credit account debts from each named plaintiffs' alleged creditors. MCM, Midland's servicing agent, then mailed each Plaintiff a collection letter in an attempt to collect the individual debts (Group Exhibit A, "Letter" or "Letters"). The Letters conveyed various information regarding the alleged debts, including an account number and a current balance due. The Letters were a "communication" as that term is defined at § 1692a(2) of

1

the FDCPA. Each Letter stated, in relevant part:

> **If the account goes to an attorney, our flexible options may no longer be available to you.**

Plaintiffs believed, and the unsophisticated consumer would believe, that MCM was threatening to no longer allow settlement, or monthly payments, or any flexible payment options once the account was forwarded to an attorney. In fact, MCM routinely offers flexible payment options after forwarding an account to an attorney. It is the pattern and practice of MCM to allow flexible payment options, including payment plans for small amounts, even after a lawsuit has been filed and a judgment obtained, including payments as small as $25 per month.

The language in each Letter to the contrary was thus false, deceptive, and misleading.

## II. THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.*, 106 F.3d 338, 341 (7th Cir. 1997); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt.

In enacting the FDCPA, Congress recognized the:

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts minuscule. . . . [T]he vast majority of consumers who obtain credit fully intend to repay their debts. When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), *reprinted in* 1977 USCCAN 1695, 1697.

The Seventh Circuit has held that when deciding whether a debt collector's collection letter violates the FDCPA, the court must evaluate the letter from the viewpoint of an unsophisticated consumer. *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996); *Gammon v. GC Services, LP*, 27 F.3d 1254 (7th Cir. 1994). The standard is an objective one -- whether the plaintiff or any class member was in fact misled is not an element of a cause of action. "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections, Inc.*, 754 F. Supp. 383, 392 (D. Del. 1991).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. § 1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Servs., Inc.*, 839 F. Supp. 941 (D. Conn. 1993).

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

*N.C. Freed Co. v. Board of Governors*, 473, F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir.1997); *Baker*, 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Cacace v. Lucas*, 775 F.Supp. 502 (D.Conn. 1990); *Riveria v. MAB Collections, Inc.*, 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Technol.*, 865 F. Supp. 1443, 1450 (D.Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr.N.D.N.Y. 1982); *In re Littles*, 90 B.R. 669, 680

(Bankr.E.D.Pa. 1988) aff'd as modified sub nom. *Crossley v. Lieberman*, 90 B.R. 682 (E.D.Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 666 (7th Cir. 2001); *Whatley v. Universal Collection Bureau*, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981). "Congress intended the Act to be enforced primarily by consumers . . . *."* Senate Report No. 95-382, 95th Cong., 1st Sess. 5, *reprinted in* 1977 USCCAN, 1695, 1699; *FTC v. Shaffner*, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them . . . ." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith, or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." *Cacace*, 775 F. Supp. at 595; *Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000); *Glover v. F.D.I.C.*, 698 F.3d 139, 149 (3rd Cir. 2012).

## III. STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the court stated in *Eshaghi v. Hanley Dawson Cadillac Co.*, 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection. . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and**

**deterrence of the wrongdoer.**
574 N.E.2d at 764, 766.

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§ 1692k(a) and (b) for FDCPA class action cases. As a result, numerous FDCPA class actions have been certified. *See Carroll v. United Compucred Collections*, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *43-44 (M.D. Tenn. Nov. 15, 2002), adopted in pertinent part, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn., Mar. 31, 2003), aff'd, 399 F.3d 620 (6th Cir. 2005); *Wahl v. Midland Credit Mgmt.*, 06 C 1708, 2007 U.S. Dist. LEXIS 39626, *14-15 (N.D. Ill., May 30, 2007); *Vines v. Sands*, 188 F.R.D. 302 (N.D. Ill. 1999); *Nielsen v. Dickerson*, 98 C 5909, 1999 WL 350694, 1999 U.S. Dist. LEXIS 8334 (N.D. Ill. May 19, 1999); *Sledge v. Sands*, 182 F.R.D. 255 (N.D. Ill. 1998); *Shaver v. Trauner*, C.A. 97-1309, 1998 U.S. Dist. LEXIS 19648 (C.D. Ill. July 31, 1998); *Keele v. Wexler & Wexler*, 95 C 3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill., March 18, 1996), aff'd, 149 F.3d 589 (7th Cir. 1998); *Miller v. Wexler & Wexler*, 97 C 6593, 1998 WL 60798, 1998 U.S. Dist. LEXIS 1382 (N.D. Ill. Feb. 5, 1998); *Wilborn v. Dun & Bradstreet*, 180 F.R.D. 347 (N.D. Ill. 1998); *Arango v. GC Services LP*, 97 C 7912, 1998 WL 325257, 1998 U.S. Dist. LEXIS 9124 (N.D. Ill. 1998) (misleading collection letters); *Avila v Van Ru Credit Corp.*,94 C 3234, 1995 WL 683775, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), aff'd, *Avila v. Rubin*, supra, 84 F.3d 222; *Carr v. Trans Union Corp.*, C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); *Colbert v. Trans Union Corp.*, C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995) (same); *Gammon v. GC Services, L.P.*, 162 F.R.D. 313 (N.D. Ill. 1995) (similar); *Zanni v. Lippold*, 119 F.R.D. 32, 35 (C.D. Ill. 1988); *West v. Costen*, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class certified regarding

alleged failure to provide required "validation" notices and addition of unauthorized fees); *Cheqnet Systems, Inc. v. Montgomery*, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); *Brewer v. Friedman*, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); *Duran v. Credit Bureau of Yuma, Inc.*, 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

IV. **THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION**

    a.     **Rule 23(a)(1) – Numerosity**

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *Driver v. AppleIllinois LLC*, 265 F.R.D. 293, 300 (N.D. Ill 2010) held that

> **plaintiffs are not required to specify the exact number of persons in the class; a properly-supported estimate is sufficient. See *Marcial v. CoronetIns. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). A court may make common sense assumptions to determine class size. See *Hispanics United of DuPage Co. v. Village of Addison, Illinois*, 160 F.R.D. 681, 688 (N.D. Ill. 1995) (quotations and citations omitted).**

*Perdue v. Individual Members of the Indiana Board of Bar Examiners*, §, 218 (S.D. Ind. 2010), noted that

> **the Seventh Circuit has not provided specific guidance about when a putative class is large enough to satisfy the numerosity requirement. However, in [*Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)], the court assumed that fourteen individuals would be insufficient... Similarly, in *Pruitt v. City of Chicago*, 472 F.3d 925, 926 (7th Cir. 2006), the court noted that "joinder of fewer than 40 workers... would be practical" so class certification was inappropriate.**

This is in line with the basic presumption that joinder of more than 40 persons is generally considered impractical. *Hale, supra*, 264 F.R.D. at 404-405 (N.D. Ill. 2009) (citing

6

*Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969)). Through discovery, Plaintiffs have ascertained that collection letters substantially similar to the Letter sent to Plaintiffs as set forth in the proposed class definition were mailed to approximately 54,300 individuals in Illinois during the relevant time frame.[1] Since joinder of 54,300 individuals is impractical, Plaintiffs' proposed class satisfies the numerosity requirement of Fed. R. Civ. P. 23(a)(1).

      b.      **Rules 23(a)(2) and 23(b)(3) – Predominance of common questions of law or fact**

Fed. R. Civ. P 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

*Hale*, *supra*, 264 F.R.D. at 405, 407, held that

> **Commonality generally exists when the defendant has engaged in "standardized conduct" toward the members of the proposed class. *Smith v. Nike Retail Servs., Inc.*, [234 F.R.D. 648, (N.D. Ill. 2006). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). . . .**
>
> **Rule 23(b)(3)'s predominance requirement is typically satisfied where the central, common issue is whether the defendant's form letter violates the FDCPA. See *Quiroz v. Revenue Production Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008) (finding that predominance was satisfied where the common question was whether the defendant's form letter violated §1692e); see also *Day v. Check Brokerage Corp.*, 240 F.R.D. 414, 418-19 (N.D. Ill. 2007) (finding that predominance was satisfied where class members received "very similar" letters, and the common legal issue was whether those letters violated the FDCPA); *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 290 (N.D. Ill. 2005) (same).**

More generally, *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974) held that satisfaction of the predominance requirement of Fed. R. Civ. P. 23(b)(3) "normally turns on the answer to one basic question: is there an essential common factual link

---

[1] *See,* Exhibit C, Supplemental Answers to Interrogatories.

between all class members and the defendant for which the law provides a remedy?" *Accord*, *Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 310 (N.D. Ill. 1995). See *Walker v. Calusa Investments,* LLC, 244 F.R.D. 502, 506-507 (S.D. Ind. 2007) (similar).

In this case, the following common issues exist with respect to each class member: whether Defendant made a false threat regarding flexible payment options. Each of these form letters is virtually identical and contain the same deceptive and misleading information at the crux of Plaintiffs' claim. All letters contain precisely the same alleged violations of the FDCPA. Further, "[i]f each class member proceeded individually, each would have to prove the [same underlying set of facts]…individual actions designed to prove identical elements would completely destroy any notions of judicial economy." *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1034 (N.D. Miss. June 28, 1993).

The use of a form collection letter also indicates standardized conduct by Defendant, and thus "the salient question for [Plaintiff] and all class members is whether these standardized communications violate the FDCPA…Courts routinely find that claims based on form debt collection letters satisfy the predominance requirement of Rule 23(b)(3)." *McWilliams*, 310 F.R.D. at 340; *see also Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 671 (S.D. Fla. Jan. 16, 2014) ("[b]ecause the main issue in dispute in this case is whether form letters sent to Plaintiff and all other class members violate the FDCPA… common issues predominate.").

c. **Rule 23(a)(3) – Typicality**

Fed. R. Civ. P. 23(a)(3) requires that the claims of a named Plaintiff be typical of the claims of the class. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998), held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."

(Citation and internal quotation marks omitted.) *Accord*, *Driver*, *supra*, 265 F.R.D. at 304.

Here, typicality is inherent in the class definition. By definition, all members are individuals with Illinois addresses, who received a collection letter from Defendant, which contained the same false and misleading language. Thus, all class members have been subjected to the same collection practices as Plaintiff and suffered the same violations of the FDCPA that Plaintiff suffered.

### d. Rule 23(a)(4) – Adequacy of Representation

The rule also requires that a named plaintiff provide fair and adequate protection for the interests of the class. This requirement entails a dual inquiry into (1) whether the plaintiff's interests are antagonistic to those of the class, and (2) whether plaintiff's counsel has the qualifications and experience necessary to competently conduct the litigation. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Both of those considerations are satisfied in this case. Plaintiffs understand the obligations of being class representatives and have interests that are identical to the interests of the proposed class. Plaintiffs have also retained experienced counsel, whose qualifications are enumerated and attached as Exhibit B. Further, Plaintiffs and the members of the class seek money damages as a result of Defendants' unlawful collection practices, provided for by 15 U.S.C. § 1692k. Given the identity of claims between Plaintiff and the members of the class, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named Plaintiff and those of the class.

### e. Rule 23(b)(3) – Superiority

This section of the rule requires a court to consider whether a class action is superior to other methods of adjudication. When determining whether a class action is superior to other

means of adjudication, courts consider: (1) the class members' interest in individually controlling their separate actions, (2) the extent and nature of existing litigation by class members concerning the same claims, (3) the desirability of concentrating the litigation in the particular forum, and (4) the likely difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).

*Hale*, *supra*, 264 F.R.D. at 407, noted that "the Seventh Circuit has held that class actions are especially appropriate for resolving FDCPA claims. *See Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000); *Randolph*, [*supra*, 254 F.R.D. at 520]. Where, as here, Defendants have 'engaged in standardized conduct by sending form letters to many consumers, and each individual consumer's claim would likely be too small to vindicate through [**13] an individual suit,' a class action is the most efficient, effective way to proceed. *Quiroz*, [*supra*, 252 F.R.D. at 444]; see also *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)."

*Randolph* further held that "[a] class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually.... the Seventh Circuit has noted that although the FDCPA allows for individual recoveries, this assumes that the plaintiff is aware of his or her rights, willing to be subjected to litigation and able to find an attorney to take the case. *Mace*, [*supra*, 109 F.3d at 344]. 'These are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives.' *Id*." *Randolph*, 254 F.R.D. at 520.

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual debtor. The claims are limited to whether the form collection letter sent to the class members violates the FDCPA. Through discovery, Plaintiffs have ascertained that the class consists of 54,300 individuals, and therefore a class action is

clearly a superior vehicle for resolving the issues presented in this case as compared to individual civil actions.

As the predominant form of relief requested is money damages, a class action provides a "convenient and desirable mechanism for disposing of numerous debtors' actions, while protecting those individuals who wish to opt out of the class action." *Castro*, 256 F.R.D. at 543. Likewise, the claims, defenses, facts, and substantive law in this case present little complication for this Court to hear the case in the form of a class action, such that a class action is the superior method for a fair and efficient adjudication of this controversy. *See Id*.

The vast majority of debtors are undoubtedly unaware that their rights are being violated. Persons from whom Defendant is attempting to collect allegedly delinquent debts are unlikely to be able to pay to retain counsel to protect their rights on an individual basis. Finally, Defendants have stipulated that based on their net worth, the statutory cap on damages of $500,000 pursuant to § 1692k(a)(2)(B)(ii) applies. In the event that the class is certified, and the Court finds in favor of Plaintiff on liability, the class could potentially recover statutory damages in the amount of $500,000, approximately $9.20 per person. A 10% response rate is standard in large class inquiries. If only 10% of the class responds, each respondent would receive approximately $92 each. This eliminates any concern over class members' ability to recover an appropriate amount in damages.

V. **CONCLUSION**

The proposed class meets the requirements of Rules 23(a) and (b)(3). Plaintiffs respectfully requests that this Court certify this action as a class action, name Plaintiffs as class representatives, and appoint the lawyers at Community Lawyers, LLC. as class counsel in this case.

By: s/Celetha Chatman
One of Plaintiff's Attorneys

Celetha C. Chatman
Michael J. Wood
**Community Lawyers, LLC.**
20 N. Clark Street, Suite 3100
Chicago, IL 60602
Ph: 312.757.1880
fax: 312.265.3227
cchatman@communitylawyersgroup.com

**CERTIFICATE OF SERVICE**

  I hereby certify that on September 6, 2019 I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

                   By: s/Celetha C. Chatman
                   One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
**Community Lawyers, LLC.**
20 N. Clark, Suite 3100
Chicago, IL 60602
Ph: (312) 757-1880
Fx: (312) 265-3227
mwood@communitylawyersgroup.com
cchatman@communitylawyersgroup.com