**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIELA RAMIREZ, FIDELA AVINA, RUEL NIETO, KATHERINE RANOS, and EVALINA GONZALEZ, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| | | Case No. 1:17-cv-02626 |
| Plaintiff, | ) ) | Judge: Jorge L. Alonso |
| v. | ) ) | Magistrate Judge: Susan E. Cox |
| MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and ENCORE CAPITAL GROUP, INC., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

INTRODUCTION ..................................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

STANDARD OF REVIEW .....................................................................................................4

     I.     Summary Judgment Standard .............................................................................4

     II.    Seventh Circuit Standard for Analysis of FDCPA Claims ...............................5

ARGUMENT..........................................................................................................................6

     I.     Defendants are entitled to summary judgment because Plaintiffs' claims are impermissibly based on a bizarre misreading of the letter. ...............................6

     II.    Defendants are entitled to summary judgment because Plaintiffs' claims are unsupported by extrinsic evidence. ....................................................................8

     III.   This Court should grant summary judgment in favor of Defendants because the letters do not contain language that was false, deceptive or misleading. ...............9

          a.     The letters are literally true and do not threaten action not intended. ..............9

          b.     The letters are consistent with Seventh Circuit law. .........................................12

     IV.   This Court should enter summary judgment on Plaintiffs' § 1692f claims because the letters were not unconscionable means to collect a debt. .........................15

CONCLUSION.....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bass v. Portfolio Recovery Associates, LLC*,
   Case No. 17 C 8345, 2018 U.S. Dist. LEXIS 14294 (N.D. Ill. Aug. 22, 2018) ...............................13

*Beale v. Edgemark Fin. Corp.*,
   1995 U.S. Dist. LEXIS 15789 (N.D. Ill. 1995) ...................................................................................1

*Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*,
   480 F.3d 470 (7th Cir. 2007) ...............................................................................................................6

*Blum v. Lawent*,
   Case No. 02 C 5596, 2003 U.S. Dist. LEXIS 16050 (N.D. Ill. Sept. 9, 2003) ................................16

*Chuway v. Nat'l Action Financial Servs., Inc.*,
   362 F.3d 944 (7th Cir. 2004) ...............................................................................................................8

*Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*,
   427 F.3d 1038 (7th Cir. 2005) .............................................................................................................5

*DeKoven v. Plaza*,
   599 F.3d 578 (7th Cir. 2010) ................................................................................................13, 14, 15

*Duarte v. Client Servs.*,
   Case No. 18 C 1227, 2019 U.S. Dist. LEXIS 53900 (N.D. Ill. Mar. 29, 2019) ..............................13

*Duffey v. Cent. States, Se. & Sw. Areas Pension Fund*,
   829 F.2d 627 (7th Cir. 1987) .............................................................................................................11

*Dunbar v. Kohn Law Firm, S.C.*,
   896 F.3d 762 (7th Cir. 2018) .........................................................................................................7, 12

*Durkin v. Equifax Check Servs., Inc.*,
   406 F.3d 410 (7th Cir. 2005) ....................................................................................................7, 8, 12

*Evory v. RJM Acquisitions Funding LLC*,
   505 F.3d 769 (7th Cir. 2007) ................................................................................................13, 14, 15

*Francisco v. Midland Funding, LLC et al*,
   Case No. 17 C 6872, 2019 U.S. Dist. LEXIS 20601 (Feb. 8, 2019) ................................................16

*Gomez v. Rossi Concrete, Inc.*,
   2011 U.S. Dist. LEXIS 15852 (S.D. Cal. 2011) .................................................................................1

304283846v1 0997515

*Gully v. van Ru Credit Corp.*,
   381 F. Supp. 2d 766 (N.D. Ill. 2005) ........................................................................7, 15

*Harper v. Fulton Cnty.*,
   748 F.3d 761 (7th Cir. 2014) ...........................................................................................4

*Johnson v. Revenue Mgmt. Corp.*,
   169 F.3d 1057 (7th Cir. 1999) .........................................................................................8

*Laskin v. Siegel*,
   728 F.3d 731 (7th Cir. 2013) ...........................................................................................5

*Maldonado-Rodriguez v. Citibank, N.A.*,
   Case No. 12 C 150 JD, 2013 U.S. Dist. LEXIS 11396 (Jan, 28, 2013) ........................5, 16

*Marshall-Mosby v. Corp. Receivables, Inc.*,
   205 F.3d 323 (7th Cir. 2000) ...........................................................................................8

*McCoy v. Midland Funding, LLC et al*,
   Case No. 18-cv-1035 ........................................................................................................1

*McMillan v. Collection Professionals Inc.*,
   455 F.3d 754 (7th Cir. 2006) ...........................................................................................8

*O'Rourke v. Palisades Acquisition XVI, LLC*,
   635 F.3d 938 (7th Cir. 2011) ...........................................................................................5

*On-Site Screening, Inc. v. U.S.*,
   687 F.3d 896 (7th Cir. 2012) .........................................................................................11

*Ruth v. Triumph P'ships*,
   577 F.3d 790 (7th Cir. 2009) ...........................................................................................6

*Sims v. GC Servs. L.P.*,
   445 F.3d 959 (7th Cir. 2006) ...........................................................................................8

*Swetlik v. Crawford*,
   738 F.3d 818 (7th Cir. 2013) ...........................................................................................4

*Taylor v. Cavalry Inv., LLC*,
   365 F.3d 572 (7th Cir. 2004) ........................................................................................6, 8

*Veach v. Sheeks*,
   316 F.3d 690 (7th Cir. 2003) ...........................................................................................5

*Wahl v. Midland Credit Mgmt., Inc.*,
   556 F.3d 643 (7th Cir. 2009) ........................................................................................5, 9

iv

*Walker v. Nat'l Recovery, Inc.*,
  200 F.3d 500 (7th Cir. 1999) ................................................................................8

*Zemeckis v. Global Credit & Collection Corp.*,
  679 F.3d 632 (7th Cir. 2012) ...............................................................................5

**Statutes**

15 U.S.C. §1692e .............................................................................................*passim*

15 U.S.C. § 1692f .......................................................................................... 15, 16

Fair Debt Collection Practices Act ...........................................................................1

FDCPA .........................................................................................................*passim*

TIME'S A WASTIN'! ... Act ...............................................................................13

**Other Authorities**

Fed. R. Civ. P. 56(a) .............................................................................................4

MCM .........................................................................................................*passim*

Rule 56 ................................................................................................................5

304283846v1 0997515

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, MIDLAND FUNDING, LLC ("Midland Funding"), MIDLAND CREDIT MANAGEMENT, INC. ("MCM") and ENCORE CAPITAL GROUP, INC. ("Encore"), by and through their attorneys David M. Schultz and Lindsey A.L. Conley of Hinshaw & Culbertson LLP, pursuant to the Federal Rules of Civil Procedure and the Local Rules for the Northern District of Illinois Federal District Court, submit their Motion for Summary Judgment and Memorandum of Law, and state as follows:

## INTRODUCTION[1]

Plaintiffs owed money to Midland Funding. Midland Funding's servicer, MCM, offered to settle the debts and provided an opportunity for Plaintiffs to take advantage of various discount options and payment arrangements. MCM also truthfully told Plaintiffs that if they did not take advantage of the options, the accounts would be referred to collection lawyers, where the Plaintiffs' options for resolving the outstanding balances might not be as varied as the options that MCM was offering. The undisputed evidence in this case shows that MCM's letters communicating these messages were truthful, and in no way misleading or deceptive.

Nevertheless, Plaintiffs contend that the letters violate the Fair Debt Collection Practices Act ("FDCPA"). But Plaintiffs' theory is unsupported by logic, legal standards, and most importantly, evidence. Plaintiffs speculate that the letters would lead an unsophisticated consumer to believe that,

---

[1] This Court ordered discovery to close on August 14, 2018. (Dkt. No. 80). Since the filing of the class action complaint Plaintiff has not filed a motion for class certification. On July 24, 2019, this Court set a briefing schedule on Defendants' motion for summary judgment and Plaintiffs' motion for class certification. (Dkt. #86). On July 25, 2019, Defendants filed a Notice of Advisement formerly advising the Court that the current briefing schedule has the potential to create problems associated with "one way intervention" – whereby a potential class member could potentially await the outcome of a determination on the merits before deciding whether to join the class. *See Gomez v. Rossi Concrete, Inc.*, 2011 U.S. Dist. LEXIS 15852, *2 (S.D. Cal. 2011); *see also Beale v. Edgemark Fin. Corp.*, 1995 U.S. Dist. LEXIS 15789, *9-10 (N.D. Ill. 1995). Defendants did not oppose the current briefing schedules set by the Court as such procedures are not unusual (*See McCoy v. Midland Funding, LLC et al*, Case No. 18-cv-1035, J. Feinerman). Therefore, Defendants deem it appropriate to address the issue in their motion for summary judgment and advise this Court that they do not waive one-way intervention should the circumstances arise that this Court rules in Plaintiffs' favor on summary judgment and class certification.

after the accounts were forwarded to an attorney, there would be no possibility for settlement, monthly payments, or any flexible payment options. (Pls.' Am. Compl., ¶ 33). Plaintiffs' claims fail for four main reasons.

First, considering the text of the letters alone – as it must be under the applicable Seventh Circuit standard – no rational or reasonable reading would lead to the conclusion that the language would have misled the unsophisticated consumer. Second, Plaintiffs have not, as they must under Seventh Circuit law in a case like this, offered a scintilla of extrinsic evidence which would support the irrational notion that an unsophisticated consumer would have been confused, deceived, or intimidated by the letters.  This lack of evidence dooms Plaintiffs' case. Third, even if Plaintiffs had attempted to offer such "survey evidence" (and they have not), the other evidence in the case – which is extensive, and consists of detailed testimony and documents – conclusively establishes that MCM's statements were true. Finally, MCM adhered to binding Seventh Circuit safe harbor language for settlement offers. Any one of these arguments is sufficient for this Court to enter judgment in favor of Defendants.

## STATEMENT OF FACTS

Midland Funding purchased Plaintiffs' accounts from their original creditors. (DSMF, ¶¶ 13, 21, 29, 37, 44). The accounts were placed with MCM for servicing. (DSMF, ¶¶ 14, 22, 30, 38, 45). MCM sent Plaintiffs nearly identical pre-legal notification letters which informed Plaintiffs that their accounts were under pre-legal review and MCM was considering forwarding the accounts to an attorney for litigation purposes. (DSMF, ¶¶ 15, 23, 31, 39, 46). The letters stated in relevant part: "LET US HELP YOU! If the account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us: [telephone numbers omitted]." (DSMF, ¶¶ 15, 23, 31, 39, 46). Plaintiffs did not contact MCM to pay or make arrangements on their accounts. (DSMF, ¶¶ 16, 24, 32, 40, 47). At no point in

304283846v1 0997515

time did Plaintiffs pay any money to resolve the Midland Funding accounts. (DSMF, ¶¶ 16, 24, 32, 40, 47). Based upon a systematic algorithm, MCM did forward some of the accounts to an attorney for litigations purposes after the letters at issue were sent. (DSMF, ¶¶ 17, 25, 33, 56).

On October 30, 2016, MCM placed Ramirez's account with Blitt & Gaines, P.C., a law firm, for the purposes of litigation. (DSMF, ¶ 67). On January 19, 2017, the law firm filed a collection case against Ramirez to collect the balance of the account. (DSMF, ¶ 67). On August 20, 2017, MCM placed Avina's account with Blitt & Gaines, P.C., a law firm, for the purposes of litigation. (DSMF, ¶ 68). On October 31, 2017, the law firm filed a collection case against Avina to collect the balance of the account. (DSMF, ¶ 68). Around December 4, 2016, MCM placed Nieto's account with a law firm, Blatt, Hasenmiller, Leibsker & Moore, LLC, for the purposes of litigation. (DSMF, ¶ 69). After the accounts for Ramirez, Avina and Nieto were sent to an attorney, no options or discounts were extended on those accounts. (DSMF, ¶ 70).

Plaintiffs' accounts were within MCM's Pre-Legal Internal Operations group. (DSMF, ¶ 65). Accounts that are placed with MCM's Pre-Legal Internal Operations group are eligible to be placed with an attorney for the purposes of instituting legal proceedings to collect the balance on the account. (DSMF, ¶ 56). MCM's Pre-Legal Internal Operations group will attempt to contact the debtor to resolve the debt and will advise the debtor that the account is in pre-legal status and may be placed with an attorney if the account is not resolved with MCM's Internal Operations department. (DSMF, ¶ 55). MCM's Internal Operations department has the ability to resolve a debt for less than the full balance owed or coordinate various payment plans with a debtor. (DSMF, ¶ 53). MCM's Internal Operations department defines flexible options as the ability to make payments that potentially match the debtor's needs such as stretching out payments over a span of months. (DSMF, ¶ 54).

When MCM places a Midland Funding account with an attorney, it is for the purposes of

instituting legal action against the debtor to collect the balance of the account. (DSMF, ¶ 72). Attorneys who handle Midland Funding accounts do not send out settlement letters to debtors and do not initiate communications to settle an account. (DSMF, ¶ 73). MCM's attorneys have a goal to file legal proceedings to obtain a judgment for 100% of the account balance and any fees or costs that a court would allow. (DSMF, ¶ 74). If a debtor initiates settlement, MCM expects its attorneys to negotiate with the debtor or the debtor's authorized representative with MCM's objectives of obtaining the full balance of the account. (DSMF, ¶ 75). In most cases when the account is resolved with an attorney, the final payment is not discounted from the full balance. (DSMF, ¶ 64).

Plaintiffs' theory of the case is that the letters caused Plaintiffs to believe and would cause the unsophisticated consumer to believe that MCM was "threatening to no longer allow settlement, or monthly payments, or any flexible payment options once the account was forwarded to an attorney." (DSMF, ¶ 76). Plaintiffs claim that the letters were false because "MCM routinely offers flexible payment options after forwarding an account to an attorney" and allows "flexible payment options, including payment plans for small amounts, even after a lawsuit has been filed and a judgment obtained." (DSMF, ¶ 77).

## STANDARD OF REVIEW

### I.      Summary Judgment Standard

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court "must determine whether the evidence, so construed, establishes genuine disputes of material fact with respect to" plaintiffs' claims. *Harper v. Fulton Cnty.*, 748 F.3d 761, 765 (7th Cir. 2014). A genuine dispute of material fact "exists only if there is enough evidence upon which a reasonable [finder of fact] could return a verdict in" the non-movant's favor. *Swetlik v. Crawford*, 738 F.3d 818, 826 (7th Cir. 2013). On cross motions for summary judgment, the court assesses whether each movant has

4

satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). "As with any summary judgment motion, we review cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013).

## II.        Seventh Circuit Standard for Analysis of FDCPA Claims

To obtain relief under the FDCPA, a plaintiff must plead and prove that: (1) she is a person harmed by violations of the FDCPA or is a consumer as defined by the FDCPA; (2) the debt arises out of a transaction entered primarily for personal, family or household purposes; (3) the defendant is a debt collector as defined by the FDCPA; and (4) the defendant has violated, by act or omission, a provision of the FDCPA. *See Maldonado-Rodriguez v. Citibank, N.A.*, Case No. 12 C 150 JD, 2013 U.S. Dist. LEXIS 11396, *5 (Jan, 28, 2013).

Plaintiffs' FDCPA claims rest on allegations that collection letters sent to them violate the FDCPA. In evaluating a collection letter's compliance with the FDCPA, the Seventh Circuit applies the "unsophisticated consumer" standard. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 635 (7th Cir. 2012) citing *Avila v. Rubin*, 84 F.3d 222, 226–27 (7th Cir.1996). The letter must be clear and comprehensible to an individual who is "uninformed, naïve, [and] trusting," *Veach v. Sheeks*, 316 F.3d 690, 693 (7th Cir. 2003), but not without a rudimentary knowledge about the financial world or incapable of making basic deductions and inferences, *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009); *Zemeckis*, 679 F.3d at 635. Section 1692e prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011). The FDCPA is designed to provide information that helps consumers choose intelligently…to be actionable a misleading statement must have the ability to influence the consumer's decision. *Id.* at 941-42. Section 1692e is essentially a rule against trickery. *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*,

304283846v1 0997515

480 F.3d 470, 473 (7th Cir. 2007).

The Seventh Circuit treats the question of whether an unsophisticated consumer would find certain debt collection language misleading as a question of fact. In doing so, it divides debt collection communications into three categories: those that are plainly and clearly not misleading, those that are plainly deceptive or misleading, and those, in the middle category, that contain language that is not misleading or confusing on its face, but that has the potential to be misleading to the unsophisticated consumer. *Ruth v. Triumph P'ships*, 577 F.3d 790, 800-01 (7th Cir. 2009). For communications that fall into that middle category, "plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive." *Id.* at 800.

## **ARGUMENT**

### **I.     Defendants are entitled to summary judgment because Plaintiffs' claims are impermissibly based on a bizarre misreading of the letter.**

The Seventh Circuit has held that if it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it, the court should reject the plaintiff's interpretation without requiring evidence beyond the letter itself. *See Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 574-75 (7th Cir. 2004). MCM's letters, on their face, are plainly and clearly not misleading, as they simply inform Plaintiffs of the possibility that certain options available which fit the debtor's needs may no longer be available if the accounts are placed with an attorney.

Plaintiffs' interpretation of the language in the letters is bizarre, and should be rejected. A plain reading of the letters shows that Plaintiffs are misreading the language and creating an irrational interpretation. Specifically, Plaintiffs contend that MCM was "threatening to no longer allow settlement, or monthly payments, or any flexible payment options once the account was forwarded to an attorney." Nowhere in the letters, however, does it state that settlement would no

6

longer be possible if the accounts were referred to an attorney, or that monthly payments or other flexible payment options would never be available. The letters simply say that, should the accounts be referred to an attorney, the options that MCM is currently offering "may" no longer be available. It seems obvious that once MCM refers an account to its collection lawyers, that the options MCM is offering may be different, or may be unavailable altogether. Even an unsophisticated consumer who is uninformed but with rudimentary knowledge of the financial world (the standard here) would understand once a collection attorney gets involved and once money is spent on costs such as filing the complaint, service of process, attorney time, and post-judgment proceedings such as garnishments – the options available to resolve the account may be more limited.

Moreover, contrary to Plaintiffs' contention that the letters threatened them, MCM's letters contain language informing Plaintiffs that options to resolve their account would not be completely gone once the account was forwarded to an attorney, but they might be more limited. In other words, the letters clearly and truthfully noted that "flexible options <u>may</u> no longer be available." They did not say that "flexible options will never again be available," or anything close to that. Accordingly, they are not, under recent Seventh Circuit precedent, misleading, as this Circuit recognizes that the unsophisticated consumer would understand that the word "may" does not mean "will." *See Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018). Plaintiffs' bizarre interpretation should be disregarded. *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) ("[W]e disregard unrealistic, peculiar, bizarre and idiosyncratic interpretations of collection letters.").

In addition, Plaintiffs' claim ignores the principle that debt collectors are not obligated to make settlement offers and debtors are not entitled to receive them. *Gully v. van Ru Credit Corp.*, 381 F. Supp. 2d 766, 773 (N.D. Ill. 2005). Thus, it would be entirely legal for MCM to refuse to agree to any form of discount or payment options once an account was placed with a collection attorney. But

304283846v1 0997515

that is not what MCM said in the letters. Rather, a plain reading of the letters indicate, that certain options "may" still be available, but certain options "may" not – especially given the costs associated with collection litigation. It is lawful to encourage debtors to pay their debts by informing them of the possible negative consequences of failing to pay. *Durkin*, 406 F.3d at 417-18. Here, MCM's letters did just that. The letters lawfully encouraged Plaintiffs to pay their debts prior to any placement with an attorney. This Court should grant summary judgment in favor of Defendants.

    **II.**        **Defendants are entitled to summary judgment because Plaintiffs' claims are unsupported by extrinsic evidence.**

    Plaintiffs' failure to meet their burden to prove that the language violates the FDCPA is fatal to their claim. The Seventh Circuit has clearly and consistently held on multiple occasions that if it is unclear whether an unsophisticated consumer would find a communication deceptive, misleading, or confusing, extrinsic evidence is required to show how consumers perceive the communication. *See Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006) (§ 1692g claim); *Taylor*, 365 F.3d at 575 (§ 1692g claim); *Durkin*, 406 F.3d at 415, 419 (§§ 1692e, f and g claims); *Chuway v. Nat'l Action Financial Servs., Inc.*, 362 F.3d 944 (7th Cir. 2004) (§ 1692g claim); *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000) (§ 1692g claim); *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999) (§ 1692g claim); *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 501 (7th Cir. 1999) (§ 1692g claim). Each of those cases also explains that the most appropriate form of extrinsic evidence would be a "carefully designed and conducted consumer survey." *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 760 (7th Cir. 2006); quoting *Chuway* 362 F.3d at 948, referring to *Walker*, 200 F.3d at 501. The rule is applied uniformly when claims are asserted, like Plaintiffs' claim, under 15 U.S.C. §1692e.

    Plaintiffs' complaint contends that MCM's letter is false because it does not accurately represent that the debtor's options may not be as flexible once an account is transferred from MCM's Internal Operations group to its legal channel – i.e., once the account goes from a stage

304283846v1 0997515

where significant discounts and payment plans can be offered, to a stage where the primary goal is to file a lawsuit to recover 100% of the outstanding balance. However, Plaintiffs must not only prove that the language was false, but it would mislead the unsophisticated consumer. *Wahl*, 556 F.3d at 645-46. To try to overcome this hurdle, Plaintiffs claim that the letters caused Plaintiffs to believe and would cause the unsophisticated consumer to believe that MCM was "threatening to no longer allow settlement, or monthly payments, or any flexible payment options once the account was forwarded to an attorney." (DSMF, ¶ 76).

Plaintiffs' contentions are completely unsupported – as they must be to survive summary judgment – by required extrinsic evidence of how consumers perceive the letter. Plaintiffs did not perform a survey of consumers. Plaintiffs did not present any evidence that anyone was deceived or falsely threatened by the letters at issue. In fact, as detailed below, the only evidence in the record indisputably shows that while accounts are with MCM's Internal Operations group there are opportunities to resolve accounts for discounted rates but once an attorney gets involved many of the accounts resolved do not reflect that discounts were extended. (DSMF, ¶¶ 53, 64). Plaintiffs did not even attempt to comply with the Seventh Circuit requirement that survey evidence must be submitted to prove a claim such as the one they assert. Only one conclusion can be drawn from such an absence of evidence – it would clearly not have been favorable to Plaintiffs – because their core theory is based on an idiosyncratic and bizarre interpretation that would not have been shared by the majority of consumers that read the letter. As a result, Defendants' evidence – which shows that the letter is literally true, and that it is not deceptive in any way – is undisputed. Therefore, this Court should enter summary judgment in favor of Defendants.

**III.** **This Court should grant summary judgment in favor of Defendants because the letters do not contain language that was false, deceptive or misleading.**

**a. The letters are literally true and do not threaten action not intended.**

Because the letters were truthful and comply with the FDCPA, Plaintiffs' contention that

MCM threatened action that it did not intend to take when MCM sent letters stating that once Plaintiffs' accounts were forwarded to an attorney, flexible options may no longer be available lacks merit.

Here, the statement that "[i]f the account goes to an attorney, our flexible options may no longer be available to you" was a truthful and informative statement. It is undisputed that all five of the accounts at issue in this case were within MCM's Pre-Legal Internal Operations group. (DSMF, ¶ 65). Accounts that are placed with MCM's Pre-Legal Internal Operations group are eligible to be placed with an attorney for the purposes of instituting legal proceedings to collect the balance on the account. (DSMF, ¶ 56). MCM's Pre-Legal Internal Operations group will attempt to contact the debtor to resolve the debt and will advise the debtor that the account is in pre-legal status and may be placed with an attorney if the account is not resolved with MCM's Internal Operations department. (DSMF, ¶ 55). MCM's Internal Operations department has the ability to resolve a debt for less than the full balance owed or coordinate various payment plans with a debtor. (DSMF, ¶ 53). MCM's Internal Operations department defines flexible options as the ability to make payments that potentially match the debtor's needs such as stretching out payments over a span of months. (DSMF, ¶ 54).

It is undisputed that when MCM places a Midland Funding account with an attorney, it is for the purposes of instituting legal action against the debtor to collect the balance of the account. (DSMF, ¶ 72). Attorneys who handle Midland Funding accounts do not send out settlement letters to debtors and do not initiate communications to settle an account. (DSMF, ¶ 73). MCM's attorneys have a goal to file legal proceedings to obtain a judgment for 100% of the account balance and any fees or costs that a court would allow. (DSMF, ¶ 74). If a debtor initiates settlement, MCM expects its attorneys to negotiate with the debtor or the debtor's authorized representative with MCM's objectives of obtaining the full balance of the account. (DSMF, ¶ 75). In most cases when the

account is resolved with an attorney, the final payment is not discounted from the full balance. (DSMF, ¶ 64). Undisputed testimony shows that the statement is truthful because MCM's attorneys try to obtain judgment for the account balance; and in most cases, if settlement discussions arise, there are no discounts or options extended once an attorney is hired to resolve the account. This makes sense given that, once MCM makes the decision to file a lawsuit on a case, the cost of recovering the outstanding balance increases significantly as the result of court costs, including filing fees.

Plaintiffs have no evidence – and none exists – that supports their theory that MCM extended flexible options to them after their account was placed with an attorney. Thus, Plaintiffs fail to show evidence that a threat was made for their accounts. Plaintiffs all testified that they never tried to settle or pay their account with MCM. (DSMF, ¶¶ 16, 24, 32, 40, 47). If Plaintiffs never attempted payment or settlement of the debt with MCM, they are unable to prove MCM made a false threat of not extending any flexible options to resolve the account after forwarding the account to an attorney. One can only prove a threat if the opposite of the statement inevitably occurs. Unfortunately for Plaintiffs, this is the summary judgment phase, where it is "put up or shut up time" – when they have to either show that they have evidence that would convince a trier of fact to accept their version of the events, or face dismissal of their claims. *See On-Site Screening, Inc. v. U.S.*, 687 F.3d 896, 899 (7th Cir. 2012) *citing Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003); *Duffey v. Cent. States, Se. & Sw. Areas Pension Fund*, 829 F.2d 627, 630 (7th Cir. 1987).

Plaintiffs, however, provide no evidence of anything supporting their theory. In fact, it is undisputed that after receiving the supposedly offending letters, MCM initiated legal action against Ramirez, Avina and Nieto. Further, it is undisputed that once those accounts went to an attorney ***no settlement options were extended***. (SMF, ¶ 70). Therefore, it was truthful for MCM to state that if the Plaintiffs' accounts were placed with an attorney, flexible settlement options ***may*** no

11

longer be available. In fact, they were not available, as MCM's attorneys proceeded to attempt to collect the full outstanding balances. (SMF, ¶¶ 67-68). As best, Plaintiffs' claim is a far-fetch hypothetical unsupported by evidence. Accordingly, summary judgment in favor of Defendants is warranted.

Not only are the letters truthful but they are not misleading or deceptive in any way. The letters communicate to Plaintiffs that "flexible settlement options" *may not* be available after their account is placed with an attorney. It is well settled in the Seventh Circuit that the unsophisticated consumer would understand that the word "may" does not mean "will." *See Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018). Therefore, MCM's statement saying flexible settlement options <u>may no longer be available</u> does not mean that they <u>will no longer be available</u>. The Seventh Circuit instructs that, "[W]e disregard unrealistic, peculiar, bizarre and idiosyncratic interpretations of collection letters." *Durkin*, 406 F.3d at 414. Again, Plaintiffs take a bizarre interpretation of the letters which this Court should disregard.

The evidence shows that MCM truthfully informed Plaintiffs that flexible settlement options may no longer be available if their accounts were placed with an attorney because attorneys handling Midland Funding accounts attempt collection of accounts by legally filing lawsuits and obtaining judgments to collect the debts owed as opposed to affirmatively sending letters and placing phone calls in an effort to settle an account. An unsophisticated consumer is knowledgeable enough to understanding how proceeding with steps for litigation could cause limited flexibility. MCM's letters do nothing but truthfully inform Plaintiffs of the possible negative consequences of continued failure to pay their debts and being subject to legal action. This Court should not allow Plaintiffs to succeed on a claim that they have failed to prove. Summary judgment should be entered in favor of Defendants.

**b. The letters are consistent with Seventh Circuit law.**

12

Courts in the Seventh Circuit have addressed an almost identical legal theory espoused by Plaintiffs in this case—that a consumer may think that if they don't pay by a deadline, they will have no further chance to settle their debt for less than the full amount when in fact debt collectors frequently renew their offers if the consumer fails to accept the initial offer. *See Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769 (7th Cir. 2007); *DeKoven v. Plaza*, 599 F.3d 578 (7th Cir. 2010); *Bass v. Portfolio Recovery Associates, LLC*, Case No. 17 C 8345, 2018 U.S. Dist. LEXIS 14294 (N.D. Ill. Aug. 22, 2018); *Duarte v. Client Servs.*, Case No. 18 C 1227, 2019 U.S. Dist. LEXIS 53900 (N.D. Ill. Mar. 29, 2019). In essence, the point in time when MCM forwards an account to an attorney and not guaranteeing flexible options is equivalent to an expiration date for a settlement offer. The Seventh Circuit has rejected false settlement letter claims and has stated that debt collectors are not required to disclose the consequences of the debtor rejecting a settlement offer. *Evory* 505 F.3d at 775-776; *DeKoven*, 599 F.3d at 579. Even though, MCM's letters were true, it matters not if there was a decision to agree to resolve a particular account for a discounted balance or a payment plan after an attorney got involved because the letters stated that "flexible options <u>may</u> no longer be available."

In *Evory*, the Seventh Circuit addressed, among other topics, whether settlement offers violate § 1692e. In its decision, the Seventh Circuit recognized that it was common for debt collectors to make and renew offers and cited the following offers of settlement as examples: "we would like to offer you a unique opportunity to satisfy your outstanding debt;" "a settlement of 25% OFF of your current balance. SO YOU ONLY PAY $[__] In ONE PAYMENT that must be received no later than 40 days from the date of this letter" and "TIME'S A WASTIN'! … Act now and receive 30% off … if you pay by March 31st." *Evory*, 505 F.3d at 775. The court aptly noted that the settlement process would "disintegrate" and "there would be no point" in making settlement offers if debt collectors had to disclose the consequences of a debtor rejecting the first offer, which

13

may well be that the consumer will receive a more generous offer later. *Id.* Therefore, the Seventh Circuit articulated safe harbor language to allow debt collectors to issue settlement offers yet still protect the unsophisticated consumer against receiving a false impression of his options as follows: "We are not obligated to renew this offer." *Id.* at 776. The court noted, however, that not including the safe harbor language in an offer does not mean the collector is "per se" liable under §1692e if he issues a settlement offer. *Id.*

Revisiting the topic in *DeKoven v. Plaza Assoc.*, the Seventh Circuit reviewed the following settlement offer: "we have been authorized to offer you the opportunity to settle this account with a lump sum payment for 65% of the above balance due, which is equal to $2459.22. This offer will be valid for a period of thirty-five (35) days from the date of this letter." 599 F.3d at 578. The *DeKoven* offer did not contain *Evory*'s safe harbor language. *Id.* at 579-580. Following *Evory*'s reasoning, the court reiterated that settlement offers would end and be rendered pointless if debt collectors had to tell consumers the consequences of rejecting its first offer. *Id.* at 579. The court went on to reject the plaintiff's survey evidence and affirmed dismissal of the suits. *Id.* at 582-83.

In the instant case, all of the letters articulate an expiration date of the opportunity to contact MCM and three of the five letters state that they are not obligated to renew any offers provided. Under *Evory* and *DeKoven*, Defendants cannot be liable under §§ 1692e(5) because MCM may choose to settle the amount of the debts or agree to a payment plan for a particular account after an account is forwarded to an attorney because MCM's letter only stated that flexible options weren't guaranteed. *Evory* and *DeKoven* provide that there is nothing improper about making a settlement offer and encouraging a debtor to take the opportunity to resolve their account before a certain point in time or event. MCM's offers to Plaintiffs do not have to be their best or final offer. *Evory,* 505 F. 3d at 775; *DeKoven*, 599 F.3d at 579. MCM is free to place a deadline on options to resolve debts because its letters do not contain any deceptive language. MCM's letters were

14

permissible under Seventh Circuit law and comply with the FDCPA.

**IV.      This Court should enter summary judgment on Plaintiffs' § 1692f claims because the letters were not unconscionable means to collect a debt.**

Section 1692f states that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. *See* 15 U.S.C. § 1692f. Plaintiffs allege that Midland Funding used unconscionable means to collect a debt in violation of § 1692f by allegedly authorizing MCM to threaten Plaintiffs that no more settlements would be offered if their accounts were placed with an attorney. (DSMF, ¶ 78). The § 1692f claims fail because MCM used an acceptable means to collect a debt.

MCM sent letters to Plaintiffs encouraging them to pay their debts or to contact MCM to inquire about qualifying for a discount or payment plans. Gonzalez testified that she sued MCM because MCM did not give her any settlement options and would sue her if she didn't pay anything on the account. (DSMF, ¶ 48). Nieto testified that she filed the lawsuit because the letter lied to her because she was able to pay the debt in other ways such as a debt consolidation. (DSMF, ¶ 34). Ramirez testified that she filed the lawsuit because MCM was going to place her account with an attorney and did not give her flexible options to pay the debt. (DSMF, ¶ 18). Ranos testified that she filed a lawsuit against Defendants because she took offense to MCM forwarding the account to an attorney if she did not pay. (DSMF, ¶ 41). Avina testified that she sued Defendants because they wanted the sum of the account at once and did not give her an opportunity to pay. (DSMF, ¶ 26). Plaintiffs' all complain about not being able to resolve their debts on their terms. Debt collectors are not obligated to make settlement offers and debtors are not entitled to receive them. *See Gully*, 381 F. Supp. 2d at 773. It is legal for MCM to attempt to collect the full balance of a debt owed regardless of the debtor's need for a discount or payment plan. In addition, the law does not prohibit MCM from legally pursuing litigation to collect a debt if the debtor cannot pay the full balance. *Blum v. Lawent*, Case No. 02 C 5596, 2003 U.S. Dist. LEXIS 16050, *28 (N.D. Ill. Sept. 9, 2003) (stating

15

that a lawsuit is an acceptable means to collect a debt).

As explained above, MCM did not threaten any action on Midland Funding's behalf.[2] MCM made truthful statements in the letters sent to Plaintiffs. MCM encouraged Plaintiffs to pay their debt prior to the debts being placed with an attorney for litigation purposes. It was permissible for MCM to place all of the accounts with an attorney and it would be permissible for those attorneys not to agree to settle any of the debts for less than the full balances owed. This Court should grant summary judgment in favor of Defendants on the § 1692f claim because MCM did not conduct any unconscionable means to collect a debt.[3]

## CONCLUSION

Plaintiffs filed the instant lawsuit because they were sent truthful letters encouraging them to pay their debts and informing them of the negative consequence of continued failure to pay – the account may be placed with an attorney and flexible options to resolve the account may no longer be available once the account was with an attorney. Because of this language, Plaintiff testified that they felt threatened because MCM may forward their account to an attorney if they didn't pay and MCM did not provide them any opportunities to pay their debts. Plaintiffs take a bizarre interpretation of the letters and overlook the fact that they are not entitled to any settlement or

---

[2] A plaintiff must establish that the defendant engaged in a prohibited act or omission to satisfy a claim under the FDCPA. *See Maldonado-Rodriguez*, 2013 U.S. Dist. LEXIS 11396 at *5-6. Midland Funding cannot be held liable for using an unconscionable means to collect a debt because Midland Funding did not engage in any conduct towards Plaintiffs. Midland Funding is a purchaser of debt which does not engage in any debt collection. (DSMF, ¶ 49). Midland Funding does not devise, direct or ratify the collection strategies used by MCM. (DSMF, ¶ 50). Any actions taken on accounts owned by Midland Funding are taken by MCM and MCM created and sent the letters at issue to Plaintiffs. (DSMF, ¶ 50). Therefore, Midland Funding did not engage in any action directed towards Plaintiff to be liable for any conduct under § 1692f because MCM created and sent the letters to Plaintiffs. No reasonable jury could find that Midland Funding engaged in any unconscionable means to collect a debt. *See Francisco v. Midland Funding, LLC et al*, Case No. 17 C 6872, 2019 U.S. Dist. LEXIS 20601, *9-10 (Feb. 8, 2019) (holding that Midland Funding did not engage in any act or omission which violated the FDCPA and could not be held liable under the FDCPA).

[3] It is important to note that Plaintiffs also sued Encore Capital Group, Inc. in this action but failed to allege or prove that Encore violated any provision of the FDCPA. Therefore, no reasonable jury could find that Encore engaged in any act or omission which violated the FDCPA and summary judgment should be entered in favor of Encore in addition to Midland Funding and MCM.

16

payment options. It is lawful for MCM to seek full payment of the debt. As to each Plaintiff's account, it was lawful for MCM to place the account with an attorney for the purposes of litigation.

The evidence shows that when MCM places Midland Funding accounts with attorneys, those attorneys do not affirmatively pursue settlement for less than the full balance owed but they seek to file a collection lawsuit and obtain a judgment if payment is not made. The evidence also shows that in most cases no options are extended to debtors after MCM places accounts with attorneys. Plaintiffs failed to prove that flexible options were subsequently extended to Plaintiffs and that Defendants made any false statements to Plaintiffs. Importantly, Plaintiffs failed to present extrinsic evidence that an unsophisticated consumer would interpret the letters as Plaintiffs allege. Therefore, this Court should grant summary judgment in favor of Defendants.

WHEREFORE, Defendants, MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC. and ENCORE CAPITAL GROUP, INC., respectfully request that this Court enter an order granting Defendants' motion for summary judgment.

Respectfully submitted,

MIDLAND FUNDING, LLC, MIDLAND
CREDIT MANAGEMENT, INC. AND
ENCORE CAPITAL GROUP, INC.,
DEFENDANTS

/s/ Lindsey A.L. Conley
David M. Schultz
Lindsey A.L. Conley
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Tel: 312-704-3000
E-mail: dschultz@hinshawlaw.com
E-mail: lconley@hinshawlaw.com

304283846v1 0997515

## <u>CERTIFICATE OF SERVICE</u>

I, Lindsey A.L. Conley, an attorney, certify that I shall cause to be served a copy of **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** upon the following individual(s), by deposit in the U.S. mail box at 151 North Franklin Street, Chicago, Illinois 60606, postage prepaid, messenger delivery, Federal Express, facsimile transmitted from (312) 704-3001, or electronically via the Case Management/Electronic Case Filing System ("ECF") as indicated, this on September 6, 2019.

| | | |
|---|---|---|
| ☒ | CM/ECF | *Attorneys for Plaintiff(s)* |
| ☐ | Facsimile | Michael J. Wood |
| ☐ | Federal Express | Celetha C. Chatman |
| ☐ | E-Mail & U.S. Mail | COMMUNITY LAWYERS GROUP, LTD. |
| ☐ | Messenger | 20 North Clark Street, Suite 3100 |
| | | Chicago, IL 60602 |
| | | Phone: (312) 757-1880 |
| | | Fax: (312) 265-3227 |
| | | cchatman@communitylawyersgroup.com |
| | | mwood@communitylawyersgroup.com |

David M. Schultz
Lindsey A.L. Conley
HINSHAW & CULBERTSON LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Telephone: 312-704-3000
Facsimile: 312-704-3001
dschultz@hinshawlaw.com
lconley@hinshawlaw.com

*/s/ Lindsey A.L. Conley*
Lindsey A.L. Conley
One of the Attorneys for Defendants