# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GABRIELA RAMIREZ, FIDELA AVINA, RUEL NIETO, KATHERINE RANOS, and EVALINA GONZALEZ, on behalf of themselves and all others similarly situated, | Case No. 1:17-cv-02626 |
| Plaintiff, | Judge: Jorge L. Alonso |
| v. | Magistrate Judge: Susan E. Cox |
| MIDLAND FUNDING, LLC; MIDLAND CREDIT MANAGEMENT, INC.; and ENCORE CAPITAL GROUP, INC., | |
| Defendants. | |

## DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants, MIDLAND FUNDING, LLC ("Midland Funding"), MIDLAND CREDIT MANAGEMENT, INC. ("MCM") and ENCORE CAPITAL GROUP, INC. ("Encore"), by and through their attorneys, David M. Schultz and Lindsey A.L. Conley of Hinshaw & Culbertson LLP, respectfully submits this Rule 56.1 Statement of Material Facts in Support of their Motion for Summary Judgment, and states as follows:

### Jurisdiction, Venue and Parties

1. Jurisdiction and venue are proper in this District pursuant to § 1692k(d) of the Fair Debt Collection Practices Act ("FDCPA"), for which this case is brought. 15 U.S.C. § 1692k(d). (Defendants' Answer to Am. Class Complaint, ¶¶ 1-2, attached hereto as Exhibit 1).

2. Plaintiffs, Gabriela Ramirez resides in Chicago, Illinois. (Ramirez Deposition Transcript, p. 11, l. 23-24 – p. 12, l. 1-2, attached hereto as Exhibit 2).

3. Fidela Avina resides in Chicago, Illinois. (Avina Deposition Transcript, p. 9, l. 5-9, attached hereto as Exhibit 3).

4. Ruel Nieto resides in Northbrook, Illinos. (Nieto Deposition Transcript, p. 11, l. 12-15, attached hereto as Exhibit 4).

5. Katherine Ranos resides in Chicago, Illinois. (Ranos Deposition Transcript, p. 10, l. 5-9, attached hereto as Exhibit 5).

6. Evalina Gonzalez resides in Chicago, Illinois. (Gonzalez Deposition Transcript, p. 10, l. 9-11, attached hereto as Exhibit 6).

7. Midland Funding, LLC ("Midland Funding") is a Delaware limited liability company with a principal place of business in San Diego, California 92108. (Ex. 1, ¶ 11).

8. Midland Credit Management, Inc. ("MCM") is a Kansas corporation with a principal place of business in San Diego, California 92108. (Ex. 1, ¶ 16).

9. Encore Capital Group, Inc. ("Encore") is a Delaware corporation. (Ex. 1, ¶ 19).

10. Midland Funding and MCM are subsidiaries of Encore. (Affidavit of Bernadette Canez, ¶ 7, attached hereto as Exhibit 7).

**Plaintiffs and Plaintiffs' Accounts**

**Gabriela Ramirez:**

11. In November 2011, Plaintiff Gabriela Ramirez ("Ramirez") opened an account for a Citibank, N.A. credit card. (Ramirez Account Notes excerpt, attached hereto as Exhibit 8).

12. Ramirez made purchased on the credit card incurring a balance on the account and failed to pay the balance on the credit card account. (Ex. 2, p. 21, l. 24 – p. 22, l. 1-2; p. 23, l. 15-18).

13. The Citibank credit card account was charged off by Citibank and sold to Midland Funding on May 25, 2016. (Ex. 8).

14. After purchasing the account, Midland Funding placed the account with MCM for servicing. (Ex. 7, ¶ 11).

15. On August 29, 2016, MCM sent a letter to Ramirez regarding the balance of the account. The letter informed Ramirez that her account was within pre-legal review and MCM was considering forwarding the account to an attorney for litigation purposes. The letter stated in relevant part: "LET US HELP YOU! If the account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us: (800) 939-2353." (Ramirez Letter, attached hereto as Group Exhibit 9).

16. Ramirez did not contact MCM to pay or make arrangements for her account. At no point in time did Ramirez pay any money to resolve the Midland Funding account. (Ex. 2, p. 26, l. 16-21; p. 38, l. 6-13).

17. On October 30, 2016, MCM placed Ramirez's account with Blitt & Gaines, P.C., a law firm, for the purposes of litigation. On January 19, 2017, the law firm filed a collection case against Ramirez to collect the balance of the account. (Ex. 7, ¶ 34).

18. Ramirez testified that she filed the instant lawsuit because MCM was going to place her account with an attorney and did not give her flexible options to pay the debt. (Ex. 2, p. 21, l. 3-9).

**Fidela Avina:**

19. In January 2014, Plaintiff Fidela Avina ("Avina") opened an account for a Synchrony Bank credit card. (Avina Account Notes excerpt, attached hereto as Exhibit 10).

20. Avina made purchased on the credit card incurring a balance on the account and failed to pay the balance on the credit card account. (Ex. 3, p. 16, l. 16-24; p. 17, l. 22-24 – p. 18, l. 1).

21. The Synchrony Bank credit card account was charged off by Synchrony Bank and sold to Midland Funding on May 30, 2017. (Ex. 10).

304280130v1 0997515

22. After purchasing the account, Midland Funding placed the account with MCM for servicing. (Ex. 7, ¶ 12).

23. On July 7, 2017, MCM sent a letter to Avina regarding the balance of the account. The letter informed Avina that her account was within pre-legal review and MCM was considering forwarding the account to an attorney for litigation purposes. The letter stated in relevant part: "LET US HELP YOU! If the account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us: (877) 265-3899." (Avina Letter, Group Ex. 9).

24. Avina did not contact MCM to pay or make arrangements for her account. At no point in time did Avina pay any money to resolve the Midland Funding account. (Ex. 3, p. 20, l. 6-11; p. 21, l. 7-9).

25. On August 20, 2017, MCM placed Avina's account with Blitt & Gaines, P.C., a law firm, for the purposes of litigation. On October 31, 2017, the law firm filed a collection case against Avina to collect the balance of the account. (Ex. 7, ¶ 35).

26. Avina testified that she sued Defendants because they wanted the sum of the account at once and did not give her an opportunity to pay. (Ex. 3, p. 19, l. 1-8).

**Ruel Nieto:**

27. In March 2006, Plaintiff Ruel Nieto ("Nieto") opened an account for WebBank/Dell Financial Services credit card. (Nieto Account Notes excerpt, attached hereto as Exhibit 11).

28. Nieto made purchases on the credit card incurring a balance on the account and failed to pay the balance on the credit card account. (Ex. 4, p. 23, l. 2-4; SHOULD WE CITE THE ANSWER TO THE COMPLAINT?)

29. The WebBank/Dell Financial Services credit card account was charged off by WebBank/Dell Financial Services and sold to Midland Funding on June 28, 2016. (Ex. 11).

4

30. After purchasing the account, Midland Funding placed the account with MCM for servicing. (Ex. 7, ¶ 13).

31. On October 21, 2016, MCM sent a letter to Nieto regarding the balance of the account. The letter informed Nieto that her account was within pre-legal review and MCM was considering forwarding the account to an attorney for litigation purposes. The letter stated in relevant part: "LET US HELP YOU! If the account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us: (800) 939-2353." (Nieto Letter, Group Ex. 9).

32. Nieto did not contact MCM to pay or make arrangements for her account. At no point in time did Nieto pay any money to resolve the Midland Funding account. (Ex. 4, p. 68, l. 18-24 – p. 69, l. 1-8).

33. Around December 4, 2016, MCM placed Nieto's account with a law firm, Blatt, Hasenmiller, Leibsker & Moore, LLC, for the purposes of litigation. (Ex. 7, ¶ 36).

34. Nieto testified that she filed the lawsuit because the letter lied to her because she was able to pay the debt in other ways such as a debt consolidation. (Ex. 4, p. 33, l. 6-24 – p. 34, l. 1).

**Katherine Ranos:**

35. In September 1990, Plaintiff Katherine Ranos ("Ranos") opened an account for a Citibank, N.A. credit card. (Ranos Account Notes excerpt, attached hereto as Exhibit 12).

36. Ranos made purchased on the credit card incurring a balance on the account and failed to pay the balance on the credit card account. (Ex. 4, p. 22, l. 19-24; p. 23, l. 4-5).

37. The Citibank, N.A. credit card account was charged off by Citibank, N.A. and sold to Midland Funding on December 14, 2016. (Ex. 12).

38. After purchasing the account, Midland Funding placed the account with MCM for servicing. (Ex. 7, ¶ 14).

5

39. On August 8, 2017, MCM sent a letter to Ranos regarding the balance of the account. The letter informed Ranos that her account was within pre-legal review and MCM was considering forwarding the account to an attorney for litigation purposes. The letter stated in relevant part: "LET US HELP YOU! If the account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us: (800) 939-2353." (Ranos Letter, Group Ex. 9).

40. Ranos did not contact MCM to pay or make arrangements for her account. At no point in time did Ranos pay any money to resolve the Midland Funding account. (Ex. 4, p. 29, l. 5-8; p. 29, l. 15-18).

41. Ranos testified that she filed a lawsuit against Defendants because she took offense to MCM forwarding the account to an attorney if she did not pay. (Ex. 5, p. 23, l. 7-24 – p. 24, l. 1-3).

**Evalina Gonzalez:**

42. In December 2013, Plaintiff Evalina Gonzalez ("Gonzalez") opened an account for a Comenity Capital Bank credit card. (Gonzalez Account Notes excerpt, attached as Exhibit 13).

43. Gonzalez made purchased on the credit card incurring a balance on the account and failed to pay the balance on the credit card account. (Ex. 6, p. 19, l. 9-10; p. 21, l. 4-9).

44. The Comenity Capital Bank credit card account was charged off by Comenity Capital Bank and sold to Midland Funding on November 29, 2016. (Ex. 13).

45. After purchasing the account, Midland Funding placed the account with MCM for servicing. (Ex. 7, ¶ 15).

46. On July 7, 2017, MCM sent a letter to Gonzalez regarding the balance of the account. The letter informed Gonzalez that her account was within pre-legal review and MCM was considering forwarding the account to an attorney for litigation purposes. The letter stated in

6

relevant part: "LET US HELP YOU! If the account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us: (800) 939-2353." (Gonzalez Letter, Group Ex. 9).

47. Gonzalez did not contact MCM to pay or make arrangements for her account. At no point in time did Gonzalez pay any money to resolve the Midland Funding account. (Ex. 6, p. 51, l. 17-24).

48. Gonzalez testified that she sued MCM because MCM did not give her any settlement options and would sue her if she didn't pay anything on the account. (Ex. 6, p. 22, l. 8-13).

**Facts Relating to Defendants**

49. Midland Funding is a purchaser of debt which does not engage in any debt collection. Midland Funding's principal business purpose is the acquisition of financial obligations from financial institutions, such as banks. MCM is the servicer and authorized agent for Midland Funding and services the debt that is owned by Midland Funding. (Ex. 7, ¶3).

50. Midland Funding does not have any employees. Midland Funding does not devise, direct or ratify the collection strategies used by MCM. Any actions taken on accounts owned by Midland Funding are taken by MCM. (Ex. 7, ¶ 4).

51. MCM, following its compliance policies and procedures, create written communications which are sent to debtors for Midland Funding accounts. For the purposes of servicing Midland Funding accounts, MCM sends written communications to debtors regarding their accounts. In addition to written communications, MCM communicates with debtors via telephone. (Ex. 7, ¶ 12).

52. MCM's Internal Operations department has contact with debtors in attempt to collect the financial obligations owed on the Midland Funding accounts. (Ex. 7, ¶ 13).

304280130v1 0997515

53. The employees in the Internal Operations department which are involved with communicating directly with debtors have the ability to resolve the accounts for less than the full balances and arrangement various payment plans according to company policies and procedures. (Ex. 7, ¶ 14).

54. MCM defines "flexible options" as the ability to make payments that potentially match the debtor's needs such as monthly payment plans and discounted lump-sum payments to fully resolve the account. (Ex. 7, ¶ 15).

55. MCM has a Pre-Legal Internal Operations group within the Internal Operations department. The Pre-Legal Internal Operations group will attempt to contact the debtor to resolve the account and will advise the debtor that the account is in a pre-legal status and may be placed with an attorney if a payment arrangement is not made. (Ex. 7, ¶ 16).

56. All of the accounts in a pre-legal status have gone through a systematic algorithm which determines that MCM has the ability and intention to institute legal proceedings to collect the account. Some account criteria that are analyzed in the systematic algorithm are the estimated statute of limitations and any previous contact made with the debtor. An account is not placed with the Pre-Legal Operations group if MCM does not have the ability and intention to pursue legal proceedings on the account. (Ex. 7, ¶ 17).

57. MCM places accounts with law firms and attorneys to obtain a legal analysis for collecting an account via litigation. Once an account is placed with an attorney, the attorney conducts its review on whether litigation should proceed. (Ex. 7, ¶ 18).

58. MCM relies upon its attorneys for legal advice and all litigation. Once an account is placed with an attorney, MCM's Internal Operations department does not take further collection action on the account but will direct debtors to the assigned attorney. (Ex. 7, ¶ 19).

304280130v1 0997515

59. MCM's Pre-Legal Internal Operations group sends out pre-legal notifications to debtors with accounts in a pre-legal status. (Ex. 7, ¶ 20).

60. The pre-legal notifications advise debtors, if the account goes to an attorney, MCM's flexible options may no longer be available to the debtor. The purpose of the pre-legal notification is to inform the debtor that while the account is in a pre-legal status they may have settlement options or payment arrangements which may not be available once an attorney is involved. (Ex. 7, ¶ 21).

61. MCM grants its attorneys and law firms with the ability and discretion to settle Midland Funding accounts at any level. (Ex. 7, ¶ 22).

62. The pre-legal notification provides truthful information because if an attorney settles a Midland Funding account based upon its discretion, MCM expects its attorneys to negotiate with the debtor or the debtor's authorized representative to find a payment which not only meets the needs of the debtor's financial situation but aligns with MCM's objectives to obtain the full balance of the account. (Ex. 7, ¶ 23).

63. Once an account has been closed through an attorney or firm, MCM's internal system of record is updated with the payment amount in order to close out the resolved account. (Ex. 7, ¶ 24).

64. In most cases when the account is resolved with an attorney, the final payment is not discounted from the full balance. (Ex. 7, ¶ 25).

65. Accounts for Ramirez, Avina, Nieto, Ranos and Gonzalez were placed in a pre-legal status in MCM's Pre-Legal Internal Operations group and pre-legal notifications were sent to Plaintiffs. (Ex. 7, ¶¶ 26-27).

66. Ramirez, Avina, Nieto, Ranos and Gonzalez did not contact MCM to pay or make arrangements to pay their respective accounts at issue. (Ex. 7, ¶ 28).

67. On October 30, 2016, MCM placed Ramirez's account with Blitt & Gaines, P.C., a law firm, for the purposes of litigation. On January 19, 2017, the law firm filed a collection case against Ramirez to collect the balance of the account. (Ex. 7, ¶ 29).

68. On August 20, 2017, MCM placed Avina's account with Blitt & Gaines, P.C., a law firm, for the purposes of litigation. On October 31, 2017, the law firm filed a collection case against Avina to collect the balance of the account. (Ex. 7, ¶ 30).

69. On or around December 4, 2016, MCM placed Nieto's account with a law firm, Blatt, Hasenmiller, Leibsker & Moore, LLC, for the purposes of litigation. (Ex. 7, ¶ 31).

70. No settlement options were extended to Ramirez, Avina and Nieto after their accounts were placed with an attorney. (Ex. 7, ¶ 32).

71. Ramirez, Avina, Nieto, Ranos and Gonzalez have not paid or resolved their accounts with MCM's Internal Operations department or an attorney hired by MCM. (Ex. 7, ¶ 33).

**Attorney Involvement**

72. When MCM places a Midland Funding account with an attorney, it is for the purposes of instituting legal action against the debtor to collect the balance of the account. (Ex. 7, ¶ 23; Deposition Transcript of Kevin Mortell, p. 97, l. 8-14, attached hereto as Exhibit 14)

73. Attorneys who handle Midland Funding accounts do not send out settlement letters to debtors and do not initiate communications to settle an account. (Ex. 14, p. 97, l. 12-24 – p. 98, l. 1-10).

74. MCM's attorneys have a goal to file legal proceedings to obtain a judgment for 100% of the account balance and any fees or costs that a court would allow. (Ex. 14, p. 99, l. 6-10; p. 100, l. 4-9).

304280130v1 0997515

75. If a debtor initiates settlement, MCM expects its attorneys to negotiate with the debtor or the debtor's authorized representative with MCM's objectives of obtaining the full balance of the account. (Ex. 14, p. 97, l. 15-19; Ex. 7, ¶ 27).

**Allegations**

76. Plaintiffs' allege that the letters caused Plaintiffs to believe and would cause the unsophisticated consumer to believe that MCM was "threatening to no longer allow settlement, or monthly payments, or any flexible payment options once the account was forwarded to an attorney." (Ex. 1, ¶ 33).

77. Plaintiffs claim that the letters were false because "MCM routinely offers flexible payment options after forwarding an account to an attorney" and allows "flexible payment options, including payment plans for small amounts, even after a lawsuit has been filed and a judgment obtained." (Ex. 1, ¶¶ 35-36).

78. Plaintiffs allege that Midland Funding used unconscionable means to collect a debt in violation of § 1692f by allegedly authorizing MCM to threaten Plaintiffs that no more settlements would be offered if their accounts were placed with an attorney. (Ex. 1, ¶ 45).

Respectfully submitted,

HINSHAW & CULBERTSON LLP

*/s/ Lindsey A.L. Conley*
David M. Schultz
Lindsey A.L. Conley
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500
Chicago, IL 60606
Tel: 312-704-3000
E-mail: dschultz@hinshawlaw.com
E-mail: lconley@hinshawlaw.com
Attorneys for Defendants

# CERTIFICATE OF SERVICE

   I, Lindsey A.L. Conley, an attorney, certify that I shall cause to be served a copy of **DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** upon the following individual(s), by deposit in the U.S. mail box at 151 North Franklin Street, Chicago, Illinois 60606, postage prepaid, messenger delivery, Federal Express, facsimile transmitted from (312) 704-3001, or electronically via the Case Management/Electronic Case Filing System ("ECF") as indicated, this on September 6, 2019.

| | | |
|---|---|---|
| ☒ | CM/ECF | *Attorneys for Plaintiff(s)* |
| ☐ | Facsimile | Michael Wood |
| ☐ | Federal Express | Celetha Chatman |
| ☐ | E-Mail & U.S. Mail | COMMUNITY LAWYERS GROUP, LTD. |
| ☐ | Messenger | 20 North Street, Suite 3100 |
| | | Chicago, IL 60602 |
| | | Phone: (312) 757-1880 |
| | | Fax: (312) 476-1362 |
| | | mwood@communitylawyersgroup.com |
| | | cchatman@communitylawyersgroup.com |

David M. Schultz  
Lindsey A.L. Conley  
HINSHAW & CULBERTSON LLP  
151 North Franklin Street, Suite 2500  
Chicago, IL 60606  
Telephone: 312-704-3000  
Facsimile: 312-704-3001  
dschultz@hinshawlaw.com  
lconley@hinshawlaw.com  

*/s/ Lindsey A.L. Conley*  
Lindsey A.L. Conley  
One of the Attorneys for Defendants