**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GABRIELA RAMIREZ, FIDELA AVINA, RUEL NIETO, KATHERINE RANOS, and EVALINA GONZALEZ, | ) ) ) | Case No.  17-cv-2626 |
| | ) | |
| Plaintiffs, | ) | Judge Jorge L. Alonso |
| | ) | |
| v. | ) | |
| | ) | |
| MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC., and ENCORE CAPITAL GROUP, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff's motion [91] for class certification is denied.

## STATEMENT

Five named plaintiffs filed an amended complaint asserting that defendants violated the

Fair Debt Collection Practices Act ("FDCPA") when one defendant sent plaintiffs a dunning

letter that said, among other things, "If the account goes to an attorney, our flexible options may

no longer be available to you."  (Am Complt. ¶¶ 29 & 32/Docket 34 ¶¶ 29 & 32).  Plaintiffs

move to certify a class of:

> all persons with addresses in the State of Illinois from whom defendant attempted
> to collect a defaulted consumer credit account to whom it sent a letter
> substantially similar to Group Exhibit A which was sent on or after April 6, 2016,
> or on or before November 16, 2017.

(Plaintiff's Motion at 1/Docket 91 at 1).  With this class definition in mind, the Court will

consider whether class treatment is appropriate.

"A class action may be maintained if Rule 23(a) is satisfied and" if the case falls within at least one of the categories outlined in Rule 23(b). Fed.R.Civ.P. 23(b); *see also Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Rule 23(a) allows "[o]ne or more members of a class" to "sue or be sued as representative parties on behalf of all class members only if:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Rule 23(b)(3) allows class certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). Rule 23(c)(1)(A) requires that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed.R.Civ.P. 23(c)(1)(A).

To support a motion for class certification, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart*, 564 U.S. at 350. Thus, the "party seeking certification bears the burden of demonstrating that certification is proper by a preponderance of the evidence." *Chicago Teachers Union, Local No. 1 v. Board of Ed. of City of Chi.*, 797 F.3d 426, 433 (7th Cir 2015).

### A.   Numerosity

First, the Court agrees that the number of class members makes joinder impracticable.

Plaintiffs assert that there are 54,300 class members.  That is far more than is practicable to join.

*See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is

no magic number that applies to every case, a forty-member class is often regarded as sufficient

to meet the numerosity requirement.").

### B.   Common issues

Next, the Court considers whether plaintiffs have shown the existence of a common

issue.  The Supreme Court has described what makes an issue common.  It has said:

> Commonality requires the plaintiff to demonstrate that the class members 'have
> suffered the same injury.  This does not mean merely that they have all suffered a
> violation of the same provision of law. . . .  Their claims must depend upon a
> common contention[.] . . .  That common contention, moreover, must be of such a
> nature that it is capable of classwide resolution—which means that determination
> of its truth or falsity will resolve an issue that is central to the validity of each one
> of the claims in one stroke.

*Wal-Mart*, 564 U.S. at 349-50 (citations omitted).

In their brief, plaintiffs mention "the following common issues" as though there are

many, but they identify only one:  "whether Defendant made a false threat regarding flexible

payment options."  (Plaintiffs' Brief at 8/Docket 8 at 13).  The FDCPA provides:

> A debt collector may not use any false, deceptive, or misleading representation or
> means in connection with the collection of any debt.

15 U.S.C. § 1692e.  Among the prohibited false, deceptive, or misleading representations is a

"threat to take any action that cannot legally be taken or that is not intended to be taken."  15

U.S.C. § 1692e(5).  Here, plaintiffs have shown that each of the five named plaintiffs received a

dunning letter containing the same challenged language.  Specifically, each plaintiff received a

letter which said, among other things, "If the account goes to an attorney, our flexible options

may no longer be available to you."  Plaintiffs assert that, in addition to the named plaintiffs, more than 54,000 other people also received a dunning letter containing the challenged language.

To prevail on their claim, plaintiffs must establish the challenged language would mislead an unsophisticated consumer.  *Wahl v. Midland Credit Mgt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009) ("If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense.").  The Seventh Circuit has said:

> [W]e treat the question of whether an unsophisticated consumer would find certain debt collection language misleading as a question of fact.  As an outgrowth of this practice, we have determined there are three categories of § 1692e cases.  The first category includes cases in which the allegedly offensive language is plainly and clearly not misleading.  In cases of this nature, no extrinsic evidence is needed to show that the reasonable unsophisticated consumer would not be confused by the pertinent language.  The second category of cases includes debt collection language that is not misleading or confusing on its face, but has the potential to be misleading or confusing to the unsophisticated consumer.  If a case falls in this category, 'we have held that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive.'  The final category includes cases involving letters that are plainly deceptive or misleading, and therefore do not require any extrinsic evidence in order for the plaintiff to be successful.

*Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citations omitted); *see also Ruth v. Triumph Partnerships*, 577 F.3d 790, 800-801(7th Cir. 2009) ("We believe that this case falls into the third category. . . .  [T]he only reasonable interpretation of the notice was as a threat to take illegal action.").  Defendants argue that this common question will be subject to individual proof, but the Court disagrees.  The question is whether the language is misleading from the perspective of an unsophisticated consumer, not whether it was misleading to each plaintiff.  The Court agrees with plaintiff that this issue can be resolved on a class-wide basis.  It is a common question.

### C.     Adequacy

Rule 23(a)'s requirement that "the representative parties will fairly and adequately protect the interests of the class," has two components:  the adequacy of the named plaintiffs and the adequacy of proposed class counsel.  *See Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citations omitted).  In plaintiffs' brief, counsel argues plaintiffs "understand the obligations of being class representatives," but they put forth no evidence of that.

As for the adequacy of counsel, one of the reasons why courts insist that class counsel be adequate is:

> the incentive of class counsel, in complicity with the defendant's counsel, to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers[.]

*Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011); *see also Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008) ("There is . . . a much greater conflict of interest between the members of the class and the class lawyers than there is between an individual client and his lawyer.  The class members are interested in relief for the class but the lawyers are interested in their fees, and the class members' stakes in the litigation are too small to motivate them to supervise the lawyers in an effort to make sure that the lawyers will act in their best interests.") (citations omitted).  That is of "particular significance" when "the class members are consumers, who ordinarily lack both the monetary stake and the sophistication in legal and commercial matters that would motivate and enable them to monitor the efforts of class counsel on their behalf."  *Creative Montessori*, 662 F.3d at 917.  Thus, the Seventh Circuit has recognized that:

> the driving force behind [FDCPA cases, such as this one] is the class action attorneys.  They have a strong incentive to litigate these cases—oftentimes despite

> their marginal impact—in the form of attorneys' fees and costs they hope to
> recover.

*Sanders v. Jackson*, 209 F.3d 998, 1003 (7th Cir. 2000). That is certainly true in this case,

where, due to the statutory cap ($500,000) on damages, a class member might recover

"approximately $9.20 per person" (Plaintiffs' Brief at 11/Docket 92 at 11) before fees and

expenses, while counsel will no doubt request at least a third of the $500,000 plus expenses.

Accordingly, "[a]nything 'pertinent to counsel's ability to fairly and adequately represent

the class,'" including "an attorney's misconduct or ethical breach" bears "on the class

certification decision." *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 704 F.3d 489,

498 (7th Cir. 2013) (citations omitted). "When class counsel have demonstrated a lack of

integrity, a court can have no confidence that they will act as conscientious fiduciaries of the

class." *Creative Montessori*, 662 F.3d at 918 ("Misconduct by class counsel that creates a

serious doubt that counsel will represent the class loyally requires denial of class certification.").

Likewise, a court "must consider counsel's work on the case to date." *Reliable Money Order*,

704 F.3d at 498 n. 7; *see also Nagel v. ADM Investor Services, Inc.*, 65 F. Supp.2d 740, 746

(N.D. Ill. 1999) (Easterbrook, J.) ("One important part of a judge's job under Rule 23 is to

protect putative class members from self-appointed champions whose work is not up to snuff.").

For example, a poor brief in support of a motion for class certification can demonstrate counsel

is inadequate to represent a class. *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 508 (S.D.

Ind. 1999) ("[Plaintiff's] motion and his supporting brief demonstrate a questionable ability on

the part of counsel to adequately represent a putative class action.").

If plaintiffs' counsel intended their opening brief in support of their motion for class

certification as a demonstration of their adequacy, they have not succeeded. In that brief,

plaintiffs' attorneys routinely cite out-of-circuit district-court decisions (and a 45-year-old

Northern District decision) for standards and issues on which the Supreme Court and/or the Seventh Circuit have spoken. This may not be unethical, but nor is it helpful or persuasive.[1]

More troubling are the ethical lapses other judges have noticed in counsel's work. Judges Norgle and Shah have sanctioned these attorneys. *Jackson v. Nationwide Credit & Collection Inc.*, Case No. 17-cv-5915, Docket 88 (N.D. Ill. Jan. 23, 2019) (Norgle, J.) ("Plaintiff has not been forthcoming with Defendant, nor candid with the Court. . . . There were several opportunities for Plaintiff to inform Defendant that the document it sought, Plaintiff's retainer agreement, did not exist. Rather than reveal that there was no retainer agreement, Plaintiff repeatedly objected to turning the document over. . . . Plaintiff's unnecessary obfuscation caused Defendant to file a motion to compel for a nonexistent document and resulted in unnecessary delay and needless increase in the cost of litigation. Fed.R.Civ.P. 26(g)(1)(B)(ii). Plaintiff's conduct violated the spirit of complete, non-evasive discovery embodied in the Federal Rules."); *Cooper v. Retrieval-Masters Creditors Bureau, Inc.*, Case No. 17 CV 773, 2018 WL 8898621 at *2 (N.D. Ill. Aug. 14, 2018) (Shah, J.) ("The complaint was misleading because it suggested that [plaintiff] checked his account online to investigate his payment options. That was not true, and Wood and Chatman knew it because they—not Cooper— checked the website and discovered a potential FDCPA violation. For Chatman and Wood to draft a misleading complaint is galling because they regularly sue debt collectors for their misleading statements. . . . There is a pattern of Wood and Chatman filing multiple lawsuits on behalf of the same plaintiff against the same defendant, in relatively short sequence. . . . The

---

[1] Plaintiffs' brief in response to defendants' motion for summary judgment, on the other hand, is stronger and cites appropriate caselaw.

pattern demonstrates a callous disregard for the prohibition on claim splitting and the court's procedures on identifying related cases.").

In addition, Judge Gettleman has accused these attorneys of manufacturing lawsuits, and he is not alone. *Irvin v. Nationwide Credit and Collection, Inc.*, Case No. 18 C 2945, 2019 WL 4450503 at *4 (N.D. Ill. Sept. 17, 2019) (Gettleman, J.) ("In the instant case, it appears to this court that plaintiffs' attorneys' actions were designed to avoid defendant's procedures reasonably adapted to avoid errors, for the purpose of manufacturing a lawsuit. . . . And, this is not the first time these lawyers have attempted this sort of stunt."); *see also Ozmun v. Portfolio Recovery Assoc., LLC*, Case No. AU-16-CV-00940-SS, 2019 WL 1430006 at *5 (W.D. Tex. Mar. 29, 2019) ("Chatman and Wood manufactured a case by misusing federal and state debt collection statutes and then failed to inform their client of a generous settlement offer, all in an attempt to augment their attorneys' fees."). *Ozmun* represents a particularly egregious example of a failure to represent a client adequately. The court in *Ozmun* explained, in its opinion granting sanctions against these attorneys, that the case "settled on the eve of trial for an amount that was nearly five times less than Plaintiff would have received two years earlier . . . had his attorneys made him aware of an offer of settlement." *Ozmun*, 2019 WL 1430006 at *5.

The Court cannot say these attorneys would adequately represent the class.

### D.      23(b)(3)

Finally, the Court considers whether the case is suitable for class treatment under Rule 23(b)(3), i.e., whether common questions will predominate. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Rule 23(b)(3)'s "predominance criterion is far more demanding" than "Rule 23(a)'s commonality

requirement[.]" *Amchem*, 521 U.S. at 623-34. Plaintiffs' argument seems to be that the existence of the common question is also evidence that it predominates. The Court disagrees.

Instead, the Court agrees with defendants that individual questions will predominate over the common question identified above. Defendants point out that every named plaintiff was given an arbitration agreement, and that will be true of many class members, as well. Thus, for each class member, the Court will need to determine: 1) whether the class member received an arbitration agreement; 2) whether the class member opted out of the arbitration provision; and 3) whether the claim is within the scope of that class member's arbitration provision. *See Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006) (to compel arbitration, "a party need only show:  (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration."). This is not a case in which every class member was issued the same credit card and arbitration agreement, such that these questions could be answered just once. The five named plaintiffs defaulted on obligations of credit cards from four different card issuers, who sent out four different card agreements, each with its own arbitration provision. These questions will need to be asked and answered individually, more than 54,000 times.

That is not all. Plaintiffs sued three defendants, and the arbitration agreements may not apply to all of them. The Supreme Court has held that "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *see also Warciak v. Subway Restaurants, Inc.*, 880 F.3d 870, 872 (7th Cir. 2018). When applying state law, this Court's task is to "determine how the state's highest court would rule." *In re Zimmer, NexGen Knee Implant Products Liability Lit'n.*, 884 F.3d 746, 751 (7th Cir. 2018)

(quoting *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011)).  Thus, the Court will also have to decide:  4) what state's law applies to each arbitration agreement; and 5) whether the applicable state's law allows the arbitration provision to apply to these defendants.  The fourth question will have to be answered up to 54,300 times; the fifth question up to fifty times.[2]

The Court concludes that, if this case were certified as a class, the individual questions would predominate.  *See Nagel*, 65 F. Supp.2d at 746 (Easterbrook, J.) (the existence of arbitration agreements for some class members was a reason why individual issues would predominate).  Accordingly, class certification is not appropriate.

For all of these reasons, the Court denies plaintiffs' motion for class certification.

SO ORDERED.                                              ENTERED: June 19, 2020

_____
JORGE L. ALONSO
United States District Judge

---

[2] All of these individual issues are in pursuit of, as plaintiffs calculate it, $9.20 per class member. No reasonable client would spend so much time in pursuit of so little money.  *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014) ("No reasonable client would countenance spending even a tenth of an hour arguing over $35.10.").