UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GABRIELA RAMIREZ, FIDELA AVINA, RUEL NIETO, KATHERINE RANOS, and EVALINA GONZALEZ, | ) ) ) ) | Case No. 17-cv-2626 |
| Plaintiffs, | ) ) | Judge Jorge L. Alonso |
| v. | ) ) ) | |
| MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC., and ENCORE CAPITAL GROUP, INC., | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

After each received a dunning letter, five plaintiffs, Gabriela Ramirez ("Ramirez"),

Fidela Avina ("Avina"), Ruel Nieto ("Nieto"), Katherine Ranos ("Ranos") and Evalina Gonzalez

("Gonzalez") filed against defendants Midland Funding LLC, Midland Credit Management, Inc.

and Encore Capital Group, Inc. an amended complaint alleging that language in their dunning

letters violated the Fair Debt Collection Practices Act. Defendants have filed a motion for

summary judgment. For the reasons set forth below, the Court grants the motion for summary

judgment.

**I.     BACKGROUND**

The following facts are undisputed unless otherwise noted.[1]

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems

Defendant Midland Funding LLC, an entity with no employees, is in the business of purchasing charged-off debt from financial institutions. Defendant Midland Credit Management, Inc. ("MCM") is an authorized agent of Midland Funding LLC, and MCM services and attempts to collect on the debt owned by Midland Funding LLC. Midland Funding LLC has a collection-agency license in Illinois. Both Midland Funding LLC and MCM are subsidiaries of defendant Encore Capital Group, Inc.

Midland Funding LLC purchased debt owed by each of the five plaintiffs, and MCM sent a dunning letter (with similar language) to each of the five plaintiffs. Specifically, on May 25, 2016, Midland Funding LLC purchased from Citibank N.A. a charged-off account Ramirez had opened in 2011 and on which Ramirez had incurred a balance she had not paid. On August 29, 2016, MCM sent a letter to Ramirez. The letter informed her that the account was in "pre-legal review." The letter stated, among other things:

> LET US HELP YOU! If the Account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us at: (800) 939-2353.

(Ramirez Letter/Docket 95-9 at 2).

Midland Funding LLC, on May 30, 2017, purchased from Synchrony Bank a charged-off account Avina had opened in 2014 and on which she had incurred a balance she had not paid. On July 7, 2017, MCM sent a letter to Avina. The letter stated (in Spanish), among other things:

> LET US HELP YOU! If the Account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us at: (800) 939-2353.

---

the fact undisputed. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). The Court does not consider any facts that parties failed to include in their statements of fact, because to do so would rob the other party of the opportunity to show that the fact is disputed.

(Avina Letter/Docket 95-9 at 4).

On June 28, 2016, Midland Funding LLC purchased from WebBank/Dell Financial Services a charged-off account Nieto had opened in 2006 and on which Nieto had incurred a balance he had not paid. On October 21, 2016, MCM sent a letter to Nieto. The letter informed him that the account was in "pre-legal review." The letter stated, among other things:

> LET US HELP YOU! If the Account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us at: (800) 939-2353.

(Nieto Letter/Docket 95-9 at 6).

On December 14, 2016, Midland Funding LLC purchased from Citibank N.A. a charged-off account Ranos had opened in 1990 and on which Ranos had incurred a balance she had not paid. On August 8, 2017, MCM sent a letter to Ranos. The letter informed her that the account was in "pre-legal review." The letter stated, among other things:

> LET US HELP YOU! If the Account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us at: (800) 939-2353.

(Ranos Letter/Docket 95-9 at 8).

On November 29, 2016, Midland Funding LLC purchased from Comenity Capital Bank a charged-off account Gonzalez had opened in 2013 and on which Gonzalez had incurred a balance she had not paid. On July 7, 2017, MCM sent a letter to Gonzalez. The letter informed her that the account was in "pre-legal review." The letter stated, among other things:

> LET US HELP YOU! If the Account goes to an attorney, our flexible options may no longer be available to you. There is still an opportunity to make arrangements with us. We encourage you to call us at: (800) 939-2353.

(Gonzalez Letter/Docket 95-9 at 10).

The dunning letters these plaintiffs received were sent by MCM's pre-legal internal operations group, which is a part of MCM's internal operations group. MCM's internal operations group communicates with debtors (via letters and telephone calls) in an attempt to collect the debts owned by Midland Funding LLC. MCM's employees within the internal operations group have the authority to resolve accounts for less than full balances and to arrange payment plans. MCM uses an algorithm to select the accounts on which it is able to and intends to pursue legal action. Those accounts are placed with the pre-legal internal operations group, which also attempts to contact debtors to resolve debts. In addition, MCM's pre-legal internal operations group attempts to inform the debtor that his or her account may be placed with an attorney if it is not resolved. When MCM mentions "flexible options" in those communications, MCM means payments (including monthly payments) that match the debtor's ability to pay and discounted lump-sum payments that fully-resolve the account.

None of the five plaintiffs, after receiving the dunning letters, contacted MCM. None of the five plaintiffs ever made payments on or resolved their accounts owned by Midland Funding LLC.

MCM placed three of the five plaintiffs' accounts with attorneys. Once MCM places an account with an attorney, it does not take further action on the account but, instead, will direct debtors to the assigned attorneys. On October 30, 2016, MCM placed Ramirez's account with a law firm. On August 20, 2017, MCM placed Avina's account with a law firm. In December 2016, MCM placed Nieto's account with a law firm. When MCM places an account with a law firm, it is to obtain legal analysis on whether litigation should proceed. As it turns out, law firms filed collection actions against two plaintiffs. A collection action was filed against Ramirez in January 2017, and a collection action was filed against Avina in October 2017. Midland

4

Funding LLC was the plaintiff in both collection actions (and is the plaintiff in every collection action seeking to collect on the debt owned by Midland Funding LLC).

The goal of an attorney hired by MCM is to file a collection action and collect 100% of the account balance. Those attorneys sometimes have more information, such whether the debtor is employed or owns assets, than has the internal operations department.[2] MCM attorneys do not make settlement offers to debtors. For example, Ramirez, Avina and Nieto did not receive settlement offers after MCM placed their accounts with attorneys. MCM's attorneys, however, can discuss settlement if a debtor initiates settlement discussions. Thus, the attorneys MCM hires are not prohibited from accepting settlement offers, even settlement offers with payment plans. MCM's in-house attorney has approved settlements negotiated by outside counsel for less than 100% of an account balance and has approved settlements negotiated by outside counsel that involve payment plans.

---

[2] This fact comes from the deposition testimony of Shanna Carson, who was deposed in a prior case. Defendants moved to strike the deposition transcript on the grounds that portions of it had been subject to a protective order in the prior case. On October 30, 2019, the Court granted the motion to strike (without objection), and plaintiff refiled the cited portion (which was not protected by the protective order) of the deposition at Docket 112-3. The cited portion of the transcript is admissible on summary judgment, even though it is from a different case, because it is based on personal knowledge and is part of the record in this case. *See Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014). Plaintiffs had also moved to seal the transcript, and that motion was denied in open court on October 30, 2019. It was denied, because defendants (the parties with an interest in sealing the document) had not shown the transcript disclosed trade secrets or other information protected from disclosure by a statute or privilege. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("[O]nly trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence . . . is entitled to be kept secret."); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (litigation in federal courts is presumptively public, and people who "call on the courts . . . must accept the openness that goes with subsidized dispute resolution."); *In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010) ("Documents that affect the disposition of federal litigation are presumptively open to public view[.]").

Plaintiffs filed a one-count first amended complaint in which they alleged defendant "MCM threatened an action that it did not intend to take, in violation of 15 U.S.C.§ 1692e(5), when it stated to Plaintiffs that once their account was forwarded to an attorney, flexible payment options may no longer be available." (Am. Complt. ¶ 58). Plaintiffs also alleged defendant Midland Funding LLC "used unconscionable means to collect a debt, in violation of 15 U.S.C. § 1692f, when it authorized its servicer to threaten Plaintiffs that flexible payment options may not be offered if their account was forwarded to an attorney." (Am. Complt. ¶ 59).

## II.      STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.      DISCUSSION

### A.      § 1692e

The Fair Debt Collection Practices Act ("FDCPA") provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

15 U.S.C. § 1692e.  Among the prohibited false, deceptive, or misleading representations is a "threat to take any action that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).

To prevail on their claim under 1692e, plaintiffs must establish the challenged language would mislead an unsophisticated consumer.  *Wahl v. Midland Credit Mgt., Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009) ("If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA—even if it is false in some technical sense.").  The unsophisticated-consumer standard is "objective," and the Seventh Circuit has described the unsophisticated consumer as:

> 'uninformed, naïve,' and 'trusting,' but does possess 'rudimentary knowledge about the financial world,' and 'is wise enough to read collection notices with added care.'  She is also 'capable of making basic logical deductions and inferences' and possesses 'reasonable intelligence.'  Though 'our unwary debtor may tend to read collection letters literally, he does not interpret them in a bizarre or idiosyncratic fashion.'  In short, '[t]he Act protects the unsophisticated debtor, but not the irrational one.'

*Johnson v. Enhanced Recovery Co., LLC*, __ F.3d. __, __, 2020 WL 3056564 at *4 (7th Cir. June 9, 2020) (citations omitted).

As for whether particular language is misleading, the Seventh Circuit has said:

> [W]e treat the question of whether an unsophisticated consumer would find certain debt collection language misleading as a question of fact.  As an outgrowth of this practice, we have determined there are three categories of § 1692e cases.  The first category includes cases in which the allegedly offensive language is plainly and clearly not misleading.  In cases of this nature, no extrinsic evidence is needed to show that the reasonable unsophisticated consumer would not be confused by the pertinent language.  The second category of cases includes debt collection language that is not misleading or confusing on its face, but has the potential to be misleading or confusing to the unsophisticated consumer.  If a case falls in this category, 'we have held that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive.'  The final category includes cases involving letters that

7

are plainly deceptive or misleading, and therefore do not require any extrinsic
evidence in order for the plaintiff to be successful.

*Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (citations omitted); *see also Ruth v. Triumph*
*Partnerships*, 577 F.3d 790, 800-801(7th Cir. 2009) ("We believe that this case falls into the
third category. . . . [T]he only reasonable interpretation of the notice was as a threat to take
illegal action.").

When a statement falls in the second category, plaintiffs "bear[] the burden of producing
evidence of confusion (beyond [their] own) using an objective measure such as 'a carefully
designed and conducted consumer survey.'" *Johnson*, __ F.3d at __ 2020 WL 3056564 at *5
(quoting *Sims v. GC Servs. L.P.*, 445 F.3d 959, 963 (7th Cir. 2006)). In this case, plaintiffs have
put forth no extrinsic evidence that the language was confusing. They have produced no
consumer-survey evidence. Accordingly, they can survive this motion for summary judgment on
their 1692e claim if and only if they can show the language falls in the third category of language
that is plainly deceptive and misleading on its face. *Lox*, 689 F.3d at 822 ("[S]ince [plaintiff] did
not present any extrinsic evidence at the summary judgment stage, he must show that the
statement is plainly and clearly misleading on its face, thus eliminating any need for evidence of
its deceptive nature.").

Here, plaintiffs challenge the following language from the dunning letters plaintiffs
received: "If the Account goes to an attorney, our flexible options may no longer be available to
you." Plaintiffs state, "the exact same language has been found by at least one court in this
district to constitute a threat to eliminate payment options. *Haddad v. Midland Funding, LLC*,
255 F. Supp.3d 735, 745 (N.D. Ill. 2017)." (Plf. Brief at 1/Docket 104 at 2). Plaintiffs make too
much of *Haddad*. There, the court concluded that plaintiffs had stated a claim. *Haddad*, 255 F.
Supp.3d at 745. Obviously, the mere fact that a plaintiff can state a claim based on that language

8

does not mean the plaintiff is entitled to judgment on that claim. "[C]omplaints alleging misleading communications under § 1692e are rarely subject to dismissal for failure to state a claim because in this circuit, whether a communication is false, deceptive or misleading under the FDCPA is a question of fact." *Johnson*, __ F.3d at __, 2020 WL 3056564 at *3.

Plaintiffs argue that the challenged language ("flexible options may no longer be available to you") is plainly false and misleading on its face, because attorneys could accept settlements, including discounted lump-sums and payment plans. Plaintiffs' argument ignores that the attorneys' goal was to collect the entire amount and that the attorneys only discussed settlement if the topic was initiated by the debtor. Furthermore, sometimes, attorneys had more information about whether the debtor had a job or assets than the internal operations department had. That information could affect whether the attorney would or would not accept a settlement. Plaintiffs' argument also ignores that flexible options could be unavailable if the attorney obtained a default judgment and enforced it via garnishment.

Most importantly, plaintiffs' argument ignores the presence of the word "may" in the letter. As the Seventh Circuit has said, "[a]n unsophisticated consumer would not understand the word 'may' to mean 'will.'" *Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 765 (7th Cir. 2018). Had the dunning letters at issue in this case used the word "will" instead of "may," then the Court would agree that the letters would have been false on their face. That is so, because, under some circumstances, an attorney could accept a reduced lump-sum payment or payment plan. It could not, therefore, be true that flexible options "will" no longer be available. The letter, though, says "may." Furthermore, ability to pay is fluid, and, when the letter was sent, MCM could not know what the debtor's ability to pay would be going forward which means MCM could not know whether flexible payment options would be agreeable to an attorney in the

9

future.  *Cf. Dunbar*, 896 F.3d at 766 ("Solvency . . . is fluid.  An insolvent debtor may become solvent before settling his debt.  So it is not misleading to say that a debt settlement "may" result in a tax liability—not only because solvent recipients may face tax consequences but also because insolvent recipients like [plaintiffs] could become solvent before settling their debts.").  The challenged statement was not false and misleading on its face.  Nor was it a threat to do something defendant could not legally do.  *See Lox*, 689 F.3d at 825 ("[I]t is improper under the FDCPA to imply that certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass."); *Dunbar*, 896 F.3d at 766 (the statement "at issue here is not misleading because it does not imply that the debt collector may or will do something it has no authority to do.").  In this case, the statement does not imply MCM may do something it has no authority to do.

The language plaintiffs challenge is not false and misleading on its face, so they can survive summary judgment only by putting forth extrinsic evidence of consumer confusion.  They have no done so.

Plaintiffs have not put forth sufficient evidence from which a reasonable jury could conclude that MCM violated § 1692e(5).  MCM is entitled to judgment as a matter of law on plaintiffs' claim under § 1692e(5).  Accordingly, defendants' motion for summary judgment is granted as to plaintiffs' claim under § 1692e.

**B.      § 1692f**

Next, plaintiffs assert that Midland Funding LLC used unconscionable means to collect a debt when it allowed MCM to send the dunning letter.

The Fair Debt Collection Practices Act states, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect a debt."  15 U.S.C. § 1692f.  "The phrase

'unfair and unconscionable' is as vague as they come." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 474 (7th Cir. 2007). Plaintiffs do not assert that Midland Funding LLC used one of the unconscionable means enumerated in § 1692f.

Rather, plaintiffs assert Midland Funding LLC violated § 1692f in exactly one respect:

If MCM violated § 1692e(5), then Midland Funding used unconscionable means to collect a debt, in violation of § 1692f by hiring and authorizing MCM to send the false, deceptive, and misleading letters.

(Plf. Brief at 12/Docket 104 at 13). The Court, though, has already granted MCM summary judgment on the § 1692e(5) claim. Because plaintiffs have not put forth sufficient evidence from which a reasonable jury could conclude that Midland Funding, LLC violated § 1692f, it is entitled to judgment as a matter of law on that claim.

Accordingly, defendants' motion for summary judgment is granted.

## IV.     CONCLUSION

For all of these reasons, the Court grants defendants' motion [93] for summary judgment. For the reasons stated in open court on October 30, 2019, the Court grants (without objection) defendants' motion [107] to strike and denies plaintiffs' motion [105] to file under seal. Civil case terminated.

**SO ORDERED.**                                    **ENTERED: June 22, 2020**

_____
**HON. JORGE ALONSO**
**United States District Judge**